**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

AVENTURA LAND HOLDINGS, LTD.,
AVENTURA LAND HOLDING (DEL.), INC.,
JAMES COHEN, BRIAN STREET,
RAY NICHOLSON, and MARK PAPAK,

       Plaintiffs,

vs.                         CASE NO.

WESTCHESTER SURPLUS LINES
INSURANCE COMPANY,

       Defendant.

_____ /

# EXHIBIT "A"



CHIEF FINANCIAL OFFICER
JEFF ATWATER
STATE OF FLORIDA



15-039984

AVENTURA LAND HOLDINGS, LTD.,
AVENTURA LAND HOLDING (DEL.), INC., JAMES COHEN,
BRIAN STREET, RAY NICHOLSON, AND MARK PAPAK,

PLAINTIFF(S),

VS.

WESTCHESTER SURPLUS LINES INSURANCE COMPANY,

DEFENDANT(S).
_____/

**CASE #:**    **2014-030835-CA-01**
**COURT:**    **CIRCUIT COURT**
**COUNTY:**  **MIAMI-DADE**
**DFS-SOP#:** 15-039984

SUMMONS IN A CIVIL CASE, CIVIL COVER SHEET, DOCUMENT, COMPLAINT, EXHIBITS

## NOTICE OF SERVICE OF PROCESS

NOTICE IS HEREBY GIVEN of acceptance of Service of Process by the Chief Financial
Officer of the State of Florida.  Said process was received in my office by PROCESS SERVER
on the 3rd day of April, 2015 and a copy was forwarded by Electronic Delivery on the 7th day of
April, 2015 to the designated agent for the named entity as shown below.

WESTCHESTER SURPLUS LINES INSURANCE COMPANY
SAVERIO M ROCCA
ESQUIRE
436 WALNUT STREET, WA04K
PHILADELPHIA, PA 19106

\* Our office will only serve the initial process (Summons and Complaint) or Subpoena and is not responsible for transmittal of any
subsequent filings, pleadings or documents unless otherwise ordered by the Court pursuant to Florida Rules of Civil Procedure, Rule #1.080.

*Jeff Atwater*

Jeff Atwater
Chief Financial Officer

cc to: Plaintiff's Representative for filing in appropriate court:

BRENTON N. VER PLOEG
VER PLOEG & LUMPKIN, P.A.
30TH FLOOR
100 S.E. SECOND STREET
MIAMI FL 33131

NJW

IN THE CIRCUIT COURT OF THE 11TH
JUDICIAL CIRCUIT IN AND FOR
MIAMI-DADE COUNTY, FLORIDA

CASE NO.: 2014-030835-CA-01

AVENTURA LAND HOLDINGS, LTD.,
AVENTURA LAND HOLDING (DEL.),
INC., JAMES COHEN, BRIAN STREET,
RAY NICHOLSON, and MARK PAPAK,

**SUMMONS IN A CIVIL CASE**

    *Plaintiffs,*

v.

WESTCHESTER SURPLUS LINES
INSURANCE COMPANY,

    *Defendant.*

_____/

\\ **TO: Westchester Surplus Lines Insurance Company**
    **By Service Upon:**
    **c/o Florida Chief Financial Officer as RA**
    **200 East Gaines Street**
    **Tallahassee, FL 32399-4201**

    YOU ARE HEREBY SUMMONED and required to file with the Clerk of this Court and
serve upon:

        **Brenton N. Ver Ploeg and Heather J. Gorin**
        **Ver Ploeg & Lumpkin, P.A.**
        **100 S.E. Second Street, 30th Floor**
        **Miami, Florida 33131**
        **305-577-3996**
    **Primary:bverploeg@vpl-law.com; Primary: hgorin@vpl-law.com**
        **Secondary: amasack@vpl-law.com**

an answer to the Complaint which is herewith served upon you, within 20 days after service of
this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default
will be taken against you for the relief demanded in the Complaint. You must also file your
answer with the Clerk of this Court within a reasonable period of time after service.

_____
Clerk

_____
Date

_____
By Deputy Clerk

Rcvd 4 /3 /15 at 11:3 p.m. &
Srvd 4 /3 /15 at 255 p.m. by
Chris J. Colson #142
Certified Process Server, 2nd Judicial Crct, FL

| ☒ IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA. |||
|---|---|---|
| ☐ IN THE COUNTY COURT IN AND FOR MIAMI-DADE COUNTY, FLORIDA. |||

| DIVISION | | CASE NUMBER |
|---|---|---|
| ☒ CIVIL<br>☐ DISTRICTS<br>☐ FAMILY<br>☐ OTHER | **CIVIL COVER SHEET** | |

| PLAINTIFF | VS. DEFENDANT | CLOCK IN |
|---|---|---|
| AVENTURA LAND HOLDINGS, LTD.,<br>AVENTURA LAND HOLDING (DEL.),<br>INC., JAMES COHEN, BRIAN STREET,<br>RAY NICHOLSON, and MARK PAPAK | WESTCHESTER SURPLUS LINES<br>INSURANCE COMPANY | |

The civil cover sheet and the information contained here does not replace the filing and service of pleadings or other papers as required by law. This form is required by the Clerk of Court for the purpose of reporting judicial workload data pursuant to Florida Statute 25.075. See instructions and definitions on reverse of this form.

**TYPE OF CASE** (If the case fits more than one type of case, select the most definitive category.) If the most descriptive label is a subcategory (is indented under a broader category), place an x in both the main category and subcategory boxes.

☐ 001 - Eminent Domain
☐ 003 - Contracts and Indebtedness
☐ 010 - Auto Negligence
☐ 022 - Products Liability
☐ 023 - Condominium
☐ **Negligence - Other**
    ☐ 097 - Business Governance
    ☐ 098 - Business Torts
    ☐ 099 - Environmental/Toxin Tort
    ☐ 100 - Third Party Indemnification
    ☐ 101 - Construction Defect
    ☐ 102 - Mass Tort
    ☐ 103 - Negligent Security
    ☐ 104 - Nursing Home Negligence
    ☐ 105 - Premises Liability - Commercial
    ☐ 106 - Premises Liability - Residential
    ☐ 107 - Negligence - Other
☐ **Real Property/Mortgage Foreclosure**
    ☐ 108 - Commercial Foreclosure $0 - $50,000
    ☐ 109 - Commercial Foreclosure $50,001 - $249,999
    ☐ 110 - Commercial Foreclosure $250,000 - or more
    ☐ 111 - Homestead Residential Foreclosure $0 - $50,000
    ☐ 112 - Homestead Residential Foreclosure $50,001 - $249,999
    ☐ 113 - Homestead Residential Foreclosure $250,000 or more
    ☐ 114 - Non-Homestead Residential Foreclosure $0 - $50,000
    ☐ 115 - Non-Homestead Residential Foreclosure $50,001 - $249,999
    ☐ 116 - Non-Homestead Residential Foreclosure $250,000 or more
    ☐ 117 - Other Real Property Actions $0 - $50,000
    ☐ 118 - Other Real Property Actions $50,001 - $249,999

    ☐ 119 - Other Real Property Actions $250,000 or more
☐ **Professional Malpractice**
    ☐ 094 - Malpractice - Business
    ☐ 095 - Malpractice - Medical
    ☐ 096 - Malpractice - Other professional
☒ **Other**
    ☐ 120 - Antitrust/Trade Regulation
    ☐ 121 - Business Transactions
    ☐ 122 - Constitutional Challenge - Statute or Ordinance
    ☐ 123 - Constitutional Challenge - Proposed amendment
    ☐ 124 - Corporate Trust
    ☐ 125 - Discrimination - Employment or Other
    ☒ 126 - Insurance Claims
    ☐ 127 - Intellectual Property
    ☐ 128 - Libel/Slander
    ☐ 129 - Shareholder Derivative Action
    ☐ 130 - Securities Litigation
    ☐ 131 - Trade Secrets
    ☐ 132 - Trust Litigation
☐ 133 - **Other Civil Complaint**
    ☐ 009 - Bond Estreature
    ☐ 014 - Replevin
    ☐ 024 - Witness Protection
    ☐ 080 - Declaratory Judgment
    ☐ 081 - Injunctive Relief
    ☐ 082 - Equitable Relief
    ☐ 083 - Construction Lien
    ☐ 084 - Petition for Adversary Preliminary Hearing
    ☐ 085 - Civil Forfeiture
    ☐ 086 - Voluntary Binding Arbitration
    ☐ 087 - Personal Injury Protection (PIP)

**COMPLEX BUSINESS COURT**

This action is appropriate for assignment to Complex Business Court as delineated and mandated by the Administrative Order.  Yes ☐ No ☒

REMEDIES SOUGHT (check all that apply):
- ☐     monetary;
- ☐     non-monetary declaratory or injunctive relief;
- ☐     punitive

NUMBER OF CAUSES OF ACTION: [    ]
(specify) _____

_____

IS THIS CASE A CLASS ACTION LAWSUIT?
- ☐ Yes
- ☒ No

HAS NOTICE OF ANY KNOWN RELATED CASE BEEN FILED?
- ☒ No
- ☐ Yes   If "Yes", list all related cases by name, case number, and court.

_____

_____

IS JURY TRIAL DEMANDED IN COMPLAINT?
- ☒ Yes
- ☐ No

---

I CERTIFY that the information I have provided in this cover sheet is accurate to the best of my knowledge and belief.

Signature    /s/ Heather J. Gorin _____    Florida Bar # _____ 84219 _____
                Attorney or party                            (Bar # if attorney)

  Heather J. Gorin _____           December 5, 2014 _____
(type or print name)                       Date

CLK/CT 96 Rev. 12/09                          Clerk's web address: www.miami-dadeclerk.com

Florida Courts E-Filing Portal

Page 1 of 1



IN THE CIRCUIT COURT OF THE 11TH
JUDICIAL CIRCUIT IN AND FOR
MIAMI-DADE COUNTY, FLORIDA

CASE NO.:

AVENTURA LAND HOLDINGS, LTD.,
AVENTURA LAND HOLDING (DEL.),
INC., JAMES COHEN, BRIAN STREET,
RAY NICHOLSON, and MARK PAPAK,

     *Plaintiffs,*

v.

WESTCHESTER SURPLUS LINES
INSURANCE COMPANY,

     *Defendant.*

_____/

## COMPLAINT

Aventura Land Holdings, Ltd. ("ALH, Ltd."), Aventura Land Holding (Del.), Inc. ("ALH (Del.)"), (collectively "ALH"), James Cohen ("Cohen"), Brian Street ("Street"), Ray Nicholson ("Nicholson"), Mark Papak ("Papak") (collectively "the Individuals"), sue Westchester Surplus Lines Insurance Company ("WSLIC"), and allege:

### NATURE OF ACTION

1.     This is an action for damages for breach of contract arising out of WSLIC's failure to defend ALH and the individuals in the underlying action, *Geller v. Aventura Land Holding, Ltd.*, No. 06-09739 CA 06 (Fla. 11th Jud. Cir.) (the "Geller Lawsuit") seeking damages from ALH and the Individuals and ALH in the underlying action, *Hamptons South Condominium Association, Inc. v. Aventura Land Holding, Ltd.*, No. 08-21827 CA 27 (Fla. 11th Jud. Cir.) (the "Hamptons South Lawsuit") seeking damages from ALH.

## JURISDICTION AND VENUE

1. The amount in controversy exceeds $15,000.00, exclusive of attorney's fees, interests and costs.

2. Venue for this action is appropriate in this Court, as the subject insurance policies were issued and delivered in this judicial circuit, ALH and the individuals conduct business in this judicial circuit, and WSLIC actively conducts the business of insurance within this judicial circuit.

3. ALH, Ltd., is a Florida limited liability partnership licensed and doing business in Miami-Dade County, Florida.

4. ALH (Del.), is the general partner of ALH, Ltd. ALH (Del.) is a Delaware corporation licensed and doing business in Miami-Dade County, Florida.

5. Plaintiff, Cohen, is a limited partner of ALH, Ltd., and President and shareholder of ALH (Del.). At all material times, Cohen was a resident of Palm Beach County, Florida and is otherwise *sui juris*.

6. Plaintiff, Street, is a limited partner of ALH, Ltd., and Vice President and shareholder of ALH (Del.). At all material times, Street was a resident of Palm Beach County, Florida and is otherwise *sui juris*.

7. Plaintiff, Nicholson, is a limited partner of ALH, Ltd., and shareholder of ALH (Del.). At all material times, Nicholson was a resident of Oakland County, Michigan and is otherwise *sui juris*.

8. Plaintiff, Papak, is a limited partner of ALH, Ltd., and shareholder of ALH (Del.). At all material times, Nicholson was a resident of Oakland County, Michigan and is otherwise *sui juris*.

9.      Upon information and belief, WSLIC is a Georgia corporation with its principal place of business in Alpharetta, Georgia.

## FACTUAL BACKGROUND

### THE POLICIES

10.     WSLIC sold Miller & Solomon General Contractors, Inc. ("M&S") a commercial general liability policy, bearing policy number GLW777923 with effective dates from December 31, 2003 to June 30, 2005 (the "Primary Policy"). A copy of the Primary Policy is attached as Exhibit A.

11.     The Primary Policy has a per-occurrence limit of liability of $1 million, with an aggregate limit of $2 million.

12.     M&S is the Named Insured under the Primary Policy.

13.     ALH and the Individuals are insured under the Primary Policy as well because the Primary Policy also insures the person or organization that M&S contractually agreed to insure, "but only with respect to liability arising out of [M&S's] ongoing operations performed for that insured."

14.     The Primary Policy also promises to defend and indemnify ALH and the Individuals for damages caused by an "occurrence."

15.     The Primary Policy is an enforceable contract in the state of Florida.

16.     WSLIC also sold to M&S a commercial umbrella policy, bearing policy number CUW7774178 with effective dates from December 31, 2003 to June 30, 2005 (the "Umbrella Policy"). A copy of the Policy is attached as Exhibit B.

17.     The Umbrella Policy has a per-occurrence limit of liability of $10 million, with an aggregate limit of $10 million.

3

18.     M&S is also the Named Insured under the Umbrella Policy.

19.     ALH and the Individuals are insured under the Umbrella Policy as well because the Umbrella Policy also promises to insure "(a) any person, organization, trustee or estate that has obligated you by written contract to provide the insurance that is afforded by this policy, but only with respect to liability arising out of "Your Work," "Your Product" and to property owned or used by you" and "(b) at your option and subject to the terms of the policy, any person, organization, trustee or estate (other than the 'Named Insured') included as an additional insured under the 'Underlying Insurance', but only with respect to liability arising out of 'Your Work,' 'Your Product,' or property owned or used by you."

20.     The Umbrella Policy also promises to "pay on behalf of the 'Insured' those sums in excess of the 'Retained Limit' which the 'Insured', by reason of liability imposed by law, or assumed by the 'Insured' under contract prior to the 'Occurrence', shall become legally obligated to pay as damages for … 'Property Damage' occurring during the policy period.…"

21.     The Umbrella Policy is an enforceable contract under Florida law.[1]

### THE GELLER LAWSUIT

22.     Alfred and Sandra Geller filed suit against ALH, Ltd. and ALH (Del.) on May 19, 2006.  The Gellers brought an action against ALH, Ltd. and ALH (Del.) for five counts: (1) breach of warranty under Section 718.203, Florida Statutes; (2) fraudulent inducement; (3) negligent misrepresentation; (4) breach of contract; and (5) violation of Florida Deceptive and Unfair Trade Practices Act ("FDUPTA").

23.     On December 10, 2007, the complaint was amended.  The complaint maintained its claims for breach of contract and breach of statutory warranties under section 718.203,

---

[1] Collectively, the Primary Policy and the Umbrella Policy are referred to herein as the Policies.

4

Florida Statutes against ALH, Ltd. and ALH (Del.). A claim for negligence was also brought against ALH, Ltd. and ALH (Del.). The Complaint named the individuals as party defendants for violation of FDUPTA and for fraudulent concealment against ALH, Ltd., ALH (Del.) and the individuals. A copy of the Gellers' Second Amended Complaint is attached as Exhibit C.

<div align="center">THE HAMPTONS SOUTH LAWSUIT</div>

24.     The Hamptons South Condominium Association ("the Association"), filed suit against ALH, Ltd. and ALH (Del.) on April 22, 2008, for breach of contract and breach of statutory implied warranties under Section 718.203, Florida Statutes.

26.     The Association amended the Complaint on February 12, 2009. A copy of Hamptons South's Second Amended Complaint is attached as Exhibit D.

<div align="center">NOTICE OF THE GELLER AND HAMPTONS SOUTH LAWSUITS AND<br>WSLIC'S RESPONSE</div>

25.     On September 15, 2009, ALH tendered the Geller and Hamptons South Complaints to WSLIC and advised that "[a]s previously advised via a tender letter sent on June 23, 2008 ... this law firm represents Aventura Land Holding, Ltd. ("ALH") in both [the Geller and Hamptons South Lawsuits]. ACE was also placed on notice of [the Geller and Hamptons South Lawsuits] by a Liberty Mutual representative on June 19, 2008.... Despite these notices, we have not received any response whatsoever from ACE." A copy of this letter is attached as Exhibit E.

26.     On December 8, 2009, WSLIC finally responded advising that no coverage existed for the Hamptons South Lawsuit, but never addressed its coverage obligation in the Geller Action. A copy of this letter is attached as Exhibit F.

<div align="center">**GENERAL ALLEGATIONS**</div>

27.     ALH and the Individuals have engaged the undersigned firm to represent it in this

<div align="center">5</div>

action, and have agreed to pay a reasonable fee for services rendered.

28.    All conditions precedent to this action have been performed, occurred or have otherwise been waived.

### COUNT I – BREACH OF CONTRACT FOR THE GELLER LAWSUIT

29.    ALH and the Individuals re-allege paragraphs 1- 28.

30.    At all times material to this action, ALH and the Individuals were insured by WSLIC under the Policies.

31.    Under the terms of the Policies, WSLIC had a duty to defend and indemnify ALH and the Individuals in the Geller Lawsuit.

32.    WSLIC breached these obligations, as it neither provided a defense nor indemnity.

33.    As a direct, foreseeable and proximate result of WSLIC's breaches of its obligations under the Policies, ALH and the Individuals suffered and continue to suffer damages.

WHEREFORE, Plaintiffs, Aventura Land Holdings, Ltd., Aventura Land Holding (Del.), Inc., James Cohen, Brian Street, Ray Nicholson and Mark Papak demand judgment against Defendant, Westchester Surplus Lines Insurance Company, for damages, pre- and post-judgment interest, attorney's fees, costs and any such other relief this Court deems equitable, just and proper.

### COUNT II – BREACH OF CONTRACT FOR THE HAMPTONS SOUTH LAWSUIT

34.    ALH re-alleges paragraphs 1- 28.

35.    At all times material to this action, ALH was insured by WSLIC under the Policies.

36.    Under the terms of the Policies, WSLIC had a duty to defend and indemnify ALH

in the Hamptons South Lawsuit.

37.    WSLIC breached these obligations, as it neither provided a defense nor indemnity.

38.    As a direct, foreseeable and proximate result of WSLIC's breaches of its obligations under the Policies, ALH suffered and continue to suffer damages.

WHEREFORE, Plaintiffs, Aventura Land Holdings, Ltd. and Aventura Land Holding (Del.), Inc., demand judgment against Defendant, Westchester Surplus Lines Insurance Company, for damages, pre- and post-judgment interest, attorney's fees, costs and any such other relief this Court deems equitable, just and proper.

## JURY DEMAND

Plaintiffs, Aventura Land Holdings, Ltd., Aventura Land Holding (Del.), Inc., James Cohen, Brian Street, Ray Nicholson and Mark Papak demand a trial by jury of all issues so triable as a matter of right.

Dated this 5th day of December, 2014.

<div style="margin-left: 40%;">

**VER PLOEG & LUMPKIN, P.A.**
100 S.E. Second Street, 30th Floor
Miami, FL 33131
(305) 577-3996
(305) 577 3558 *facsimile*

/s/ Heather J. Gorin
**Brenton N. Ver Ploeg**
Florida Bar No. 171470
bverploeg@vpl-law.com
**Heather J. Gorin**
Florida Bar No. 84219
hgorin@vpl-law.com
*Counsel for Plaintiff*

</div>

**EXHIBIT A**

**EXHIBIT A**

WESTCHESTER SURPLUS LINES INSURANCE
500 COLONIAL CENTER PKWY
SUITE 200
ROSWELL GA 30076

## NOTICE OF NONRENEWAL OF INSURANCE

Named Insured & Mailing Address:

MILLER & SOLOMON GENERAL CONTRACTORS, INC.
8491 N. W. 17TH STREET, SUITE L
MIAMI FL 33126

Producer: 71388

HEATH INSURANCE BROKERS, INC
2859 PACES FERRY ROAD
SUITE 1500
ATLANTA GA 30339

Policy No.: GLW777923
Type of Policy: GENERAL LIABILITY OCCURRENCE
Date of Expiration: 03/01/2005; 12:01 A.M. Local Time at the mailing address of the Named Insured.

We will not renew this policy when it expires. Your insurance will cease on the Expiration Date shown above.

The reason for nonrenewal is  We are non-renewing your insurance policy because the above referenced insurance company may be unable to offer renewal coverage with the same terms, conditions and premium rate as the expiring insurance policy.

Mailing of this notice is necessary in order to be in compliance with our regulatory and statutory rules.

We value your business and shall strive to remain responsive to your needs.

# Home Office Copy

Named Insured

MILLER & SOLOMON GENERAL CONTRACTORS, INC.
8491 N. W. 17TH STREET, SUITE L
MIAMI FL 33126

Date Mailed:
30th day of November, 2004

AUTHORIZED REPRESENTATIVE

WESTCHESTER SURPLUS LINES INSURANCE COMPANY
ATLANTA, GA

**COMMON POLICY DECLARATIONS**

CANCELLATION



## ace usa

| POLICY NO. GLW-777923-0/013 |
| --- |

ACCOUNT NUMBER:
NAMED INSURED AND MAILING ADDRESS

AGENCY AND MAILING ADDRESS          71388

| MILLER & SOLOMON GENERAL CONTRACTORS INC. 8491 N. W. 17TH STREET, SUITE L MIAMI FL 33126 | COLEMONT INSURANCE BROKERS 2959 PACES FERRY RD, STE 1500 ATLANTA GA  30339 |
| --- | --- |

POLICY PERIOD:    From 12/31/2003 to 06/30/2005
AT 12:01AM STANDARD TIME AT YOUR MAILING ADDRESS SHOWN ABOVE
EFFECTIVE 05-13-05 THIS POLICY IS CANCELLED SHORT RATE

| TOTAL RETURN PREMIUM FOR    48 DAYS |
| --- |

THIS IS A CERTIFIED COPY ONLY
AND IN NO EVENT TO BE CONSIDERED AS ADDITIONAL
INSURANCE
Bob Wolf
Authorized Representative

Crawford Vivian Trippe

DATE: 07-18-05      BY: _____
                          AUTHORIZED REPRESENTATIVE
                    1750

07-18-05          394    ABUTL       Page    1 of    1



**WESTCHESTER SURPLUS LINES INSURANCE COMPANY**
ATLANTA, GA
## COMMON POLICY DECLARATIONS
CANCELLATION

**ace usa**

| |
|---|
| POLICY NO. GLW-777923-0/010 |

**ACCOUNT NUMBER:**

| NAMED INSURED AND MAILING ADDRESS | AGENCY AND MAILING ADDRESS          71388 |
|---|---|
| MILLER & SOLOMON GENERAL CONTRACTORS INC.<br>8491 N. W. 17TH STREET, SUITE L<br>MIAMI FL 33126 | COLEMONT INSURANCE BROKERS<br>2859 PACES FERRY RD, STE 1500<br>ATLANTA GA  30339 |

POLICY PERIOD:    From 12/31/2003 to 06/30/2005
                  AT 12:01AM STANDARD TIME AT YOUR MAILING ADDRESS SHOWN ABOVE
EFFECTIVE 05-13-05 THIS POLICY IS CANCELLED PRO RATA

| |
|---|
| SUBJECT TO AUDIT |

*Crawford Vinson Truppe*

DATE: 06-08-05        BY: _____
                           AUTHORIZED REPRESENTATIVE
                      1750

06-08-05        394    HWILS        Page    1 of    1



# WESTCHESTER SURPLUS LINES INSURANCE COMPANY
### ATLANTA, GA

## ace usa

### GENERAL CHANGE ENDORSEMENT

| POLICY NO. GLN-777923 |
|---|

NAMED INSURED AND MAILING ADDRESS        AGENCY AND MAILING ADDRESS        71388

| MILLER & SOLOMON GENERAL CONTRACTORS INC.<br>8491 N. W. 17TH STREET, SUITE L<br>MIAMI FL 33126 | COLEMONT INSURANCE BROKERS<br>2859 PACES FERRY RD, STE 1500<br>ATLANTA GA  30339 |
|---|---|

POLICY PERIOD:    From 12/31/2003 to 06/30/2005
                  AT 12:01 A.M. STANDARD TIME AT YOUR MAILING ADDRESS SHOWN AB
EFFECTIVE 02-14-05 THIS POLICY IS AMENDED AS SHOWN


**COMMERCIAL GENERAL LIABILITY**
For an additional/return premium, the items below are changed as indicated:

ENDORSEMENT NO. 10


IT IS AGREED THAT THE EXTENDED NAMED INSURED IS AMENDED TO READ
PER THE ATTACHED.


DATE: 07-18-05        BY: _Crawford Vinson Trippe_

                           AUTHORIZED REPRESENTATIVE

07-18-05        394    ABUTL        Company's Copy        1750
                                    Page    1 of    1

# WESTCHESTER SURPLUS LINES INSURANCE COMPANY
### ATLANTA, GA

## EXTENDED NAMED INSURED

| POLICY NO. GLW-777923-0/012 |
| --- |

ACCOUNT NUMBER:
NAMED INSURED AND MAILING ADDRESS          AGENCY AND MAILING ADDRESS          71388

| MILLER & SOLOMON GENERAL CONTRACTORS INC.<br>8491 N. W. 17TH STREET, SUITE L<br>MIAMI FL 33126 | COLEMONT INSURANCE BROKERS<br>2859 PACES FERRY RD, STE 1500<br>ATLANTA GA  30339 |
| --- | --- |

POLICY PERIOD:   From 12/31/2003 to 06/30/2005
                 AT 12:01AM STANDARD TIME AT YOUR MAILING ADDRESS SHOWN ABOVE
ENDORSEMENT DATE:   02/14/2005

MILLER & SOLOMON GENERAL CONTRACTORS, INC.
MILLER & SOLOMON RESIDENTIAL, INC.
DATATRONICS, INC.
KLK DEVELOPMENT, INC.
ROSARIO EQUIPMENT, INC.
QUALITY SUPPLY, LLC.
AFLR, INC.
1776 PROPERTIES, LLC.
GRYPHON CONSTRUCTION, LLC.

Company's Copy

07-18-05        394    ABUTL        Page    1 of    1        SIGNATURE OF AUTHORIZED REPRESENTATIVE



## WESTCHESTER SURPLUS LINES INSURANCE COMPANY
### ATLANTA, GA

GENERAL CHANGE ENDORSEMENT

**ace usa**

```
┌────────────────────────────────────────┐
│  POLICY NO.  GLW-777923                 │
└────────────────────────────────────────┘
```

NAMED INSURED AND MAILING ADDRESS     AGENCY AND MAILING ADDRESS    71388

```
┌──────────────────────────────────┐   ┌──────────────────────────────────┐
│ MILLER & SOLOMON GENERAL         │   │ COLEMONT INSURANCE BROKERS       │
│ CONTRACTORS INC.                 │   │ 2859 PACES FERRY RD, STE 1500    │
│ 8491 N. W. 17TH STREET, SUITE L  │   │ ATLANTA GA  30339                │
│ MIAMI FL 33126                   │   │                                  │
└──────────────────────────────────┘   └──────────────────────────────────┘
```

POLICY PERIOD:    From 12/31/2003 to 06/30/2005
                  AT 12:01 A.M. STANDARD TIME AT YOUR MAILING ADDRESS SHOWN AB
EFFECTIVE 03-08-05 THIS POLICY IS AMENDED AS SHOWN

### COMMERCIAL GENERAL LIABILITY

For an additional/return premium, the items below are changed as indicated:
ENDORSEMENT NO. 9

IT IS AGREED THAT THE CONSTRUCTION MANAGEMENT   E & O ENDORSEMENT
CG2234 07 98 IS DELETED FROM THE POLICY.

```
┌────────────────────────────────────────────────────────────────────────────┐
│ FORMS AND ENDORSEMENTS                                                      │
│ APPLYING TO COMMERCIAL GENERAL LIABILITY COVERAGE PART AND MADE PART OF     │
│ THIS POLICY AT TIME OF ISSUE:                                               │
│ IL1207 (07-02)                                                             │
└────────────────────────────────────────────────────────────────────────────┘
```

DATE: 06-08-05     BY: _____
                              AUTHORIZED REPRESENTATIVE



# WESTCHES_ER SURPLUS LINES INSURA__CE COMPANY
### ATLANTA, GA

**ace usa**

### GENERAL CHANGE ENDORSEMENT

| POLICY NO. GLW-777923-0/008 |
|---|

ACCOUNT NUMBER:
NAMED INSURED AND MAILING ADDRESS          AGENCY AND MAILING ADDRESS          71388

| MILLER & SOLOMON GENERAL CONTRACTORS INC. 8491 N. W. 17TH STREET, SUITE L MIAMI FL 33126 | HEATH INSURANCE BROKERS, INC. 2859 PACES FERRY RD, STE 1500 ATLANTA GA  30339 |
|---|---|

POLICY PERIOD:    From 12/31/2003 to 06/30/2005
                  AT 12:01AM STANDARD TIME AT YOUR MAILING ADDRESS SHOWN ABOVE
EFFECTIVE 02-14-05 THIS POLICY IS AMENDED AS SHOWN


COMMON POLICY PACKAGE
For an additional/return premium, the items below are changed as indicated:

· THIS ENDORSEMENT IS EFFECTIVE FROM  02/14/2005 TO 06/30/2005

COMMERCIAL GENERAL LIABILITY
For an additional/return premium, the items below are changed as indicated:

ENDORSEMENT NO. 8


IT IS AGREED THAT THE EXTENDED NAMED INSURED IS AMENDED PER THE
ATTACHED.


DATE: 02-23-05      BY: _____ *Crawford Vivian Tripp*
                         _____
                         AUTHORIZED REPRESENTATIVE

02-23-05        ·   394    ABUTL        Company's Copy      1750
                                        Page   1 of   1

WSLIC    7

# WESTCHESTER SURPLUS LINES INSURANCE COMPANY
## ATLANTA, GA

### EXTENDED NAMED INSURED

POLICY NO. GLW-777923-0/008

ACCOUNT NUMBER:
NAMED INSURED AND MAILING ADDRESS

AGENCY AND MAILING ADDRESS       71388

MILLER & SOLOMON GENERAL CONTRACTORS
INC.
8491 N. W. 17TH STREET, SUITE L
MIAMI FL 33126

HEATH INSURANCE BROKERS, INC.
2859 PACES FERRY RD, STE 1500
ATLANTA GA   30339

POLICY PERIOD:    From 12/31/2003 to 06/30/2005
                  AT 12:01AM STANDARD TIME AT YOUR MAILING ADDRESS SHOWN ABOVE
ENDORSEMENT DATE:    02/14/2005


MILLER & SOLOMON GENERAL CONTRACTORS, INC.
MILLER & SOLOMON RESIDENTIAL, INC.
DATATRONICS, INC.
KLK DEVELOPMENT, INC.
ROSARIO EQUIPMENT, INC.
QUALITY SUPPLY, LLC.
AFLR, INC.
1776 PROPERTIES, LLC.
GYPHRON CONSTRUCTION, LLC.

WSLIC    8



# WESTCHESTER SURPLUS LINES INSURANCE COMPANY
ATLANTA, GA
## COMMON POLICY DECLARATIONS
### CHANGE POLICY EXP DATE

**ace usa**

| |
|---|
| POLICY NO. GLW-777923-0/007 |

ACCOUNT NUMBER:
NAMED INSURED AND MAILING ADDRESS     AGENCY AND MAILING ADDRESS    71388

| | |
|---|---|
| MILLER & SOLOMON GENERAL CONTRACTORS INC.<br>8491 N. W. 17TH STREET, SUITE L<br>MIAMI FL 33126 | HEATH INSURANCE BROKERS, INC.<br>2859 PACES FERRY RD, STE 1500<br>ATLANTA GA 30339 |

POLICY PERIOD:   From 12/31/2003 to 06/30/2005
          AT 12:01AM STANDARD TIME AT YOUR MAILING ADDRESS SHOWN ABOVE
POLICY EXPIRATION DATE IS CHANGED TO   06-30-05

ENDORSEMENT NO. 7

*Crawford Vinson Trippe*
Crawford Vinson Trippe

DATE: 01-06-05   BY:

        AUTHORIZED REPRESENTATIVE

1750

01-06-05     394   DJONE     Page   1 of   1



# WESTCHESTER SURPLUS LINES INSURANCE COMPANY
### ATLANTA, GA

## ace usa

GENERAL CHANGE ENDORSEMENT

POLICY NO. GLW-777923

| NAMED INSURED AND MAILING ADDRESS | AGENCY AND MAILING ADDRESS   71388 |
|---|---|
| MILLER & SOLOMON GENERAL CONTRACTORS INC.<br>8491 N. W. 17TH STREET, SUITE L<br>MIAMI FL 33126 | HEATH INSURANCE BROKERS, INC.<br>2859 PACES FERRY RD, STE 1500<br>ATLANTA GA 30339 |

POLICY PERIOD:    From 12/31/2003 to 03/01/2005
                  AT 12:01 A.M. STANDARD TIME AT YOUR MAILING ADDRESS SHOWN AB
EFFECTIVE 12-31-03 THIS POLICY IS AMENDED AS SHOWN

COMMERCIAL GENERAL LIABILITY
For an additional/return premium, the items below are changed as indicated:

ENDORSEMENT NO. 6

IT IS AGREED THE ESTIMATED ANNUAL EXPOSURE SHOWN IN THE PREMIUM IS PAYABLE SECTION ON PAGE 3 OF THE DECLARATIONS PAGE IS AMENDED TO READ AS FOLLOWS:

ESTIMATED TERM EXPOSURE    $150,000,000

DATE: 01-06-05

*Crawford Vinson Trippe*
BY: Crawford Vinson Trippe
AUTHORIZED REPRESENTATIVE

1750

01-06-05          394    DJONE        Page    1 of   1

WSLIC   10



# WESTCHESTER SURPLUS LINES INSURANCE COMPANY
### ATLANTA, GA

### GENERAL CHANGE ENDORSEMENT

## ace usa

> **POLICY NO. GLW-777923**

| NAMED INSURED AND MAILING ADDRESS | AGENCY AND MAILING ADDRESS      71388 |
|---|---|
| MILLER & SOLOMON GENERAL CONTRACTORS INC.<br>8491 N. W. 17TH STREET, SUITE L<br>MIAMI FL 33126 | HEATH INSURANCE BROKERS, INC.<br>2859 PACES FERRY RD, STE 1500<br>ATLANTA GA  30339 |

POLICY PERIOD:   From 12/31/2003 to 03/01/2005
                 AT 12:01 A.M. STANDARD TIME AT YOUR MAILING ADDRESS SHOWN AB
EFFECTIVE 11-10-04 THIS POLICY IS AMENDED AS SHOWN


COMMERCIAL GENERAL LIABILITY
For an additional/return premium, the items below are changed as indicated:
  ENDORSEMENT NO. 5

  IT IS AGREED THAT THE ADDITIONAL INSURED -  LESSOR OF
  LEASED EQUIPMENT ENDORSEMENT CG2034 03 97 IS ADDED TO
  THE POLICY AS PER THE ATTACHED

> **FORMS AND ENDORSEMENTS**
> APPLYING TO COMMERCIAL GENERAL LIABILITY COVERAGE PART AND MADE PART OF THIS POLICY AT TIME OF ISSUE:
> CG2034 (03-97)


DATE: 12-14-04    BY: _Crawford Vinson Tripple_
                       _____
                       AUTHORIZED REPRESENTATIVE

WSLIC  11

COMMERCIAL GENERAL LIABILITY
CG 20 34 03 97

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# ADDITIONAL INSURED – LESSOR OF LEASED EQUIPMENT – AUTOMATIC STATUS WHEN REQUIRED IN LEASE AGREEMENT WITH YOU

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

A. **Who Is An Insured (Section II)** is amended to include as an insured any person or organization from whom you lease equipment when you and such person or organization have agreed in writing in a contract or agreement that such person or organization be added as an additional insured on your policy. Such person or organization is an insured only with respect to their liability arising out of the maintenance, operation or use by you of equipment leased to you by such person or organization. A person's or organization's status as an insured under this endorsement ends when their contract or agreement with you for such leased equipment ends.

B. With respect to the insurance afforded these additional insureds, the following additional exclusions apply:

This insurance does not apply:

1. To any "occurrence" which takes place after the equipment lease expires;

2. To "bodily injury" or "property damage" arising out of the sole negligence of such person or organization.



**WESTCHESTER SURPLUS LINES INSURANCE COMPANY**

ATLANTA, GA

GENERAL CHANGE ENDORSEMENT

### ace.usa

| POLICY NO. GLW-777923 |
|---|

| NAMED INSURED AND MAILING ADDRESS | AGENCY AND MAILING ADDRESS     71388 |
|---|---|
| MILLER & SOLOMON GENERAL CONTRACTORS INC. 8491 N. W. 17TH STREET, SUITE L MIAMI FL 33126 | HEATH INSURANCE BROKERS, INC. 2859 PACES FERRY RD, STE 1500 ATLANTA GA  30339 |

POLICY PERIOD:     From 12/31/2003 to 03/01/2005
                   AT 12:01 A.M. STANDARD TIME AT YOUR MAILING ADDRESS SHOWN AB
EFFECTIVE 12-31-03 THIS POLICY IS AMENDED AS SHOWN


**COMMERCIAL GENERAL LIABILITY**
For an additional/return premium, the items below are changed as indicated:

ENDORSEMENT NO. 4


IT IS AGREED THAT THE ADDITIONAL INSURED - OWNERS, LESSEES OR
CONTRACTORS - COMPLETED OPERATIONS, FORM NUMBER CG2037 07 04,
IS ADDED PER THE ATTACHED.


DATE: 06-16-04     BY: _Crawford Vinon Tripp_

AUTHORIZED REPRESENTATIVE

WSLIC   13

POLICY NUMBER:                                              COMMERCIAL GENERAL LIABILITY
                                                                  CG 20 37 07 04

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS – COMPLETED OPERATIONS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

### SCHEDULE

| Name Of Additional Insured Person(s) Or Organization(s): | Location And Description Of Completed Operations |
|---|---|
| DOWNTOWN DADELAND RESIDENTIAL CONDO LLC. C/O GULFSIDE DEV. CO. 6100 S.W. 76TH STREET SOUTH MIAMI, FL 33143 | PROJECT: DOWNTOWN DADELAND 7250 NORTH KENDALL DRIVE MIAMI, FL |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**Section II – Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury" or "property damage" caused, in whole or in part, by "your work" at the location designated and described in the schedule of this endorsement performed for that additional insured and included in the "products-completed operations hazard".

CG 20 37 07 04                      © ISO Properties, Inc., 2004                      Page 1 of 1   14
                                                                                      WSL1C



# WESTCHEST  L SURPLUS LINES INSURAN  E COMPANY
## ATLANTA, GA

**ace usa**

GENERAL CHANGE ENDORSEMENT

POLICY NO. GLW-777923

| NAMED INSURED AND MAILING ADDRESS | AGENCY AND MAILING ADDRESS    71388 |
|---|---|
| MILLER & SOLOMON GENERAL CONTRACTORS INC.<br>8491 N. W. 17TH STREET, SUITE L<br>MIAMI FL 33126 | HEATH INSURANCE BROKERS, INC.<br>2859 PACES FERRY RD, STE 1500<br>ATLANTA GA  30339 |

POLICY PERIOD:   From 12/31/2003 to 03/01/2005
            AT 12:01 A.M. STANDARD TIME AT YOUR MAILING ADDRESS SHOWN AB
EFFECTIVE 12-31-03 THIS POLICY IS AMENDED AS SHOWN


**COMMERCIAL GENERAL LIABILITY**
For an additional/return premium, the items below are changed as indicated:

ENDORSEMENT NO. 3


IT IS AGREED THAT THE ADDITIONAL INSURED - DESIGNATED PERSON OR
ORGANIZATION, FORM NUMBER CG2026 07 04, IS ADDED PER THE ATTACHED.


DATE: 06-16-04        BY: *Crawford Vinson Tripp*

AUTHORIZED REPRESENTATIVE

POLICY NUMBER:

COMMERCIAL GENERAL LIABILITY
CG 20 26 07 04

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# ADDITIONAL INSURED – DESIGNATED PERSON OR ORGANIZATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

SCHEDULE

| Name Of Additional Insured Person(s) Or Organization(s) |
|---|
| GMAC COMMERCIAL MORTGAGE CORP. |
| CONSTRUCTION LENDING |
| 100 SOUTH WACKER DRIVE, SUITE 400 |
| CHICAGO, IL 60606 |
| |
| KEY BANK NATIONAL ASSOCIATION |
| ISAOS, ATTN: NANCY BRIDEAU |
| 66 SOUTH PEARL STREET, 8TH FLOOR |
| ALBANY, NY 12207 |
| |
| RE: PROJECT: DOWNTOWN DADELAND, 7250 NORTH KENDALL DRIVE, MIAMI FL |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |

**Section II – Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by your acts or omissions or the acts or omissions of those acting on your behalf:

**A.** In the performance of your ongoing operations; or

**B.** In connection with your premises owned by or rented to you.

© ISO Properties, Inc., 2004

WSL1C  16



# WESTCHESTER SURPLUS LINES INSURANCE COMPANY
### ATLANTA, GA

GENERAL CHANGE ENDORSEMENT

**ace usa**

POLICY NO. GLW-777923

| NAMED INSURED AND MAILING ADDRESS | AGENCY AND MAILING ADDRESS     71388 |
|---|---|
| MILLER & SOLOMON GENERAL CONTRACTORS INC.<br>8491 N. W. 17TH STREET, SUITE L<br>MIAMI FL 33126 | HEATH INSURANCE BROKERS, INC.<br>2859 PACES FERRY RD, STE 1500<br>ATLANTA GA  30339 |

POLICY PERIOD:   From 12/31/2003 to 03/01/2005
AT 12:01 A.M. STANDARD TIME AT YOUR MAILING ADDRESS SHOWN AB
EFFECTIVE 12-31-03 THIS POLICY IS AMENDED AS SHOWN

**COMMERCIAL GENERAL LIABILITY**
For an additional/return premium, the items below are changed as indicated:

ENDORSEMENT NO. 2

IT IS AGREED THAT THE ADDITIONAL INSURED - OWNERS, LESSEES OR
CONTRACTORS - SCHEDULED PERSON OR ORGANIZATION, FORM NUMBER
CG2010 07 04, IS ADDED PER THE ATTACHED.

DATE: 06-16-04      BY: *Crawford Vinson Tripp*
AUTHORIZED REPRESENTATIVE

06-16-04        394   ABUTL        Company's Copy       1750
Page   1 of   1

POLICY NUMBER:

COMMERCIAL GENERAL LIABILITY
CG 20 10 07 04

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS – SCHEDULED PERSON OR ORGANIZATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

## SCHEDULE

| Name Of Additional Insured Person(s) Or Organization(s): | Location(s) Of Covered Operations |
|---|---|
| DOWNTOWN DADELAND RESIDENTIAL CONDO LLC. C/O GULFSIDE DEV. CO. 6100 S.W. 76TH STREET SOUTH MIAMI, FL 33143 | PROJECT: DOWNTOWN DADELAND 7250 NORTH KENDALL DRIVE MIAMI, FL |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**A.** Section II – Who Is An Insured is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by:

**1.** Your acts or omissions; or

**2.** The acts or omissions of those acting on your behalf;

in the performance of your ongoing operations for the additional insured(s) at the location(s) designated above.

**B.** With respect to the insurance afforded to these additional insureds, the following additional exclusions apply:

This insurance does not apply to "bodily injury" or "property damage" occurring after:

**1.** All work, including materials, parts or equipment furnished in connection with such work, on the project (other than service, maintenance or repairs) to be performed by or on behalf of the additional insured(s) at the location of the covered operations has been completed; or

**2.** That portion of "your work" out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.

CG 20 10 07 04

© ISO Properties, Inc., 2004

Page 1 of 1

WSL1C   18



**WESTCHESTER SURPLUS LINES INSURANCE COMPANY**

ATLANTA, GA

GENERAL CHANGE ENDORSEMENT

**ace usa**

| POLICY NO. GLW-777923 |
|---|

| NAMED INSURED AND MAILING ADDRESS | AGENCY AND MAILING ADDRESS          71388 |
|---|---|
| MILLER & SOLOMON GENERAL CONTRACTORS INC.<br>8491 N. W. 17TH STREET, SUITE L<br>MIAMI FL 33126 | HEATH INSURANCE BROKERS, INC.<br>2859 PACES FERRY RD, STE 1500<br>ATLANTA GA  30339 |

POLICY PERIOD:    From 12/31/2003 to 03/01/2005
                 AT 12:01 A.M. STANDARD TIME AT YOUR MAILING ADDRESS SHOWN AB
EFFECTIVE 02-17-04 THIS POLICY IS AMENDED AS SHOWN

COMMERCIAL GENERAL LIABILITY
For an additional/return premium, the items below are changed as indicated:

ENDORSEMENT NO. 1

IT IS AGREED THAT THE CANCELLATION CONDITION - AMENDED CERTIFICATE
HOLDERS, FORM NUMBER MANA0145 03 04, IS ADDED PER THE ATTACHED.

DATE: 06-16-04        BY: _Crawford Union Tripp_

AUTHORIZED REPRESENTATIVE

WSLIC  19

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CANCELLATION CONDITION – AMENDED CERTIFICATE HOLDERS

Designated Entities:  FLORIDA DEVELOPMENT ASSOCIATES, LTD
707 5TH STREET
MIAMI BEACH, FL 33139

With respect to the entities listed above, paragraph A.2. of the Common Policy Conditions endorsement is deleted in its entirety and replaced by the following:

2. We may cancel this policy by mailing or delivering to the entity listed above written notice of cancellation at least 30 days before the effective date of cancellation if we cancel for any reason other than non-payment of premium.

MANA 0145 03-04

WSLIC   20



**WESTCHESTER SURPLUS LINES INSURANCE COMPANY**
ATLANTA, GA
**COMMON POLICY DECLARATIONS**
DECLARATIONS

**ace usa**

| POLICY NO. GLW-777923-0/000 |
| --- |

ACCOUNT NUMBER:
NAMED INSURED AND MAILING ADDRESS          AGENCY AND MAILING ADDRESS          71388

| MILLER & SOLOMON GENERAL CONTRACTORS INC. | HEATH INSURANCE BROKERS, INC. |
| 8491 N. W. 17TH STREET, SUITE L | 2859 PACES FERRY RD, STE 1500 |
| MIAMI FL 33126 | ATLANTA GA  30339 |

POLICY PERIOD:     From 12/31/2003 to 03/01/2005
                   AT 12:01AM STANDARD TIME AT YOUR MAILING ADDRESS SHOWN ABOVE
THE NAMED INSURED IS :   CORPORATION          BUSINESS DESC :

IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF
THIS POLICY, WE AGREE WITH YOU TO PROVIDE INSURANCE AS STATED IN THIS
POLICY.

THIS POLICY CONSISTS OF THE FOLLOWING COVERAGE PARTS FOR WHICH A
PREMIUM IS INDICATED.   THIS PREMIUM MAY BE SUBJECT TO ADJUSTMENT.

|  | PREMIUM |
| --- | --- |
| COMMERCIAL PROPERTY | NOT COVERED |
| COMMERCIAL GENERAL LIABILITY | |
| COMMERCIAL CRIME | NOT COVERED |
| COMMERCIAL INLAND MARINE | NOT COVERED |

**ESTIMATED TOTAL PREMIUM**

THE POLICY WRITING NONREFUNDABLE MINIMUM PREMIUM IS    NONE

PREMIUM SHOWN IS PAYABLE:   $562,500 AT INCEPTION;        1ST ANNIVERSARY;        2ND ANNIVERSARY

**FORMS AND ENDORSEMENTS APPLICABLE TO ALL COVERAGE PARTS**
1L0017 (11-98)

THESE DECLARATIONS AND THE COMMON POLICY DECLARATIONS, IF APPLICABLE, TOGETHER WITH THE COMMON POLICY CONDITIONS,
COVERAGE FORM(S) AND FORMS AND ENDORSEMENTS, IF ANY, ISSUED TO FORM A PART THEREOF, COMPLETE THE ABOVE NUMBERED POLICY.

· DATE: 02-24-04      BY:  *Crawford Brown Trigg*
                                              AUTHORIZED REPRESENTATIVE

CERTIFIED COPY
THIS IS CERTIFIED COPY OF POLICY NO. GLW 777923
0/000 AND IN NO EVENT TO BE CONSIDERED AS ADDITIONAL ABUTL
INSURANCE
Jean Halliwell
Authorized Representative

Company's Copy      1750
Page      1 of     3

Phone Notes: This policy may be subject to
the Surplus Line Laws ... 
... , any ... 
... special provisions or ...
your state.

21



# WESTCHESTER SURPLUS LINES INSURANCE COMPANY
ATLANTA, GA
## COMMERCIAL GENERAL LIABILITY
DECLARATIONS

**ace usa**

| POLICY NO. GLW-777923 |
| --- |

### NAMED INSURED AND MAILING ADDRESS

MILLER & SOLOMON GENERAL CONTRACTORS INC.
8491 N. W. 17TH STREET, SUITE L
MIAMI FL 33126

### AGENCY AND MAILING ADDRESS        71388

HEATH INSURANCE BROKERS, INC.
2859 PACES FERRY RD, STE 1500
ATLANTA GA  30339

POLICY PERIOD:   From 12/31/2003 to 03/01/2005
                 AT 12:01AM STANDARD TIME AT YOUR MAILING ADDRESS SHOWN ABOVE

### LIMITS OF INSURANCE

| | |
| --- | --- |
| GENERAL AGGREGATE | $  2,000,000 |
| PRODUCTS-COMPLETED OPERATIONS AGGREGATE | $  2,000,000 |
| PERSONAL INJURY & ADVERTISING INJURY | $  1,000,000 |
| EACH OCCURRENCE | $  1,000,000 |
| DAMAGE TO PREMISES RENTED TO YOU | $    100,000  ANY ONE PREMISES |
| MEDICAL EXPENSE | $      5,000  ANY ONE PERSON |

BODILY INJURY AND PROPERTY
DAMAGE COMBINED DEDUCTIBLE: See Manuscript Forms

LOCATION OF ALL PREMISES YOU OWN, RENT OR OCCUPY:
LOC #  1: ALL LOCATIONS

MANUSCRIPT FORMS:

CG0300 (01-96) : DEDUCTIBLE LIABILITY INSURANCE
--------------

| Coverage | Amount and Basis of Deductible |
| --- | --- |
| Bodily Injury Liability and | $ 50,000  per  OCCURRENCE |
| Property Damage Liability Combined | |

CG2154 (01-96) : EXCLUSION - DESIGNATED WORK
--------------   ANY PRIOR OR ONGOING OPERATION(S) WHERE YOU PARTICIPATED IN A CONSOLIDATED
                 (WRAP-UP) INSURANCE PROGRAM.



# WESTCHEST·R SURPLUS LINES INSURAI·E COMPANY
### ATLANTA, GA
## COMMERCIAL GENERAL LIABILITY
### DECLARATIONS

**ace usa**

| POLICY NO. GLW-777923 |
| --- |

**NAMED INSURED AND MAILING ADDRESS**  **AGENCY AND MAILING ADDRESS**  **71388**

| MILLER & SOLOMON GENERAL CONTRACTORS INC.<br>8491 N. W. 17TH STREET, SUITE L<br>MIAMI FL 33126 | HEATH INSURANCE BROKERS, INC.<br>2859 PACES FERRY RD, STE 1500<br>ATLANTA GA  30339 |
| --- | --- |

**POLICY PERIOD:**   From 12/31/2003 to 03/01/2005
AT 12:01AM STANDARD TIME AT YOUR MAILING ADDRESS SHOWN ABOVE

Premium is Payable:
$
                    In advance adjustable at a rate of
                    per $1,000 GROSS RECEIPTS (TERM)
                    Estimated Annual Exposure   $150,000,000
                    Annual Minimum Premium        $
$ N/A
$ N/A
$
                    Total Amount Due

| GENERAL LIABILITY PREMIUM |
| --- |

## FORMS AND ENDORSEMENTS

APPLYING TO COMMERCIAL GENERAL LIABILITY COVERAGE PART AND MADE PART OF THIS POLICY AT TIME OF ISSUE:

| | | | | | |
| --- | --- | --- | --- | --- | --- |
| GLX0001 01-96 | ULX0006 04-98 | LD5S23q(04-02) | CGG300 (01-96) | IL0021 (04-98) | CG2147 (07-98) |
| CG2167 (04-02) | CG2154 (01-96) | ULX0005 01-97 | CG2243 (07-98) | GLE0027 08-98 | CG2234 (07-98) |
| CG2149 (09-99) | CG201Q (10-01) | CO2503 (03-97) | GLE0052 09-01 | MANA0132 | GLE0030 12-98 |
| CG0062 (12-02) | MANA0089 | TRIA11 | ALL-13845 | ALL-14151 | CG0001 (10-01) |

THESE DECLARATIONS AND THE COMMON POLICY DECLARATIONS, IF APPLICABLE, TOGETHER WITH THE COMMON POLICY CONDITIONS,
COVERAGE FORM(S) AND FORMS AND ENDORSEMENTS, IF ANY, ISSUED TO FORM A PART THEREOF, COMPLETE THE ABOVE NUMBERED POLICY.

DATE: 02-24-04      BY: _____
                        AUTHORIZED REPRESENTATIVE

WSLIC   23

# FLORIDA

## NOTICE:

**THIS INSURANCE IS ISSUED PURSUANT TO THE FLORIDA SURPLUS LINES LAW. PERSONS INSURED BY SURPLUS LINES CARRIERS DO NOT HAVE THE PROTECTION OF THE FLORIDA INSURANCE GUARANTY ACT TO THE EXTENT OF ANY RIGHT OF RECOVERY FOR THE OBLIGATION OF AN INSOLVENT UNLICENSED INSURER.**

SL FL 2004

# WESTCHEST R SURPLUS LINES INSURA E COMPANY
ATLANTA, GA
## COMMON POLICY DECLARATIONS
EXTENDED NAMED INSURED

POLICY NO. GLW-777923-0/000

ACCOUNT NUMBER:
NAMED INSURED AND MAILING ADDRESS          AGENCY AND MAILING ADDRESS          71388

MILLER & SOLOMON GENERAL CONTRACTORS
INC.
8491 N. W. 17TH STREET, SUITE L
MIAMI FL 33126

HEATH INSURANCE BROKERS, INC.
2859 PACES FERRY RD, STE 1500
ATLANTA GA  30339

POLICY PERIOD:    From 12/31/2003 to 03/01/2005
AT 12:01AM STANDARD TIME AT YOUR MAILING ADDRESS SHOWN ABOVE

MILLER & SOLOMON GENERAL CONTRACTORS, INC.
MILLER & SOLOMON RESIDENTIAL, INC.
DATATRONICS, INC.
KLK DEVELOPMENT, INC.
ROSARIO EQUIPMENT, INC.
QUALITY SUPPLY, LLC.
AFLR, INC.
1776 PROPERTIES, LLC.

Company's Copy

02-24-04          394    ABUTL          Page     1 of     1          SIGNATURE OF AUTHORIZED REPRESENTATIVE

# WESTCHESTER SURPLUS LINES INSURANCE COMPANY
### ATLANTA, GA

## FORMS SCHEDULE

> **POLICY NO. GLW-777923-0/000**

**ACCOUNT NUMBER:**

| NAMED INSURED AND MAILING ADDRESS | AGENCY AND MAILING ADDRESS       71388 |
|---|---|
| MILLER & SOLOMON GENERAL CONTRACTORS INC.<br>8491 N. W. 17TH STREET, SUITE L<br>MIAMI FL 33126 | HEATH INSURANCE BROKERS, INC.<br>2859 PACES FERRY RD, STE 1500<br>ATLANTA GA  30339 |

**POLICY PERIOD:**   From 12/31/2003 to 03/01/2005
AT 12:01AM STANDARD TIME AT YOUR MAILING ADDRESS SHOWN ABOVE

COMMON POLICY PACKAGE
IL0017 (11-98)   COMMON POLICY CONDITIONS

COMMERCIAL GENERAL LIABILITY
GLX0001 01-96   DISCRIMINATION EXCLUSION
ULX0006 04-98   ASBESTOS EXCLUSION (ALL STATES EXCEPT WA)
LD5S23g(04-02)   SIGNATURE PAGE (WESTCHESTER SURPLUS LINES)
CG0300 (01-96)   DEDUCTIBLE LIABILITY INSURANCE
IL0021 (04-98)   NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
CG2147 (07-98)   EMPLOYMENT-RELATED PRACTICES EXCLUSION
CG2167 (04-02)   FUNGI OR BACTERIA EXCLUSION
CG2154 (01-96)   EXCLUSION-DESIGNATED OPERATIONS COVERED BY A
ULX0005 01-97   LEAD EXCLUSION
CG2243 (07-98)   EXCLUSION - ENGINEERS, ARCHITECTS OR SURVEYORS PRO
GLE0027 08-98   EMPLOYEE BENEFITS LIABILITY
CG2234 (07-98)   EXCLUSION - CONSTRUCTION MANAGEMENT ERRORS & OMISS
CG2149 (09-99)   TOTAL POLLUTION EXCLUSION
CG2010 (10-01)   ADDITIONAL INSURED-OWNERS,LESSEES OR CONTRACTORS-S
CG2503 (03-97)   DESIGNATED CONSTRUCTION PROJECT GEN. AGGRGT LIMIT
GLE0052 09-01   MINIMUM EARNED PREMIUM PROVISION
MANA0132   RESIDENTIAL CONSTRUCTION EXCLUSION
GLE0030 12-98   INDEPENDENT CONTRACTORS CONDITIONS ENDORSEMENT
CG0062 (12-02)   WAR LIABILITY EXCLUSION
MANA0089   SERVICE OF SUIT ENDORSEMENT
TRIA11   POLICYHOLDER DISCLOSURE NOTICE-TERRORISM INS. CVG.
ALL-13845   LTD. EXCL. OF CERTIFIED ACTS OF TERRORISM
ALL-14151   EXCL. PUN. DMGS. RELATED TO CERT. ACT OF TERRORISM
CG0001 (10-01)   COMMERCIAL GENERAL LIABILITY COVERAGE FORM

WSLIC  26

IL 00 17 11 98

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

## A. Cancellation

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

## B. Changes

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

## C. Examination Of Your Books And Records

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

## D. Inspections And Surveys

1. We have the right to:

   a. Make inspections and surveys at any time;

   b. Give you reports on the conditions we find; and

   c. Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

   a. Are safe or healthful; or

   b. Comply with laws, regulations, codes or standards.

3. Paragraphs 1. and 2. of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph 2. of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

## E. Premiums

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

## F. Transfer Of Your Rights And Duties Under This Policy

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

 Copyright, Insurance Services Office, Inc., 1998

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# DISCRIMINATION EXCLUSION

This policy does not apply to any liability or damage caused by the acts or omissions of any insured or insured's employee or any person acting on behalf of the insured arising out of:

1.    Discrimination of any kind; and

2.    Any actual or alleged defamation, emotional distress, humiliation or harassment which arises out of discrimination of any kind.

GLX 0001 01 96

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# ABSOLUTE ASBESTOS EXCLUSION

1.      This policy does not apply to "bodily injury", "property damage", "personal injury", or "advertising injury" or any other liability or damage arising out of or involving asbestos, asbestos fibers, or any product containing asbestos or asbestos fibers.

2.      Coverage for any fees, costs or expenses of any nature whatsoever in the investigation or defense of any claim or "suit" arising out of or involving asbestos, asbestos fibers or any product containing asbestos or asbestos fibers.

ULX 0006 04 98

WSLIC  29

## SIGNATURE ENDORSEMENT

THE ONLY SIGNATURES APPLICABLE TO THIS POLICY ARE THOSE REPRESENTING THE COMPANY NAMED ON THE FIRST PAGE OF THE DECLARATIONS.

By signing and delivering the policy to you, we state that it is a valid contract when countersigned by our authorized representative.

**ILLINOIS UNION INSURANCE COMPANY**
Chicago, Illinois

**INA SURPLUS INSURANCE COMPANY**
Philadelphia, Pennsylvania

GEORGE D. MULLIGAN, Secretary                     SUSAN RIVERA, President

**WESTCHESTER SURPLUS LINES INSURANCE COMPANY**
Atlanta, Georgia

GEORGE D. MULLIGAN, Secretary                     BRIAN E. DOWD, President

_____
Authorized Agent

LD-5S23g (4/02) Ptd. in U.S.A.

WSLIC   30

POLICY NUMBER:

COMMERCIAL GENERAL LIABILITY
CG 03 00 01 96

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# DEDUCTIBLE LIABILITY INSURANCE

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

### SCHEDULE

| Coverage | Amount and Basis of Deductible | |
|---|---|---|
| | PER CLAIM | or PER OCCURRENCE |
| Bodily Injury Liability | $ | $ |
| OR | | |
| Property Damage Liability | $ | $ |
| OR | | |
| Bodily Injury Liability and/or Property Damage Liability Combined | $ | $ |

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

**APPLICATION OF ENDORSEMENT** (Enter below any limitations on the application of this endorsement. If no limitation is entered, the deductibles apply to damages for all "bodily injury" and "property damage", however caused):

A. Our obligation under the Bodily Injury Liability and Property Damage Liability Coverages to pay damages on your behalf applies only to the amount of damages in excess of any deductible amounts stated in the Schedule above as applicable to such coverages.

B. You may select a deductible amount on either a per claim or a per "occurrence" basis. Your selected deductible applies to the coverage option and to the basis of the deductible indicated by the placement of the deductible amount in the Schedule above. The deductible amount stated in the Schedule above applies as follows:

1. **PER CLAIM BASIS.** If the deductible amount indicated in the Schedule above is on a per claim basis, that deductible applies as follows:

   a. Under Bodily Injury Liability Coverage, to all damages sustained by any one person because of "bodily injury";

b. Under Property Damage Liability Coverage, to all damages sustained by any one person because of "property damage"; or

c. Under Bodily Injury Liability and/or Property Damage Liability Coverage Combined, to all damages sustained by any one person because of:

   (1) "Bodily injury";

   (2) "Property damage"; or

   (3) "Bodily injury" and "property damage" combined

as the result of any one "occurrence".

If damages are claimed for care, loss of services or death resulting at any time from "bodily injury", a separate deductible amount will be applied to each person making a claim for such damages.

With respect to "property damage", person includes an organization.

 Copyright, Insurance Services Office, Inc., 1994

**2. PER OCCURRENCE BASIS.** If the deductible amount indicated in the Schedule above is on a "per occurrence" basis, that deductible amount applies as follows:

**a.** Under Bodily Injury Liability Coverage, to all damages because of "bodily injury";

**b.** Under Property Damage Liability Coverage, to all damages because of "property damage"; or

**c.** Under Bodily Injury Liability and/or Property Damage Liability Coverage Combined, to all damages because of:

**(1)** "Bodily injury";

**(2)** "Property damage"; or

**(3)** "Bodily injury" and "property damage" combined

as the result of any one "occurrence", regardless of the number of persons or organizations who sustain damages because of that "occurrence".

**C.** The terms of this insurance, including those with respect to:

**1.** Our right and duty to defend the insured against any "suits" seeking those damages; and

**2.** Your duties in the event of an "occurrence", claim, or "suit"

apply irrespective of the application of the deductible amount.

**D.** We may pay any part or all of the deductible amount to effect settlement of any claim or "suit" and, upon notification of the action taken, you shall promptly reimburse us for such part of the deductible amount as has been paid by us.

Copyright, Insurance Services Office, Inc., 1994

INTERLINE
IL 00 21 04 98

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
### (Broad Form)

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS POLICY
COMMERCIAL AUTO COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
PROFESSIONAL LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
SPECIAL PROTECTIVE AND HIGHWAY LIABILITY POLICY NEW YORK DEPARTMENT OF TRANSPORTATION
UNDERGROUND STORAGE TANK POLICY

1. The insurance does not apply:

A. Under any Liability Coverage, to "bodily injury" or "property damage":

(1) With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

(2) Resulting from the "hazardous properties" of "nuclear material" and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

B. Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

C. Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material", if:

(1) The "nuclear material" (a) is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or (b) has been discharged or dispersed therefrom;

(2) The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "insured"; or

(3) The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to "property damage" to such "nuclear facility" and any property thereat.

2. As used in this endorsement:

"Hazardous properties" includes radioactive, toxic or explosive properties.

"Nuclear material" means "source material", "Special nuclear material" or "by-product material".

Copyright, Insurance Services Office, Inc., 1997       WSL1C 33

"Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor".

"Waste" means any waste material (a) containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and (b) resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

"Nuclear facility" means:

(a) Any "nuclear reactor";

(b) Any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing "spent fuel", or (3) handling, processing or packaging "waste";

(c) Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

(d) Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

"Property damage" includes all forms of radioactive contamination of property.

Copyright, Insurance Services Office, Inc., 1997

IL 00 21 04 98

COMMERCIAL GENERAL LIABILITY
CG 21 47 07 98

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EMPLOYMENT-RELATED PRACTICES EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph 2., Exclusions of Section I – Coverage A – Bodily Injury And Property Damage Liability:

This insurance does not apply to:

"Bodily injury" to:

    (1) A person arising out of any:

        (a) Refusal to employ that person;

        (b) Termination of that person's employment; or

        (c) Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

    (2) The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" to that person at whom any of the employment-related practices described in Paragraphs (a), (b), or (c) above is directed.

This exclusion applies:

    (1) Whether the insured may be liable as an employer or in any other capacity; and

    (2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

**B.** The following exclusion is added to Paragraph 2., Exclusions of Section I – Coverage B – Personal And Advertising Injury Liability:

This insurance does not apply to:

"Personal and advertising injury" to:

    (1) A person arising out of any:

        (a) Refusal to employ that person;

        (b) Termination of that person's employment; or

        (c) Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

    (2) The spouse, child, parent, brother or sister of that person as a consequence of "personal and advertising injury" to that person at whom any of the employment-related practices described in Paragraphs (a), (b), or (c) above is directed.

This exclusion applies:

    (1) Whether the insured may be liable as an employer or in any other capacity; and

    (2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

Copyright, Insurance Services Office, Inc., 1997

COMMERCIAL GENERAL LIABILITY
CG 21 67 04 02

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# FUNGI OR BACTERIA EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph 2., Exclusions of Section I − Coverage A − Bodily Injury And Property Damage Liability:

**2. Exclusions**

This insurance does not apply to:

**Fungi or Bacteria**

**a.** "Bodily injury" or "property damage" which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.

**b.** Any loss, cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

This exclusion does not apply to any "fungi" or bacteria that are, are on, or are contained in, a good or product intended for consumption.

**B.** The following exclusion is added to Paragraph 2., Exclusions of Section I − Coverage B − Personal And Advertising Injury Liability:

**2. Exclusions**

This insurance does not apply to:

**Fungi or Bacteria**

**a.** "Personal and advertising injury" which would not have taken place, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury.

**b.** Any loss, cost or expense arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

**C.** The following definition is added to the Definitions Section:

"Fungi" means any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents or byproducts produced or released by fungi.

© ISO Properties, Inc., 2001

POLICY NUMBER:

COMMERCIAL GENERAL LIABILITY
CG 21 54 01 96

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION – DESIGNATED OPERATIONS COVERED BY A CONSOLIDATED (WRAP-UP) INSURANCE PROGRAM

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

**Description and Location of Operation(s):**

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

The following exclusion is added to paragraph 2., Exclusions of COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY (Section I – Coverages):

This insurance does not apply to "bodily injury" or "property damage" arising out of either your ongoing operations or operations included within the "products-completed operations hazard" at the location described in the Schedule of this endorsement, as a consolidated (wrap-up) insurance program has been provided by the prime contractor/project manager or owner of the construction project in which you are involved.

This exclusion applies whether or not the consolidated (wrap-up) insurance program:

(1) Provides coverage identical to that provided by this Coverage Part;

(2) Has limits adequate to cover all claims; or

(3) Remains in effect.

Copyright, Insurance Services Office, Inc., 1994

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# LEAD EXCLUSION

This policy does not apply to:

1. "Bodily injury", property damage", "personal injury", "advertising injury" or any other liability or damage arising out of or involving lead, paint containing lead or any other product containing lead; or

2. Any fees, costs or expenses of any nature whatsoever in the investigation or defense of any "claim" or "suit" arising out of or involving lead, paint containing lead or any other product containing lead.

ULX 0006 01 97

COMMERCIAL GENERAL LIABILITY
CG 22 43 07 98

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION – ENGINEERS, ARCHITECTS OR SURVEYORS PROFESSIONAL LIABILITY

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following exclusion is added to Paragraph 2., Exclusions of Section I – Coverage A – Bodily Injury And Property Damage Liability and Paragraph 2., Exclusions of Section I – Coverage B – Personal And Advertising Injury Liability:

This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of the rendering of or failure to render any professional services by you or any engineer, architect or surveyor who is either employed by you or performing work on your behalf in such capacity.

Professional services include:

1. The preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; and

2. Supervisory, inspection, architectural or engineering activities.

Copyright, Insurance Services Office, Inc., 1997

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# EMPLOYEE BENEFITS LIABILITY ENDORSEMENT

1.     Item Four of the Declarations, Limits of Insurance, is amended to include the following:

    (E)    $1,000,000    EACH "WRONGFUL ACT" OR SERIES OF RELATED "WRONGFUL ACTS"

            $1,000,000    "EMPLOYEE BENEFITS" LIABILITY AGGREGATE

2.    I.    INSURING AGREEMENT

    A.    We will pay those sums which the insured shall become legally obligated to pay as damages because of a "wrongful act" in the "administration" of "Employee Benefits".  We will have the right and duty to defend any "suit" seeking those damages.  We may at our discretion investigate any  "wrongful act" and settle any claim or "suit" that may result.  But

        (1)    The amount that we will pay for damages is limited as described above in paragraph 1.; and

        (2)    Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements.

    B.    This insurance applies only to a "wrongful act" in the "administration" of the insured's "Employee Benefits" which occur during the policy period and take place in the "coverage territory".

    II.    EXCLUSIONS

This insurance does not apply to:

    (1)    Any dishonest, fraudulent, criminal or malicious act or omission, libel, slander, discrimination or humiliation or willful or reckless violation of any statute.

    (2)    Any fines, penalties or taxes.

    (3)    Any  claim or "suit" arising out of loss of currency, coins, bank notes, bullion, checks, money orders and all negotiable and non-negotiable instruments or contracts representing money.

    (4)    Any claim or "suit" arising out of the insured's failure to comply with any law concerning Workers' Compensation, Unemployment Insurance, Social Security, Disability Benefits or any similar law.

    (5)    Any claim or "suit" arising out of failure of performance of contract by any insurer.

(6) Any claim or "suit" based upon:

    (I)    Failure of any investment to perform; or

    (II)    Advice given by an insured to participate or not to participate in any "Employee Benefit" Plan.

(7) Any claim or "suit" arising out of an insufficiency of funds to meet any obligation under any "Employee Benefits" Plan.

(8) Any known claim(s) or "suit(s)" arising out of any "wrongful act" which has occurred, been notified to any insurer or known to the insured prior to the inception of this policy.

(9) Any "breach of fiduciary duty" by any other person for which the insured is legally responsible and arising out of the insured's activity as a fiduciary of any plan covered by this endorsement.

    For the purpose of this endorsement, the term "breach of fiduciary duty" shall mean the violation of any of the responsibilities or obligations of duties imposed upon fiduciaries by the EMPLOYEE RETIREMENT INCOME SECURITY ACT OF 1974 or amendments thereto with respect to any plan covered by this endorsement.

(10) Any claim or "suit" made against the insured based on or attributable to any "wrongful act" or failure on the part of the insured to effect and maintain insurance or bonding for plan property or assets.

(11) Any liability arising out of the bankruptcy or insolvency of the insured.

(12) "Bodily Injury", "Property Damage", "Personal Injury" or "Advertising Injury".

III.    DEFINITIONS

For the purposes of this endorsement, the following DEFINITIONS are added to the policy:

(1)    "EMPLOYEE BENEFITS" means group life insurance, group accident or health insurance, profit-sharing plans, pension plans, employee stock subscription plans, 401K savings plan, workers' compensation, unemployment insurance, social security and disability benefits insurance.

(2)    "ADMINISTRATION". As respects the insurance afforded hereby, the unqualified word "administration" wherever used shall mean:

    (a)    Giving counsel to employees, including their dependents and beneficiaries, with respect to the "Employee Benefits";

    (b)    Interpreting "Employee Benefits";

    (c)    Handling records in connection with "Employee Benefits";

    (d)    Effecting enrollment, termination or cancellation of employees under "Employee Benefit" Programs;

Performed by a person authorized by the Named Insured to do such acts.

(3)    "WRONGFUL ACT" means any actual or alleged negligent act, error or omission in the "administration" of the "Employee Benefits" Plan.

## IV.   LIMITS OF INSURANCE

The following is added to Section III, LIMITS OF INSURANCE, as paragraph 8.:

8.    The Employee Benefits Liability Aggregate is the most we will pay for all damages because of a "wrongful act" included in the Employee Benefits Liability Endorsement.

## V.   CONDITIONS

The Conditions of the policy apply to this insurance unless specifically modified below:

Insured's Duties In The Event Of Occurrence, Offense, Claim Or Suit.

Condition 2. of the policy applies, provided that wherever the word "occurrence" appears, it is deleted and the phrase "wrongful act" is substituted.

COMMERCIAL GENERAL LIABILITY
CG 22 34 07 98

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# EXCLUSION – CONSTRUCTION MANAGEMENT ERRORS AND OMISSIONS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following exclusion is added to Paragraph 2., Exclusions of Section I – Coverage A – Bodily Injury And Property Damage Liability and Paragraph 2., Exclusions of Section I – Coverage B – Personal And Advertising Injury Liability:

This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of:

1. The preparing, approving, or failure to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications by any architect, engineer or surveyor performing services on a project on which you serve as construction manager; or

2. Inspection, supervision, quality control, architectural or engineering activities done by or for you on a project on which you serve as construction manager.

This exclusion does not apply to "bodily injury" or "property damage" due to construction or demolition work done by you, your "employees" or your subcontractors.

Copyright, Insurance Services Office, Inc., 1997

COMMERCIAL GENERAL LIABILITY
CG 21 49 09 99

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# TOTAL POLLUTION EXCLUSION ENDORSEMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Exclusion **f.** under Paragraph **2.**, Exclusions of Section I – Coverage A – Bodily Injury And Property Damage Liability is replaced by the following:

This insurance does not apply to:

**f. Pollution**

(1) "Bodily injury" or "property damage" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

(2) Any loss, cost or expense arising out of any:

(a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants"; or

(b) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

POLICY NUMBER:

COMMERCIAL GENERAL LIABILITY
CG 20 10 10 01

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS – SCHEDULED PERSON OR ORGANIZATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

### SCHEDULE

| Name of Person or Organization: |
| --- |
| AS REQUIRED BY CONTRACT, PROVIDED THE CONTRACT IS EXECUTED PRIOR TO LOSS. |

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

A. **Section II – Who Is An Insured** is amended to include as an insured the person or organization shown in the Schedule, but only with respect to liability arising out of your ongoing operations performed for that insured.

B. With respect to the insurance afforded to these additional insureds, the following exclusion is added:

**2. Exclusions**

This insurance does not apply to "bodily injury" or "property damage" occurring after:

(1) All work, including materials, parts or equipment furnished in connection with such work, on the project (other than service, maintenance or repairs) to be performed by or on behalf of the additional insured(s) at the site of the covered operations has been completed; or

(2) That portion of "your work" out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.

© ISO Properties, Inc., 2000

POLICY NUMBER:

COMMERCIAL GENERAL LIABILITY
CG 25 03 03 97

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# DESIGNATED CONSTRUCTION PROJECT(S)
# GENERAL AGGREGATE LIMIT

This endorsement modifies Insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

### SCHEDULE

Designated Construction Projects:

ALL PROJECTS

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

A. For all sums which the Insured becomes legally obligated to pay as damages caused by "occurrences" under COVERAGE A (SECTION I), and for all medical expenses caused by accidents under COVERAGE C (SECTION I), which can be attributed only to ongoing operations at a single designated construction project shown in the Schedule above:

1. A separate Designated Construction Project General Aggregate Limit applies to each designated construction project, and that limit is equal to the amount of the General Aggregate Limit shown in the Declarations.

2. The Designated Construction Project General Aggregate Limit is the most we will pay for the sum of all damages under COVERAGE A, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard", and for medical expenses under COVERAGE C regardless of the number of:

   a. Insureds;

   b. Claims made or "suits" brought; or

   c. Persons or organizations making claims or bringing "suits".

3. Any payments made under COVERAGE A for damages or under COVERAGE C for medical expenses shall reduce the Designated Construction Project General Aggregate Limit for that designated construction project. Such payments shall not reduce the General Aggregate Limit shown in the Declarations nor shall they reduce any other Designated Construction Project General Aggregate Limit for any other designated construction project shown in the Schedule above.

4. The limits shown in the Declarations for Each Occurrence, Fire Damage and Medical Expense continue to apply. However, instead of being subject to the General Aggregate Limit shown in the Declarations, such limits will be subject to the applicable Designated Construction Project General Aggregate Limit.

B. For all sums which the Insured becomes legally obligated to pay as damages caused by "occurrences" under COVERAGE A (SECTION I), and for all medical expenses caused by accidents under COVERAGE C (SECTION I), which cannot be attributed only to ongoing operations at a single designated construction project shown in the Schedule above:

1. Any payments made under COVERAGE A for damages or under COVERAGE C for medical expenses shall reduce the amount available under the General Aggregate Limit or the Products-Completed Operations Aggregate Limit, whichever is applicable; and

CG 25 03 03 97

Copyright, Insurance Services Office, Inc., 1996

Page 1 of 2

WSLIC 46

2. Such payments shall not reduce any Designated Construction Project General Aggregate Limit.

C. When coverage for liability arising out of the "products-completed operations hazard" is provided, any payments for damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard" will reduce the Products-Completed Operations Aggregate Limit, and not reduce the General Aggregate Limit nor the Designated Construction Project General Aggregate Limit.

D. If the applicable designated construction project has been abandoned, delayed, or abandoned and then restarted, or if the authorized contracting parties deviate from plans, blueprints, designs, specifications or timetables, the project will still be deemed to be the same construction project.

E. The provisions of Limits Of Insurance (SECTION III) not otherwise modified by this endorsement shall continue to apply as stipulated.

Copyright, Insurance Services Office, Inc., 1996

CG 25 03 03 97     47
WSLTC

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# MINIMUM EARNED PREMIUM PROVISION

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**
**PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART**
**OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART**

1. If this policy continues in effect until the expiration date shown in Item two of the Declarations, and if the premium is to be determined on an adjustable basis, then the premium for this policy is the greater of:

    a. The audit premium, as described in SECTION IV-COMMERCIAL GENERAL LIABILITY CONDITIONS- Item 5, Premium Audit; or

    b. 100% of the advance premium. If no percentage is stated here, then Item 1, of this endorsement does not apply.

2. In the event this policy is cancelled before the expiration date shown in Item Two of the Declarations, the premium for this policy is the greater of:

    a. The audit premium, if applicable, as described in SECTION IV-COMMERCIAL GENERAL LIABILITY CONDITIONS- Item 5, Premium Audit; or

    b. 25% of the advance premium. If no percentage is stated here, then Item 2, of this endorsement does not apply.

It is further agreed that cancellation for non-payment of premium after the effective date of the policy shall be deemed a request by the named insured for cancellation of this policy.

GLE 0052 09 01

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# RESIDENTIAL CONSTRUCTION EXCLUSION

This insurance does not apply to any "Bodily Injury" or "Property Damage" arising out of or in any way connected to:

    (1)  "Your work" whether ongoing or completed; or

    (2) . "Your product'"

        as respects any work performed in connection with the construction, reconstruction or remodeling of any "residential building".

For the purpose of this endorsement, "residential building" means any single or multi-family home, duplex residential building, residential condominium, townhouse, timeshare, cooperative dwelling or other residential structure, including but not limited to individual, common or cooperative areas.

This exclusion does not apply to:
1.  Apartment buildings that are built for use as rental units. However, this exception Ceases to apply when such rental units are converted to condominium or Cooperative dwellings if (a) the building is under 6 stories or (b) the building is 6 Stories or over and is not of concrete construction.
2.  Residential condominiums, cooperative dwellings or other residential structures that are both (a) more than 6 stories and (b) are of concrete construction.

MANA0132 (11/03)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# INDEPENDENT CONTRACTORS
# CONDITIONS ENDORSEMENT

The Insured will obtain Certificates of Insurance from all Independent contractors providing evidence of:

1. Limits of liability equal to or greater than the coverages provided by this policy;

2. Commercial General Liability coverage equal to or broader than the coverages provided by this policy;

3. Workers Compensation Insurance in compliance with the statutes of the applicable states;

4. Independent Contractors must name the Named Insured as an additional insured.

Failure to comply with this condition does not alter the coverage provided by this policy. However, should you fail to comply, independent contractors will be considered your employees and a premium charge will be made accordingly. The entire cost of all work sublet will be used as payroll for the work performed.

GLE 00 30 12 98

WSLIC   50

COMMERCIAL GENERAL LIABILITY
CG 00 62 12 02

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# WAR LIABILITY EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** Exclusion i. under Paragraph **2.**, **Exclusions of Section I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

**2. Exclusions**

This insurance does not apply to:

**i. War**

"Bodily injury" or "property damage", however caused, arising, directly or indirectly, out of:

(1) War, including undeclared or civil war; or

(2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(3) Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**B.** The following exclusion is added to Paragraph **2.**, **Exclusions of Section I – Coverage B – Personal And Advertising Injury Liability:**

**2. Exclusions**

This insurance does not apply to:

**WAR**

"Personal and advertising injury", however caused, arising, directly or indirectly, out of:

a. War, including undeclared or civil war; or

b. Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

c. Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**C.** Exclusion h. under Paragraph **2.**, **Exclusions of Section I – Coverage C – Medical Payments** does not apply. Medical payments due to war are now subject to Exclusion g. of Paragraph **2.**, **Exclusions of Section I – Coverage C – Medical Payments** since "bodily injury" arising out of war is now excluded under Coverage A.

## SERVICE OF SUIT ENDORSEMENT

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

Information about service of "suits" upon us is given below. Service of process of "suits" against us may be made upon the following person, or another person we may designate:

> Joy Bernstein, Assistant General Counsel, Business Litigation
> ACE USA Companies
> Two Liberty Place - TL21K
> 1601 Chestnut Street
> Philadelphia, PA 19103

The person named above is authorized and directed to accept service of process on our behalf in any action, "suit" or proceeding instituted against us. If you request, we will give you a written promise that a general appearance will be entered on our behalf if a "suit" is brought.

If you request, we will submit to the jurisdiction of any court of competent jurisdiction. We will accept the final decision of that court or any Appellate Court in the event of an appeal.

The law of some jurisdictions of the United States of America require that the Superintendent, Commissioner or Director of Insurance (or their successor in office) be designated as our agent for service of process. In these jurisdictions, we designate the Director of Insurance as our true and lawful attorney upon whom service of process on our behalf may be made. We also authorize the Director of Insurance to mail process received on our behalf to the company person named above.

If you are a resident of Canada, you may also serve "suit" upon us by serving the government official designated by the law of your province.

NOTHING HEREIN CONTAINED SHALL BE HELD TO VARY, ALTER, WAIVE OR EXTEND ANY OF THE TERMS, CONDITIONS, OR LIMITATIONS OF THE POLICY TO WHICH THIS ENDORSEMENT IS ATTACHED OTHER THAN AS ABOVE STATED.

_____
Authorized Representative

MANA 0089 05 02

## POLICYHOLDER DISCLOSURE NOTICE
## OF TERRORISM INSURANCE COVERAGE

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| Policy Symbol<br>GLW | Policy Number<br>777923 | Policy Period<br>to | Effective Date of Endorsement |
| Issued By (Name of Insurance Company)<br>Westchester Surplus Lines Insurance Company | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

You should be aware that under the Terrorism Risk Insurance Act of 2002 ("The Act") effective November 26, 2002, any losses caused by certified acts of terrorism under your existing coverage may be partially reimbursed by the United States under a formula established by federal law (applicability is subject to the terms and conditions of each individual policy). The Act was specifically designed to address the ability of businesses and individuals to obtain property and casualty insurance for terrorism and to protect consumers by addressing market disruptions and ensure the continued availability of terrorism coverage.

Under the terms of The Act, you may now have the right to purchase insurance coverage for losses arising out of acts of terrorism, as defined in Section 102(1) of the Act: The term "act of terrorism" means any act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State, and the Attorney General of the United States to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property; or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of an air carrier or vessel or the premises of a United States mission; and to have been committed by an individual or individuals acting on behalf of any foreign person or foreign interest, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

Responsibility for Compensation under The Act is shared between insurance companies covered by The Act and the United States. Under the formula set forth in The Act, the United States pays 90% of covered terrorism losses exceeding the statutorily established deductible, which is paid by the insurance company providing the coverage.

We are providing you with the terrorism coverage required by The Act. The premium for the coverage is set forth below.

Terrorism Risk Insurance Act premium: $ ___

_____
Authorized Agent

TRIA11 (1/03)

# LIMITED EXCLUSION OF CERTIFIED ACTS OF TERRORISM

| Name Insured | | | Endorsement Number | |
|---|---|---|---|---|
| Policy Symbol GLW | Policy Number 777923 | Policy Period          TO | Effective Date of Endorsement | |

Issued by   (Name of Insurance Company)

Insert the policy number.  The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

### THIS ENDORSEMENT CHANGES YOUR POLICY. PLEASE READ IT CAREFULLY.

A. Any other provision of this Policy notwithstanding, we will not pay any portion of a loss resulting from or arising out of a Certified Act of Terrorism for which we are not responsible under the terms of TRIA (including subsequent action of Congress pursuant to TRIA) because the aggregate insured losses of all insurers resulting from or arising out of Certified Acts of Terrorism during the applicable period provided in TRIA exceed $100 billion (or such other amount as Congress may specify pursuant to TRIA).

B. Regardless of whether the terms of any exclusion or limitation of coverage pursuant to this Endorsement applies to a particular Act of Terrorism, coverage of such Act of Terrorism under this Policy or Coverage Part is subject to all other terms, conditions, exclusions and coverage limitations under the Policy or Coverage Part, including, but not limited to, the Nuclear, Biological and Chemical Exclusion Endorsements in the policy.

C. As used in this Endorsement:

"Act of Terrorism" means either a Certified Act of Terrorism or a Non-Certified Act of Terrorism.

"Certified Act of Terrorism" means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an "act of terrorism" pursuant to TRIA. TRIA includes the following criteria for a Certified Act of Terrorism:

1. The act resulted in aggregate property and casualty insurance losses in excess of $5 million; and

2. The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals acting on behalf of any foreign person or foreign interest, as part of an effort to coerce the civilian population of the United

"TRIA" means the federal Terrorism Risk Insurance Act of 2002.

States or to influence the policy or affect the conduct of the United States Government by coercion.

"Non-Certified Act of Terrorism" means an activity (other than a Certified Act of Terrorism), whether or not committed in concert with or on behalf of any organization or government, that:

1. Involves any violent act or any act dangerous to human life or tangible or intangible property, and that causes damage to property or injury to persons or causes a threat thereof; and

2. Appears to be intended, in whole or in part, to:

   a. Intimidate or coerce a civilian population; or

   b. Disrupt any segment of a nation's economy; or

   c. Influence the policy of a government by intimidation or coercion; or

   d. Affect the conduct of a government by mass destruction, assassination, kidnapping or hostage-taking; or

   e. Respond to governmental action or policy.

"Property and casualty insurance" means the commercial lines of property and casualty insurance that are included in the definition of "property and casualty insurance" set forth in TRIA.

_____

Authorized Representative

# EXCLUSION OF PUNITIVE DAMAGES RELATED TO A
# CERTIFIED ACT OF TERRORISM

| Name Insured | | | Endorsement Number |
|---|---|---|---|
| Policy Symbol GLW | Policy Number 777923 | Policy Period                TO | Effective Date of Endorsement |

Issued by  (Name of Insurance Company)

Insert the policy number.  The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

### THIS ENDORSEMENT CHANGES YOUR POLICY.  PLEASE READ IT CAREFULLY.

A.   The following exclusion is added:

This insurance does not apply to:

**TERRORISM PUNITIVE DAMAGES**

Any other provision of this policy notwithstanding, this insurance does not cover damages that, directly or indirectly, result from or arise out of a "Certified Act of Terrorism," which are awarded as punitive damages.

B.   The following definition is added:

"Certified Act of Terrorism" means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an "act of terrorism" pursuant to TRIA.  TRIA includes the following criteria for a Certified Act of Terrorism:

1.   The act resulted in aggregate "property and casualty insurance" losses in excess of $5 million; and

2.   The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals acting on behalf of any foreign person or foreign interest, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

"Property and casualty insurance" means the commercial lines of property and casualty insurance that are included in the definition of "property and casualty insurance" set forth in TRIA.

"TRIA" means the federal Terrorism Risk Insurance Act of 2002.

_____
Authorized Representative

COMMERCIAL GENERAL LIABILITY
CG 00 01 10 01

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section II – Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section V – Definitions.

## SECTION I – COVERAGES

### COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY

**1. Insuring Agreement**

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

(1) The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

(2) Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages A and B.

b. This insurance applies to "bodily injury" and "property damage" only if:

(1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

(2) The "bodily injury" or "property damage" occurs during the policy period; and

(3) Prior to the policy period, no insured listed under Paragraph 1. of Section II – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

c. "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph 1. of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

d. "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph 1. of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

(1) Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

(2) Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

(3) Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

© ISO Properties, Inc., 2000

UNIFORM

56




**e.** Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

**2. Exclusions**

This insurance does not apply to:

**a. Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

**b. Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

(1) That the insured would have in the absence of the contract or agreement; or

(2) Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

(a) Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

(b) Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

**c. Liquor Liability**

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

(1) Causing or contributing to the intoxication of any person;

(2) The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

(3) Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

**d. Workers' Compensation And Similar Laws**

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

**e. Employer's Liability**

"Bodily injury" to:

(1) An "employee" of the insured arising out of and in the course of:

(a) Employment by the insured; or

(b) Performing duties related to the conduct of the insured's business; or

(2) The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph (1) above.

This exclusion applies:

(1) Whether the insured may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

WSLIC   57

**f. Pollution**

(1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

  (a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

    (i) "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot from equipment used to heat that building;

    (ii) "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

    (iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

  (b) At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

  (c) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

    (i) Any insured; or

    (ii) Any person or organization for whom you may be legally responsible; or

  (d) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

    (i) "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

    (ii) "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

    (iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

© ISO Properties, Inc., 2000

(a) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

(2) Any loss, cost or expense arising out of any:

(a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

(b) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

g. Aircraft, Auto Or Watercraft

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

(1) A watercraft while ashore on premises you own or rent;

(2) A watercraft you do not own that is:

(a) Less than 26 feet long; and

(b) Not being used to carry persons or property for a charge;

(3) Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

(4) Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

(5) "Bodily injury" or "property damage" arising out of the operation of any of the equipment listed in Paragraph f.(2) or f.(3) of the definition of "mobile equipment".

h. Mobile Equipment

"Bodily injury" or "property damage" arising out of:

(1) The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

(2) The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

i. War

"Bodily injury" or "property damage" due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution. This exclusion applies only to liability assumed under a contract or agreement.

j. Damage To Property

"Property damage" to:

(1) Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

(2) Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

(3) Property loaned to you;

(4) Personal property in the care, custody or control of the insured;

(5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

© ISO Properties, Inc., 2000

(6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs (1), (3) and (4) of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of 7 or fewer consecutive days. A separate limit of insurance applies to Damage To Premises Rented To You as described in Section III – Limits Of Insurance.

Paragraph (2) of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs (3), (4), (5) and (6) of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph (6) of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

k.  Damage To Your Product

"Property damage" to "your product" arising out of it or any part of it.

l.  Damage To Your Work

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

m.  Damage To Impaired Property Or Property Not Physically Injured

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

(1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

(2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

n.  Recall Of Products, Work Or Impaired Property

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

(1) "Your product";

(2) "Your work"; or

(3) "Impaired property";

If such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

o.  Personal And Advertising Injury

"Bodily injury" arising out of "personal and advertising injury".

Exclusions c. through n. do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in Section III – Limits Of Insurance.

**COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY**

1.  Insuring Agreement

a.  We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

(1) The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

(2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages A and B.

b. This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

2. Exclusions

This insurance does not apply to:

a. Knowing Violation Of Rights Of Another

"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

b. Material Published With Knowledge Of Falsity

"Personal and advertising injury" arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity.

c. Material Published Prior To Policy Period

"Personal and advertising injury" arising out of oral or written publication of material whose first publication took place before the beginning of the policy period.

d. Criminal Acts

"Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

e. Contractual Liability

"Personal and advertising injury" for which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

f. Breach Of Contract

"Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement".

g. Quality Or Performance Of Goods – Failure To Conform To Statements

"Personal and advertising injury" arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement".

h. Wrong Description Of Prices

"Personal and advertising injury" arising out of the wrong description of the price of goods, products or services stated in your "advertisement".

i. Infringement Of Copyright, Patent, Trademark Or Trade Secret

"Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights.

However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

j. Insureds In Media And Internet Type Businesses

"Personal and advertising injury" committed by an insured whose business is:

(1) Advertising, broadcasting, publishing or telecasting;

(2) Designing or determining content of websites for others; or

(3) An Internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs 14.a., b. and c. of "personal and advertising injury" under the Definitions Section.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, is not by itself, considered the business of advertising, broadcasting, publishing or telecasting.

k. Electronic Chatrooms Or Bulletin Boards

"Personal and advertising injury" arising out of an electronic chatroom or bulletin board the insured hosts, owns, or over which the insured exercises control.

© ISO Properties, Inc., 2000

CG 00 01 10 01

WSLIC   61

**l. Unauthorized Use Of Another's Name Or Product**

"Personal and advertising injury" arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

**m. Pollution**

"Personal and advertising injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

**n. Pollution-Related**

Any loss, cost or expense arising out of any:

(1) Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

(2) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

**COVERAGE C MEDICAL PAYMENTS**

**1. Insuring Agreement**

a. We will pay medical expenses as described below for "bodily injury" caused by an accident:

(1) On premises you own or rent;

(2) On ways next to premises you own or rent; or

(3) Because of your operations;

provided that:

(1) The accident takes place in the "coverage territory" and during the policy period;

(2) The expenses are incurred and reported to us within one year of the date of the accident; and

(3) The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

b. We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

(1) First aid administered at the time of an accident;

(2) Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

(3) Necessary ambulance, hospital, professional nursing and funeral services.

**2. Exclusions**

We will not pay expenses for "bodily injury":

a. **Any Insured**

To any insured, except "volunteer workers".

b. **Hired Person**

To a person hired to do work for or on behalf of any insured or a tenant of any insured.

c. **Injury On Normally Occupied Premises**

To a person injured on that part of premises you own or rent that the person normally occupies.

d. **Workers Compensation And Similar Laws**

To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

e. **Athletics Activities**

To a person injured while taking part in athletics.

f. **Products-Completed Operations Hazard**

Included within the "products-completed operations hazard".

g. **Coverage A Exclusions**

Excluded under Coverage A.

h. **War**

Due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution.

**SUPPLEMENTARY PAYMENTS – COVERAGES A AND B**

1. We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

a. All expenses we incur.

© ISO Properties, Inc., 2000.

b. Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

c. The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

d. All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

e. All costs taxed against the insured in the "suit".

f. Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

g. All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

2. If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

a. The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

b. This insurance applies to such liability assumed by the insured;

c. The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

d. The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

e. The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

f. The indemnitee:

(1) Agrees in writing to:

(a) Cooperate with us in the investigation, settlement or defense of the "suit";

(b) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

(c) Notify any other insurer whose coverage is available to the indemnitee; and

(d) Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

(2) Provides us with written authorization to:

(a) Obtain records and other information related to the "suit"; and

(b) Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph 2.b.(2) of Section I – Coverage A – Bodily Injury And Property Damage Liability, such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when:

a. We have used up the applicable limit of insurance in the payment of judgments or settlements; or

b. The conditions set forth above, or the terms of the agreement described in Paragraph f. above, are no longer met.

 © ISO Properties, Inc., 2000
WSLIC   63

## SECTION II – WHO IS AN INSURED

1. If you are designated in the Declarations as:

   a. An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

   b. A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

   c. A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

   d. An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

   e. A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

2. Each of the following is also an insured:

   a. Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for:

   (1) "Bodily injury" or "personal and advertising injury":

   (a) To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

   (b) To the spouse, child, parent, brother or sister of that co-"employee" or "volunteer worker" as a consequence of Paragraph (1)(a) above;

   (c) For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraphs (1)(a) or (b) above; or

   (d) Arising out of his or her providing or failing to provide professional health care services.

   (2) "Property damage" to property:

   (a) Owned, occupied or used by,

   (b) Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by

   you, any of your "employees", "volunteer workers", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

   b. Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.

   c. Any person or organization having proper temporary custody of your property if you die, but only:

   (1) With respect to liability arising out of the maintenance or use of that property; and

   (2) Until your legal representative has been appointed.

   d. Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

3. With respect to "mobile equipment" registered in your name under any motor vehicle registration law, any person is an insured while driving such equipment along a public highway with your permission. Any other person or organization responsible for the conduct of such person is also an insured, but only with respect to liability arising out of the operation of the equipment, and only if no other insurance of any kind is available to that person or organization for this liability. However, no person or organization is an insured with respect to:

   a. "Bodily injury" to a co-"employee" of the person driving the equipment; or

   b. "Property damage" to property owned by, rented to, in the charge of or occupied by you or the employer of any person who is an insured under this provision.

   © ISO Properties, Inc., 2000

4. Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

   a. Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

   b. Coverage A does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

   c. Coverage B does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

## SECTION III – LIMITS OF INSURANCE

1. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

   a. Insureds;

   b. Claims made or "suits" brought; or

   c. Persons or organizations making claims or bringing "suits".

2. The General Aggregate Limit is the most we will pay for the sum of:

   a. Medical expenses under Coverage C;

   b. Damages under Coverage A, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

   c. Damages under Coverage B.

3. The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage A for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

4. Subject to 2. above, the Personal and Advertising Injury Limit is the most we will pay under Coverage B for the sum of all damages because of all "personal and advertising injury" sustained by any one person or organization.

5. Subject to 2. or 3. above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

   a. Damages under Coverage A; and

   b. Medical expenses under Coverage C

because of all "bodily injury" and "property damage" arising out of any one "occurrence".

6. Subject to 5. above, the Damage To Premises Rented To You Limit is the most we will pay under Coverage A for damages because of "property damage" to any one premises, while rented to you, or in the case of damage by fire, while rented to you or temporarily occupied by you with permission of the owner.

7. Subject to 5. above, the Medical Expense Limit is the most we will pay under Coverage C for all medical expenses because of "bodily injury" sustained by any one person.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

## SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS

1. **Bankruptcy**

   Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

2. **Duties In The Event Of Occurrence, Offense, Claim Or Suit**

   a. You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

     (1) How, when and where the "occurrence" or offense took place;

     (2) The names and addresses of any injured persons and witnesses; and

     (3) The nature and location of any injury or damage arising out of the "occurrence" or offense.

© ISO Properties, Inc., 2000

b. If a claim is made or "suit" is brought against any insured, you must:

  (1) Immediately record the specifics of the claim or "suit" and the date received; and

  (2) Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

c. You and any other involved insured must:

  (1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

  (2) Authorize us to obtain records and other information;

  (3) Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

  (4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

d. No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

3. Legal Action Against Us

No person or organization has a right under this Coverage Part:

a. To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

b. To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

4. Other Insurance

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages A or B of this Coverage Part, our obligations are limited as follows:

a. Primary Insurance

This insurance is primary except when b. below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in c. below.

b. Excess Insurance

This insurance is excess over:

  (1) Any of the other insurance, whether primary, excess, contingent or on any other basis:

    (a) That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

    (b) That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

    (c) That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

    (d) If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion g. of Section I – Coverage A – Bodily Injury And Property Damage Liability.

  (2) Any other primary insurance available to you covering liability for damages arising out of the premises or operations for which you have been added as an additional insured by attachment of an endorsement.

When this insurance is excess, we will have no duty under Coverages A or B to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

(1) The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

(2) The total of all deductible and self-insured amounts under all that other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

c. **Method Of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

5. **Premium Audit**

a. We will compute all premiums for this Coverage Part in accordance with our rules and rates.

b. Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retrospective premiums is the date shown as the due date on the bill. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

c. The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

6. **Representations**

By accepting this policy, you agree:

a. The statements in the Declarations are accurate and complete;

b. Those statements are based upon representations you made to us; and

c. We have issued this policy in reliance upon your representations.

7. **Separation Of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

a. As if each Named Insured were the only Named Insured; and

b. Separately to each insured against whom claim is made or "suit" is brought.

8. **Transfer Of Rights Of Recovery Against Others To Us**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

9. **When We Do Not Renew**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

**SECTION V – DEFINITIONS**

1. "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition;

a. Notices that are published include material placed on the Internet or on similar electronic means of communication; and

b. Regarding web-sites, only that part of a web-site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

2. "Auto" means a land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment. But "auto" does not include "mobile equipment".

3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

4. "Coverage territory" means:

   a. The United States of America (including its territories and possessions), Puerto Rico and Canada;

   b. International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in a. above; or

   c. All other parts of the world if the injury or damage arises out of:

      (1) Goods or products made or sold by you in the territory described in a. above;

      (2) The activities of a person whose home is in the territory described in a. above, but is away for a short time on your business; or

      (3) "Personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication

   provided the insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in a. above or in a settlement we agree to.

5. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

6. "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

7. "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

8. "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

   a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

   b. You have failed to fulfill the terms of a contract or agreement;

   if such property can be restored to use by:

   a. The repair, replacement, adjustment or removal of "your product" or "your work"; or

   b. Your fulfilling the terms of the contract or agreement.

9. "Insured contract" means:

   a. A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

   b. A sidetrack agreement;

   c. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

   d. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

   e. An elevator maintenance agreement;

   f. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

   Paragraph f. does not include that part of any contract or agreement:

      (1) That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

      (2) That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

         (a) Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

         (b) Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

      (3) Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in (2) above and supervisory, inspection, architectural or engineering activities.

CG 00 01 10 01          © ISO Properties, Inc., 2000          Page 13 of 16
                                                              WSL.IC   68

10. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

11. "Loading or unloading" means the handling of property:

   a. After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

   b. While it is in or on an aircraft, watercraft or "auto"; or

   c. While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

   but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

12. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

   a. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

   b. Vehicles maintained for use solely on or next to premises you own or rent;

   c. Vehicles that travel on crawler treads;

   d. Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

      (1) Power cranes, shovels, loaders, diggers or drills; or

      (2) Road construction or resurfacing equipment such as graders, scrapers or rollers;

   e. Vehicles not described in a., b., c. or d. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

      (1) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

      (2) Cherry pickers and similar devices used to raise or lower workers;

   f. Vehicles not described in a., b., c. or d. above maintained primarily for purposes other than the transportation of persons or cargo.

   However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

      (1) Equipment designed primarily for:

         (a) Snow removal;

         (b) Road maintenance, but not construction or resurfacing; or

         (c) Street cleaning;

      (2) Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

      (3) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

14. "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

   a. False arrest, detention or imprisonment;

   b. Malicious prosecution;

   c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

   d. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

   e. Oral or written publication, in any manner, of material that violates a person's right of privacy;

   f. The use of another's advertising idea in your "advertisement"; or

   g. Infringing upon another's copyright, trade dress or slogan in your "advertisement".

15. "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

16. "Products-completed operations hazard":

a. Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

   (1) Products that are still in your physical possession; or

   (2) Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

   (a) When all of the work called for in your contract has been completed.

   (b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

   (c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

   Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

b. Does not include "bodily injury" or "property damage" arising out of:

   (1) The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

   (2) The existence of tools, uninstalled equipment or abandoned or unused materials; or

   (3) Products or operations for which the classification, listed in the Declarations or in a policy schedule, states that products-completed operations are subject to the General Aggregate Limit.

17. "Property damage" means:

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

18. "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

a. An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

19. "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

20. "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

21. "Your product":

a. Means:

   (1) Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

   (a) You;

   (b) Others trading under your name; or

   (c) A person or organization whose business or assets you have acquired; and

   (2) Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

© ISO Properties, Inc., 2000



b. Includes

    (1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

    (2) The providing of or failure to provide warnings or instructions.

c. Does not include vending machines or other property rented to or located for the use of others but not sold.

22. "Your work":

    a. Means:

        (1) Work or operations performed by you or on your behalf; and

        (2) Materials, parts or equipment furnished in connection with such work or operations.

    b. Includes

        (1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work", and

        (2) The providing of or failure to provide warnings or instructions.

© ISO Properties, Inc., 2000

CG 00 01 10 01

WSLIC   71

# ACE USA Advice of Cancellation

**Coverage Information**

Name of Insured

**Miller & Solomon General Contractors Inc**
**8491 NW 17th St Ste L**
**Miami  FL 331261025**

Producer's Name & Address

**COLEMONT INSURANCE BROKERS**
**OF GEORGIA LLC**
**2859 PACES FERRY ROAD**
**SUITE 1500**
**ATLANTA  GA 30339**

Date ____10/05/2005____

Policy Period: From ___05/13/2005___  To ___05/13/2006___

Bond No. or Policy No. ___GLW789078 001___

Cancellation Basis:  ☐ PRO RATA WITH PENALTY   ☒ PRO RATA
                      ☐ SHORT RATE   ☐ FLAT   ☐ PREM. FULLY EARNED

Cancellation Date: ___10/10/2005___

Return Premium     $ _____



WSLIC  72



# Policy Declarations

| | | |
|---|---|---|
| Policy No:  GLW789078001 | Renewal of: | NEW |

## NAMED INSURED & MAILING ADDRESS

Miller & Solomon General Contractors  Inc

8491 NW 17th St Ste L
Miami  FL 331261026

## POLICY PERIOD

| When Coverage Begins: | 05/13/2005 | 12:01 A.M. Standard Time At Named Insured's Address |
|---|---|---|
| When Coverage Ends: | 05/13/2006 | 12:01 A.M. Standard Time At Named Insured's Address |

| INSURING COMPANY | Producer's Name & Address: |
|---|---|
| **Westchester Surplus Lines Insurance Co** | COLEMONT INSURANCE BROKERS OF GEORGIA LLC OF GEORGIA LLC 2859 PACES FERRY ROAD SUITE 1500 ATLANTA GA 30339<br><br>Producer No.71388W |

THIS INSURANCE IS ISSUED PURSUANT TO THE FLORIDA
SURPLUS LINES LAW. PERSONS INSURED BY SURPLUS
LINES CARRIERS DO NOT HAVE THE PROTECTION OF THE
FLORIDA INSURANCE GUARANTY ACT TO THE EXTENT OF
ANY RIGHT OF RECOVERY FOR THE OBLIGATION OF AN
INSOLVENT UNLICENSED INSURER.

## ATTACHED FORMS

This policy is completed by the following:    and forms and endorsements attached thereto.

## Authorization Information

Countersigned by:   _Crawford Hinson Trigge_

SLPD (4/03)

5

# E X H I B I T   B

**EXHIBIT B**

# General Endorsement

**General Policy Information**

Named Insured: Miller & Solomon

Policy Symbol: CUW                    Policy Number: CUW774178 001

Endorsement Number: 7                 Effective date of Endorsement: 02/14/2005

Policy Period: 12/31/2003 to 06/30/2005

Issued by:                    Westchester Surplus Lines Insurance Company
(Name of Insurance Company)

**This Endorsement changes the policy – Please read it carefully**
This endorsement modifies insurance provide under the following:

COMMERCIAL UMBRELLA                            COVERAGE FORM

**Endorsement Information**

It is agreed that M12, "Extended Named Insured" Endorsement is amended per the attached.



Authorized Agent



WSLIC 126

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

NAMED INSURED

MILLER & SOLOMON GENERAL CONTRACTORS, INC.

ITEM 1 OF THE DECLARATIONS, "NAMED INSURED" IS COMPLETED TO READ AS FOLLOWS:

MILLER & SOLOMON RESIDENTIAL, INC. -- INACTIVE
DATATRONICS, INC. -- INACTIVE
KLK DEVELOPMENT, INC. -- INACTIVE
ROSARIO EQUIPMENT, INC. -- INACTIVE
QUALITY SUPPLY, LLC -- ACTIVE
AFLR, INC. -- INACTIVE
1776 PROPERTIES, LLC -- INACTIVE
GRYPHON CONSTRUCTION, LLC

_____
AUTHORIZED REPRESENTATIVE

M12 (12-89)

WSLIC 127



# WESTCHESTER SURPLUS LINES INSURANCE COMPANY
### ATLANTA, GA

## ace usa

CANCELLATION

| POLICY NO. CUW-774178 |
| --- |

NAMED INSURED AND MAILING ADDRESS      AGENCY AND MAILING ADDRESS      71388

| MILLER & SOLOMON GENERAL CONTRACTORS INC. 8491 N.W. 17TH STREET, SUITE L MIAMI FL 33126 | COLEMONT INSURANCE BROKERS 2859 PACES FERRY RD, STE 1500 ATLANTA GA  30339 |
| --- | --- |

POLICY PERIOD:    From 12/31/2003 to 06/30/2005
                  12:01 A.M. Standard Time at the Named Insureds address above
EFFECTIVE 05-13-05 THIS POLICY IS CANCELLED SHORT RATE

| TOTAL RETURN PREMIUM FOR   48 DAYS      N/A |
| --- |

DATE: _____   BY: _Crawford Wilson Trap__

AUTHORIZED REPRESENTATIVE

07-15-'05          394    CHCDO      Company's copy
                                     Page    1 of    1

WSLIC 128



## WESTCHESTER SURPLUS LINES INSURANCE COMPANY
### ATLANTA, GA

**ace usa**

CANCELLATION

| POLICY NO. CUW-774178 |
| --- |

**NAMED INSURED AND MAILING ADDRESS**      **AGENCY AND MAILING ADDRESS      71388**

| MILLER & SOLOMON GENERAL CONTRACTORS INC. 8491 N.W. 17TH STREET, SUITE L MIAMI FL 33126 | COLEMONT INSURANCE BROKERS 2859 PACES FERRY RD, STE 1500 ATLANTA GA  30339 |
| --- | --- |

POLICY PERIOD:   From 12/31/2003 to 06/30/2005
              12:01 A.M. Standard Time at the Named Insureds address above
EFFECTIVE 05-13-05 THIS POLICY IS CANCELLED PRO RATA

| SUBJECT TO AUDIT |
| --- |

DATE: _____   BY: _____ *Crawford Vinson Tripp*

**AUTHORIZED REPRESENTATIVE**

06-08-05          394   NWILS        Page    1 of    1

WSLIC 129

WESTCHESTER SURPLUS LINES INSURANCE
500 COLONIAL CENTER PKWY
SUITE 200
ROSWELL GA 30076

## NOTICE OF NONRENEWAL OF INSURANCE

Named Insured & Mailing Address:

MILLER & SOLOMON GENERAL CONTRACTORS,
INC.
8491 N. W. 17TH STREET, SUITE L
MIAMI FL 33126

Producer: 71388

HEATH INSURANCE BROKERS, INC
2859 PACES FERRY ROAD
SUITE 1600
ATLANTA GA 30339

Policy No.:   CUW774178
Type of Policy;   UMBRELLA LIABILITY OCCURRENCE
Date of Expiration:   03/01/2005; 12:01 A.M. Local Time at the mailing address of the Named Insured.

We will not renew this policy when it expires.  Your insurance will cease on the Expiration Date shown above.

The reason for nonrenewal is  We are non-renewing your insurance policy because the above referenced insurance company may be unable to offer renewal coverage with the same terms, conditions and premium rate as the expiring insurance policy.

Mailing of this notice is necessary in order to be in compliance with our regulatory and statutory rules.

We value your business and shall strive to remain responsive to your needs.

# Home Office Copy

Named Insured

MILLER & SOLOMON GENERAL CONTRACTORS,
INC.
8491 N. W. 17TH STREET, SUITE L
MIAMI FL 33126

Date Mailed:
30th day of November, 2004

AUTHORIZED REPRESENTATIVE

FORM# CN9697FL51995
ODEN 6.0.04.06b                    Copy for Named Insured

FLCN24NONE APP
11222004MYNN
Page 1 of 1

WSLIC 130



**WESTCHESTER SURPLUS LINES INSURANCE COMPANY**

ATLANTA, GA

GENERAL CHANGE ENDORSEMENT

**ace usa**

| | |
|---|---|
| | POLICY NO. CUW-774178 |

| NAMED INSURED AND MAILING ADDRESS | AGENCY AND MAILING ADDRESS     71388 |
|---|---|
| MILLER & SOLOMON GENERAL CONTRACTORS INC.<br>8491 N.W. 17TH STREET, SUITE L<br>MIAMI FL 33126 | COLEMONT INSURANCE BROKERS<br>2859 PACES FERRY RD, STE 1500<br>ATLANTA GA  30339 |

POLICY PERIOD:   From 12/31/2003 to 06/30/2005
              12:01 A.M. Standard Time at the Named Insureds address above
EFFECTIVE 12-31-03 THIS POLICY IS AMENDED AS SHOWN

**UMBRELLA**

ENDORSEMENT NO. 6

IT IS AGREED THAT SCHEDULE A - SCHEDULE OF UNDERLYING INSURANCE
IS AMENDED AS PER THE ATTACHED.

*Crawford Vivian Trippe*

DATE: _____   BY: _____

AUTHORIZED REPRESENTATIVE

06-08-05            394   HWILS      Company's copy
                               Page   1 of   1

WSLIC 131

# WESTCHESTER SURPLUS LINES INSURANCE COMPANY
### ATLANTA, GA

## SCHEDULE OF UNDERLYING

| POLICY NO. CUW-774178 |
| --- |

**NAMED INSURED AND MAILING ADDRESS**          **AGENCY AND MAILING ADDRESS**          71388

| MILLER & SOLOMON GENERAL CONTRACTORS INC.<br>8491 N.W. 17TH STREET, SUITE L<br>MIAMI FL 33126 | COLEMONT INSURANCE BROKERS<br>2859 PACES FERRY RD, STE 1500<br>ATLANTA GA  30339 |
| --- | --- |

POLICY PERIOD:   From 12/31/2003 to 06/30/2005
                 12:01 A.M. Standard Time at the Named Insureds address above
ENDORSEMENT DATE:   12/31/2003
          SCHEDULE A - SCHEDULE OF UNDERLYING INSURANCE - M36

| TYPE OF POLICY | APPLICABLE LIMITS | INSURER/ POLICY PERIOD |
| --- | --- | --- |
| (A) "AUTOMOBILE" LIABILITY | "BODILY INJURY" & "PROPERTY DAMAGE" COMBINED SINGLE LIMIT $1,000,000 EACH "OCCURRENCE"<br><br>UNINSURED/UNDERINSURED MOTORIST $N/A EACH "OCCURRENCE" | HARTFORD 12-31-03/04 12-31-04/05 |
| (B) COMMERCIAL GENERAL LIABILITY | $1,000,000 EACH "OCCURRENCE" LIMIT $2,000,000 GENERAL AGGREGATE LIMIT (X) PER PROJECT/LOCATION $2,000,000 PRODUCTS/COMPLETED OPERATIONS AGGREGATE LIMIT $N/A POLICY  AGGREGATE LIMIT $1,000,000 PERSONAL &  ADVERTISING INJURY LIMIT $N/A FIRE DAMAGE LIMIT - ANY ONE FIRE | WESTCHESTER SURPLUS LINES 12/31/03 - 06/30/05 |

06-08-05          394   MWILS          Company's copy
                                       Page   1 of   3

# WESTCHESTER SURPLUS LINES INSURANCE COMPANY

### ATLANTA, GA

## SCHEDULE OF UNDERLYING

POLICY NO. CUW-774178

| NAMED INSURED AND MAILING ADDRESS | AGENCY AND MAILING ADDRESS | 71388 |
|---|---|---|

MILLER & SOLOMON GENERAL CONTRACTORS
INC.
8491 N.W. 17TH STREET, SUITE L
MIAMI FL 33126

COLEMONT INSURANCE BROKERS
2859 PACES FERRY RD, STE 1500
ATLANTA GA  30339

POLICY PERIOD:   From 12/31/2003 to 06/30/2005
                 12:01 A.M. Standard Time at the Named Insureds address above
ENDORSEMENT DATE:   12/31/2003

```
     COMPREHENSIVE   "BODILY INJURY" & "PROPERTY
     GENERAL          DAMAGE"
     LIABILITY        COMBINED SINGLE LIMIT
                      $N/A
                      EACH "OCCURRENCE"
                      $N/A
                      AGGREGATE WHEN APPLICABLE

(C) STANDARD         COVERAGE B - EMPLOYERS         LIBERTY MUTUAL
    WORKERS          LIABILITY                      01/04/04 - 04/01/05
    COMPENSATION     "BODILY INJURY" BY ACCIDENT    04/01/05 - 06
    & EMPLOYERS      $500,000                       (MILLER & SOLOMON)
    LIABILITY        EACH ACCIDENT
                     "BODILY INJURY" BY DISEASE
                     $500,000
                     EACH EMPLOYEE
                     "BODILY INJURY" BY DISEASE
                     $500,000
                     POLICY  LIMIT

                                                    LIBERTY MUTUAL
                                                    04/01/05 - 06
                                                    (GRYPHON CONSTRUCTION)
```

# WESTCHESTER SURPLUS LINES INSURANCE COMPANY

### ATLANTA, GA

## SCHEDULE OF UNDERLYING

| POLICY NO. CUW-774178 |
| --- |

| NAMED INSURED AND MAILING ADDRESS | AGENCY AND MAILING ADDRESS          71388 |
| --- | --- |
| MILLER & SOLOMON GENERAL CONTRACTORS INC. 8491 N.W. 17TH STREET, SUITE L MIAMI FL 33126 | COLEMONT INSURANCE BROKERS 2859 PACES FERRY RD, STE 1500 ATLANTA GA  30339 |

POLICY PERIOD:   From 12/31/2003 to 06/30/2005
                 12:01 A.M. Standard Time at the Named Insureds address above
ENDORSEMENT DATE:    12/31/2003

|     |     |     |     |
| --- | --- | --- | --- |
| (D) | EMPLOYEE BENEFITS LIABILITY | $1,000,000 EACH CLAIM $1,000,000 AGGREGATE | WESTCHESTER SURPLUS LINES 12/31/03 - 06/30/05 |

(E) FEDERAL TERRORISM
    RISK INSURANCE ACT
    OF 2002

    TYPE OF POLICY

| | | |
| --- | --- | --- |
| AUTOMOBILE LIABILITY | $1,000,000 EACH OCCURRENCE | HARTFORD 12-31-03/04 - 05/06 |
| COMMERCIAL GENERAL LIABILITY | $1,000,000 EACH CLAIM | WESTCHESTER SURPLUS LINES 12/31/03 - 06/30/05 |
| EMPLOYER'S LIABILITY | $500,000 "BODILY INJURY" BY ACCIDENT $500,000 "BODILY INJURY" BY DISEASE | LIBERTY MUTUAL 01/04/04 - 04/01/05 04/01/05 - 06 (MILLER & SOLOMON) LIBERTY MUTUAL 04/01/05 - 06 (GRYPHON CONSTRUCTION |
| EMPLOYEE BENEFITS LIABILITY | $1,000,000 EACH CLAIM | WESTCHESTER SURPLUS LINES INSURANCE CO 12/31/03 - 06/30/05 |

M36 (12-89)



# WESTCHES..ER SURPLUS LINES INSURA..CE COMPANY

### ATLANTA, GA

### GENERAL CHANGE ENDORSEMENT

**ace usa**

┌─────────────────────────────────────┐
│  **POLICY NO. CUW-774178**           │
└─────────────────────────────────────┘

**NAMED INSURED AND MAILING ADDRESS**

┌─────────────────────────────────────┐
│ MILLER & SOLOMON GENERAL CONTRACTORS │
│ INC.                                 │
│ 8491 N.W. 17TH STREET, SUITE L       │
│ MIAMI FL 33126                       │
└─────────────────────────────────────┘

**AGENCY AND MAILING ADDRESS        71388**

┌─────────────────────────────────────┐
│ COLEMONT INSURANCE BROKERS           │
│ 2859 PACES FERRY RD, STE 1500        │
│ ATLANTA GA  30339                    │
└─────────────────────────────────────┘

**POLICY PERIOD:    From 12/31/2003 to 06/30/2005**
                    12:01 A.M. Standard Time at the Named Insureds address above
EFFECTIVE 03-08-05 THIS POLICY IS AMENDED AS SHOWN

   UMBRELLA

   ENDORSEMENT NO. 5

   IT IS AGREED THAT THE CONTRACTORS ENDORSEMENT (INCL BFPD)
   M06 (10-90) IS DELETED FROM THE POLICY.  IT IS AGREED THAT THE
   CONTRACTORS ENDORSEMENT (INCLUDING BROAD FORM PROPERTY DAMAGE)
   UM05858 IS ADDED TO THE POLICY AS PER THE ATTACHED.

DATE: _____  BY: *Crawford Vinson Trippe*

                         AUTHORIZED REPRESENTATIVE

06-08-05        394   MWILS        Company's copy
                                   Page   1 of   1

WSLIC 135

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## CONTRACTORS ENDORSEMENT
### (INCLUDING BROAD FORM "PROPERTY DAMAGE")

I.   THIS POLICY DOES NOT APPLY TO "BODILY INJURY", "PROPERTY DAMAGE", "PERSONAL INJURY", OR "ADVERTISING INJURY" ARISING OUT OF:

    A.   THE CONDUCT OF ANY CURRENT OR PAST PARTNERSHIPS OR JOINT VENTURES OF WHICH THE "INSURED" IS A MEMBER AND WHICH IS NOT DESIGNATED IN THIS POLICY AS A "NAMED INSURED";

    B.   ANY PROJECT INSURED UNDER A WRAP-UP RATING PLAN; OR

II.   EXCLUSION D. IS AMENDED TO READ:

    D.   "PROPERTY DAMAGE" TO

        1.   ANY PROPERTY OWNED BY THE "INSURED";

        2.   PERSONAL PROPERTY IN THE CARE, CUSTODY AND CONTROL OF THE "INSURED";

        3.   THAT PARTICULAR PART OF REAL PROPERTY ON WHICH THE "INSURED" OR ANY CONTRACTORS OR SUBCONTRACTORS WORKING DIRECTLY OR INDIRECTLY ON THE "INSURED'S" BEHALF ARE PERFORMING "YOUR WORK", IF THE "PROPERTY DAMAGE" ARISES OUT OF "YOUR WORK".

III.   WITH RESPECT TO "BODILY INJURY", "PROPERTY DAMAGE", "PERSONAL INJURY" OR "ADVERTISING INJURY" ARISING OUT OF THE RENDERING OR FAILURE TO RENDER ARCHITECTURAL, ENGINEERING OR LAND SURVEY PROFESSIONAL SERVICES BY OR FOR YOU, INCLUDING:

    A.   THE PREPARING, APPROVING OR FAILURE TO PREPARE OR APPROVE MAPS, DRAWINGS, OPINIONS, REPORTS, SURVEYS, CHANGE ORDERS, DESIGNS OR SPECIFICATIONS; AND

    B.   SUPERVISORY, INSPECTION, OR ENGINEERING SERVICES;
THIS POLICY IS LIMITED TO THE COVERAGE PROVIDED BY THE "UNDERLYING INSURANCE".   IF COVERAGE IS NOT PROVIDED BY THE "UNDERLYING INSURANCE", COVERAGE IS EXCLUDED BY THIS POLICY.

PAGE 1 OF 2

UM05858 (07/01)

WSLIC 136

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

IV.   WITH RESPECT TO "BODILY INJURY", "PROPERTY DAMAGE", "PERSONAL INJURY" OR "ADVERTISING INJURY" ARISING OUT OF LIABILITY YOU ASSUME UNDER ANY CONTRACT, THIS POLICY IS LIMITED TO THE COVERAGE PROVIDED BY THE "UNDERLYING INSURANCE". IF COVERAGE IS NOT PROVIDED BY THE "UNDERLYING INSURANCE", COVERAGE IS EXCLUDED BY THIS POLICY.

V.   WITH RESPECT TO "PROPERTY DAMAGE"

    A.   ARISING FROM BLASTING OR EXPLOSION OTHER THAN THE EXPLOSION OF AIR OR STEAM VESSELS, PIPING UNDER PRESSURE, PRIME MOVERS, MACHINERY OR POWER TRANSMITTING EQUIPMENT; OR

    B.   ARISING FROM THE COLLAPSE OF OR STRUCTURAL INJURY TO ANY BUILDING OR STRUCTURE DUE TO GRADING OF LAND, EXCAVATING, BURROWING, FILLING, BACK-FILLING, TUNNELING, PILE DRIVING, COFFERDAM WORK, CAISSON WORK OR MOVING, SHORING, UNDERPINNING, RAISING OR DEMOLITION OF ANY BUILDING OR STRUCTURE, REMOVAL OR REBUILDING OF ANY OTHER PROPERTY AT ANY TIME RESULTING THEREFROM; OR

    C.   TO WIRES, CONDUITS, PIPES, MAINS, SEWERS, TANKS, TUNNELS, ANY SIMILAR PROPERTY, AND ANY APPARATUS IN CONNECTION THEREWITH, BENEATH THE SURFACE OF THE GROUND OR WATER, CAUSED BY AND OCCURRING DURING THE USE OF MECHANICAL EQUIPMENT FOR THE PURPOSE OF GRADING LAND, PAVING, EXCAVATING, DRILLING, BURROWING, FILLING, BACK-FILLING, OR PILE DRIVING, OR "PROPERTY DAMAGE" TO ANY OTHER PROPERTY AT ANY TIME RESULTING THEREFROM;

THIS POLICY IS LIMITED TO THE COVERAGE PROVIDED BY THE "UNDERLYING INSURANCE". IF COVERAGE IS NOT PROVIDED BY THE "UNDERLYING INSURANCE", COVERAGE IS EXCLUDED BY THIS POLICY.

AUTHORIZED REPRESENTATIVE

PAGE 2 OF 2

UM05858 (07/01)

WSLIC 137



**WESTCHESTI SURPLUS LINES INSURAN COMPANY**
ATLANTA, GA

CHANGE POLICY EXP DATE

**ace usa**

POLICY NO. CUW-774178

| NAMED INSURED AND MAILING ADDRESS | AGENCY AND MAILING ADDRESS     71388 |
|---|---|
| MILLER & SOLOMON GENERAL CONTRACTORS INC.<br>8491 N.W. 17TH STREET, SUITE L<br>MIAMI FL 33126 | HEATH INSURANCE BROKERS, INC.<br>2859 PACES FERRY RD, STE 1500<br>ATLANTA GA  30339 |

POLICY PERIOD:   From 12/31/2003 to 06/30/2005       ENDORSEMENT NO. 4
                        12:01 A.M. Standard Time at the Named Insureds address above
POLICY EXPIRATION DATE IS CHANGED TO   06-30-05

DATE: _____   BY *Crawford Vinson Tripp*
                                AUTHORIZED REPRESENTATIVE

Insured's copy
Page   1 of   1

01-04-05          394     CNCDO

WSLIC 138



# WESTCHESTER SURPLUS LINES INSURANCE COMPANY
### ATLANTA, GA

**ace usa**

GENERAL CHANGE ENDORSEMENT

| POLICY NO. CUW-774178 |
| --- |

NAMED INSURED AND MAILING ADDRESS        AGENCY AND MAILING ADDRESS        71388

| MILLER & SOLOMON GENERAL CONTRACTORS INC. | HEATH INSURANCE BROKERS, INC. |
| --- | --- |
| 8491 N.W. 17TH STREET, SUITE L | 2859 PACES FERRY RD, STE 1500 |
| MIAMI FL 33126 | ATLANTA GA 30339 |

POLICY PERIOD:    From 12/31/2003 to 03/01/2005
                  12:01 A.M. Standard Time at the Named Insureds address above
EFFECTIVE 05-19-04 THIS POLICY IS AMENDED AS SHOWN

UMBRELLA

ENDORSEMENT NO. 3

IN CONSIDERATION OF AN ADDITIONAL PREMIUM OF        IT IS AGREED
THAT THE FOLLOWING ENDORSEMENT IS ADDED TO THIS POLICY:

LIMITS OF INSURANCE - AMENDMENT
(SPECIFIC JOB LIMITATION)

DATE: _____  BY: _____
                          AUTHORIZED REPRESENTATIVE

WSLIC 139

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

LIMITS OF INSURANCE – AMENDMENT
(SPECIFIC JOB LIMITATION)

I:     ITEM FOUR, LIMITS OF INSURANCE, HAS BEEN AMENDED AS FOLLOWS:

$ 25,000,000    EACH OCCURRENCE LIMIT
$ 25,000,000    GENERAL AGGREGATE LIMIT (OTHER THAN
                     PRODUCTS/COMPLETED OPERATIONS)
$ 25,000,000    PRODUCTS/COMPLETED OPERATIONS AGGREGATE LIMIT

THE ABOVE LIMITS ARE ONLY APPLICABLE TO "BODILY INJURY", "PROPERTY DAMAGE", "PERSONAL INJURY" AND "ADVERTISING INJURY" ARISING FROM THE FOLLOWING JOB:

DOWNTOWN DADELAND PROJECT
7250 NORTH KENDALL DRIVE
MIAMI, FL

II:    EXCEPT FOR THE LIMITS STATED IN ITEM I. OF THIS ENDORSEMENT, ALL OTHER "BODILY INJURY", "PROPERTY DAMAGE", "PERSONAL INJURY" AND "ADVERTISING INJURY" ARE SUBJECT TO THE LIMITS OF INSURANCE AS STATED IN ITEM FOUR, LIMITS OF INSURANCE, OF THE DECLARATIONS PAGE.

IF COVERAGE IS NOT PROVIDED BY "UNDERLYING INSURANCE", COVERAGE IS EXCLUDED FROM THIS POLICY.

UM05969 (11/02)

_____
AUTHORIZED REPRESENTATIVE

WSLIC 140



# WESTCHESTER SURPLUS LINES INSURANCE COMPANY
### ATLANTA, GA

GENERAL CHANGE ENDORSEMENT

## ace usa

| POLICY NO. CUW-774178 |
| --- |

| NAMED INSURED AND MAILING ADDRESS | AGENCY AND MAILING ADDRESS     71388 |
| --- | --- |
| MILLER & SOLOMON GENERAL CONTRACTORS INC.<br>8491 N.W. 17TH STREET, SUITE L<br>MIAMI FL 33126 | HEATH INSURANCE BROKERS, INC.<br>2859 PACES FERRY RD, STE 1500<br>ATLANTA GA  30339 |

POLICY PERIOD:   From 12/31/2003 to 03/01/2005
                 12:01 A.M. Standard Time at the Named Insureds address above
EFFECTIVE 12-31-03 THIS POLICY IS AMENDED AS SHOWN

### UMBRELLA

ENDORSEMENT NO. 2

SCHEDULE A - SCHEDULE OF UNDERLYING INSURANCE IS AMENDED PER THE ATTACHED.

DATE: _____   BY: _____

*Crawford Vinson Tripp*

AUTHORIZED REPRESENTATIVE

# WESTCHESTER SURPLUS LINES INSURANCE COMPANY

## ATLANTA, GA

### SCHEDULE OF UNDERLYING

| POLICY NO. CUW-774178 |
| --- |

| NAMED INSURED AND MAILING ADDRESS | AGENCY AND MAILING ADDRESS     71388 |
| --- | --- |
| MILLER & SOLOMON GENERAL CONTRACTORS INC.<br>8491 N.W. 17TH STREET, SUITE L<br>MIAMI FL 33126 | HEATH INSURANCE BROKERS, INC.<br>2859 PACES FERRY RD, STE 1500<br>ATLANTA GA  30339 |

POLICY PERIOD:    From 12/31/2003 to 03/01/2005
            12:01 A.M. Standard Time at the Named Insureds address above
ENDORSEMENT DATE:    12/31/2003
        SCHEDULE A - SCHEDULE OF UNDERLYING INSURANCE - M36

| TYPE OF POLICY | APPLICABLE LIMITS | INSURER/ POLICY PERIOD |
| --- | --- | --- |
| (A) "AUTOMOBILE" LIABILITY | "BODILY INJURY" & "PROPERTY DAMAGE"<br>COMBINED SINGLE LIMIT<br>$1,000,000<br>EACH "OCCURRENCE"<br><br>UNINSURED/UNDERINSURED MOTORIST<br>$N/A<br>EACH "OCCURRENCE" | HARTFORD<br>12-31-03/04 |
| (B) COMMERCIAL GENERAL LIABILITY | $1,000,000<br>EACH "OCCURRENCE" LIMIT<br>$2,000,000<br>GENERAL AGGREGATE LIMIT<br>(X) PER PROJECT/LOCATION<br>$2,000,000<br>PRODUCTS/COMPLETED<br>OPERATIONS AGGREGATE LIMIT<br>$N/A<br>POLICY  AGGREGATE LIMIT<br>$1,000,000<br>PERSONAL &  ADVERTISING<br>INJURY LIMIT<br>$N/A<br>FIRE DAMAGE LIMIT -<br>ANY ONE FIRE | WESTCHESTER SURPLUS LINES<br>12/31/03 - 03/01/05 |

Company's copy

07-27-04         . 394   CHCDO        Page    1 of    3

WSLIC 142

# WESTCHESTER SURPLUS LINES INSURANCE COMPANY
## ATLANTA, GA

### SCHEDULE OF UNDERLYING

```
POLICY NO. CUW-774178
```

**NAMED INSURED AND MAILING ADDRESS**     **AGENCY AND MAILING ADDRESS**     71388

```
MILLER & SOLOMON GENERAL CONTRACTORS      HEATH INSURANCE BROKERS, INC.
INC.                                      2859 PACES FERRY RD, STE 1500
8491 N.W. 17TH STREET, SUITE L            ATLANTA GA  30339
MIAMI FL 33126
```

POLICY PERIOD:   From 12/31/2003 to 03/01/2005
                 12:01 A.M. Standard Time at the Named Insureds address above
ENDORSEMENT DATE:    12/31/2003

```
COMPREHENSIVE     "BODILY INJURY" & "PROPERTY
GENERAL           DAMAGE"
LIABILITY         COMBINED SINGLE LIMIT
                  $N/A
                  EACH "OCCURRENCE"
                  $N/A
                  AGGREGATE WHEN APPLICABLE

(C) STANDARD      COVERAGE B - EMPLOYERS          LIBERTY MUTUAL
    WORKERS       LIABILITY                       01/04/04 - 04/01/05
    COMPENSATION  "BODILY INJURY" BY ACCIDENT
    & EMPLOYERS   $500,000
    LIABILITY     EACH ACCIDENT
                  "BODILY INJURY" BY DISEASE
                  $500,000
                  EACH EMPLOYEE
                  "BODILY INJURY" BY DISEASE
                  $500,000
                  POLICY  LIMIT
```

# WESTCHESTER SURPLUS LINES INSURANCE COMPANY
## ATLANTA, GA

### SCHEDULE OF UNDERLYING

| POLICY NO. CUW-774178 |
|---|

**NAMED INSURED AND MAILING ADDRESS**

MILLER & SOLOMON GENERAL CONTRACTORS INC.
8491 N.W. 17TH STREET, SUITE L
MIAMI FL 33126

**AGENCY AND MAILING ADDRESS        71388**

HEATH INSURANCE BROKERS, INC.
2859 PACES FERRY RD, STE 1500
ATLANTA GA 30339

POLICY PERIOD:    From 12/31/2003 to 03/01/2005
                  12:01 A.M. Standard Time at the Named Insureds address above
ENDORSEMENT DATE:    12/31/2003

| | | |
|---|---|---|
| (D) EMPLOYEE BENEFITS LIABILITY | $1,000,000 EACH CLAIM $1,000,000 AGGREGATE | WESTCHESTER SURPLUS LINES 12/31/03 - 03/01/05 |

(E) FEDERAL TERRORISM
    RISK INSURANCE ACT
    OF 2002

TYPE OF POLICY

| | | |
|---|---|---|
| AUTOMOBILE LIABILITY | $1,000,000 EACH OCCURRENCE | HARTFORD 12-31-03/04 |
| COMMERCIAL GENERAL LIABILITY | $1,000,000 EACH CLAIM | WESTCHESTER SURPLUS LINES 12/31/03 - 03/01/05 |
| EMPLOYER'S LIABILITY | $500,000 "BODILY INJURY" BY ACCIDENT $500,000 "BODILY INJURY" BY DISEASE | LIBERTY MUTUAL 01/04/04 - 04/01/05 |
| EMPLOYEE BENEFITS LIABILITY | $500,000 "BODILY INJURY" EACH ACCIDENT $500,000 "BODILY INJURY" BY DISEASE | WESTCHESTER SURPLUS LINES 12/31/03 - 03/01/05 |

M36 (12-89)

WSLIC 144



# WESTCHESTER SURPLUS LINES INSURANCE COMPANY
### ATLANTA, GA

#### GENERAL CHANGE ENDORSEMENT

## ace usa

| POLICY NO.  CUW-774178 |
| --- |

NAMED INSURED AND MAILING ADDRESS        AGENCY AND MAILING ADDRESS        71388

| MILLER & SOLOMON GENERAL CONTRACTORS INC.<br>8491 N.W. 17TH STREET, SUITE L<br>MIAMI FL 33126 | HEATH INSURANCE BROKERS, INC.<br>2859 PACES FERRY RD, STE 1500<br>ATLANTA GA  30339 |
| --- | --- |

POLICY PERIOD:    From 12/31/2003 to 03/01/2005
                  12:01 A.M. Standard Time at the Named Insureds address above
EFFECTIVE 02-17-04 THIS POLICY IS AMENDED AS SHOWN

**UMBRELLA**

ENDORSEMENT NO. 1

THE FOLLOWING ENDORSEMENT IS ADDED TO THIS POLICY:

CANCELLATION NOTIFICATION TO CERTIFICATE HOLDER
M07 (10-90)

THIS ENDORSEMENT IS EFFECTIVE FROM  02/17/2004 TO 03/01/2005



### WESTCHESTER SURPLUS LINES INSURANCE COMPANY
ATLANTA, GA

**GENERAL CHANGE ENDORSEMENT**

**ace usa**

| POLICY NO. CUW-774178 |
| --- |

| NAMED INSURED AND MAILING ADDRESS | AGENCY AND MAILING ADDRESS    71388 |
| --- | --- |
| MILLER & SOLOMON GENERAL CONTRACTORS INC.<br>8491 N.W. 17TH STREET, SUITE L<br>MIAMI FL 33126 | HEATH INSURANCE BROKERS, INC.<br>2859 PACES FERRY RD, STE 1500<br>ATLANTA GA  30339 |

POLICY PERIOD:    From 12/31/2003 to 03/01/2005
12:01 A.M. Standard Time at the Named Insureds address above

=========== FORMS SECTION ===========

FORM: M07 (10-90)

IF WE CANCEL THIS POLICY FOR ANY REASON OTHER THAN NON-PAYMENT OF PREMIUM WE WILL GIVE (30) DAYS' WRITTEN NOTICE PRIOR TO SUCH CANCELLATION TO:

FORIDA DEVELOPMENT ASSOCIATES, LTD.
707 5TH STREET
MIAMI, FL  33139

*Crawford Vinson Trippe*

DATE: _____ BY: _____
AUTHORIZED REPRESENTATIVE

04-14-04          394    CMCDO          Company's copy
Page    2 of    2

WSLIC 146

## CANCELLATION NOTIFICATION TO CERTIFICATE HOLDER

IF WE CANCEL THIS POLICY FOR ANY REASON OTHER THAN NON-PAYMENT OF PREMIUM, WE WILL GIVE ___(SEE BELOW)___ DAYS WRITTEN NOTICE PRIOR TO SUCH CANCELLATION TO: ___(SEE BELOW)___.

_____
AUTHORIZED REPRESENTATIVE

*IF NO ENTRY APPEARS ON THIS ENDORSEMENT, INFORMATION REQUIRED TO COMPLETE THIS FORM WILL BE SHOWN IN THE DECLARATIONS AS APPLICABLE TO THIS ENDORSEMENT.

M07 (10-90)

WSLIC 147



**WESTCHI᠁R SURPLUS LINES INSU᠁E COMPANY**

ATLANTA, GA

**ace usa**

DECLARATIONS

┌─────────────────────────────────────┐
│ POLICY NO. CUW-774178 │
└─────────────────────────────────────┘

NAMED INSURED AND MAILING ADDRESS        AGENCY AND MAILING ADDRESS        71388

┌──────────────────────────────────┐  ┌──────────────────────────────────┐
│ MILLER & SOLOMON GENERAL CONTRACTORS │ HEATH INSURANCE BROKERS, INC. │
│ INC.                                 │ 2859 PACES FERRY RD, STE 1500 │
│ 8491 N.W. 17TH STREET, SUITE L       │ ATLANTA GA  30339             │
│ MIAMI FL 33126                       │                               │
└──────────────────────────────────┘  └──────────────────────────────────┘

POLICY PERIOD:     From 12/31/2003 to ~~03/01/2005~~ 6|30|05
                   12:01 A.M. Standard Time at the Named Insureds address above

UMBRELLA
DECLARATIONS

POLICY NUMBER CUW-774178-0                    RENEWAL OF

| ITEM ONE | NAMED INSURED AND ADDRESS<br>MILLER & SOLOMON GENERAL CONTRACTORS<br>INC.<br>8491 N.W. 17TH STREET, SUITE L<br>MIAMI                          FL      33126 |
|---|---|
| ITEM TWO<br>POLICY<br>PERIOD | POLICY COVERS FROM   12-31-2003  TO  3- 1-2005<br>                    12:01 AM STANDARD TIME AT MAILING<br>                    ADDRESS SHOWN ABOVE. |
| ITEM THREE | INSURING COMPANY :              REPRESENTATIVE<br>WESTCHESTER SURPLUS LINES       HEATH INSURANCE BROKERS, INC.<br>INSURANCE COMPANY               2859 PACES FERRY RD, STE 1500<br>                                ATLANTA          GA   30339 |

| ITEM FOUR<br><br>LIMITS | LIMITS OF INSURANCE :<br>AS IN INSURING AGREEMENT V AND VI<br>(THE LIMITS OF INSURANCE ARE THE AMOUNTS SHOWN BELOW) | |
|---|---|---|
| | (A) Each Occurrence Limit | $10,000,000 |
| | (B) General Aggregate Limit<br>(other than Products/Completed Operations) | $10,000,000 |
| | (C) Product/Completed Operations Aggregate Limit | $10,000,000 |
| | (D) Combined Aggregate Limit | N/A |
| | (E) Self-Insured Retention (Per Occurrence) | $10,000 |

CERTIFIED COPY

THIS IS CERTIFIED COPY OF POLICY NO. *CUW774178*
AND IN NO EVENT TO BE CONSIDERED AS ADDITIONAL
INSURANCE.

~~Authorized Representative~~

Please see ᠁
Surplus ᠁ Lines Law in your state, you
should ᠁ every effort to supply all
any special ᠁ ᠁ and regulations of
your state.

Extra copy
Page    1 of    2

01-30-04            394    CKCDO

WSLIC 148



# WESTCHESTER SURPLUS LINES INSURANCE COMPANY
### ATLANTA, GA

## DECLARATIONS

**ace usa**

| POLICY NO. CUW-774178 |
|---|

| NAMED INSURED AND MAILING ADDRESS | AGENCY AND MAILING ADDRESS    71388 |
|---|---|
| MILLER & SOLOMON GENERAL CONTRACTORS INC.<br>8491 N.W. 17TH STREET, SUITE L<br>MIAMI FL 33126 | HEATH INSURANCE BROKERS, INC.<br>2859 PACES FERRY RD, STE 1500<br>ATLANTA GA  30339 |

POLICY PERIOD:   From 12/31/2003 to 03/01/2005
12:01 A.M. Standard Time at the Named Insureds address above

| ITEM<br>FIVE<br><br>FORMS | POLICY JACKET, FORMS AND ENDORSEMENTS ATTACHED TO THIS POLICY<br>AT INCEPTION (NUMBER AND EDITION DATE)<br>JACKET NO. FM101.0.1108 (11-93)<br>ENDORSEMENTS ARE AS DESCRIBED ON THE SCHEDULE OF ENDORSEMENTS<br>SCHEDULE OF UNDERLYING INSURANCE M36 (12-89) |
|---|---|
| ITEM<br>SIX<br><br>PREMIUM<br>SUMMARY | PREMIUM IS PAYABLE<br><br>IN ADVANCE ADJUSTABLE<br>AT A RATE OF FLAT EXC ACQUISTIONS<br>PER N/A<br>ESTIMATED ANNUAL EXPOSURE N/A<br>ANNUAL PREMIUM |

DATE: _____   BY: _Crawford Wilson Tripp_
AUTHORIZED REPRESENTATIVE

WSLIC 149

## SURPLUS LINES INFORMATION:

THIS INSURANCE IS ISSUED PURSUANT TO THE FLORIDA SURPLUS LINES LAW. PERSONS INSURED BY SURPLUS LINES CARRIERS DO NOT HAVE THE PROTECTION OF THE FLORIDA INSURANCE GUARANTY ACT TO THE EXTENT OF ANY RIGHT OF RECOVERY FOR THE OBLIGATION OF AN INSOLVENT UNLICENSED INSURER.

# WESTCHESTER SURPLUS LINES INSURANCE COMPANY

ATLANTA, GA

## EXTENDED NAMED INSURED

```
┌────────────────────────────────────┐
│  POLICY NO. CUW-774178             │
└────────────────────────────────────┘
```

| NAMED INSURED AND MAILING ADDRESS | AGENCY AND MAILING ADDRESS | 71388 |
|---|---|---|

```
┌──────────────────────────────────┐   ┌──────────────────────────────────┐
│ MILLER & SOLOMON GENERAL         │   │ HEATH INSURANCE BROKERS, INC.    │
│ CONTRACTORS INC.                 │   │ 2859 PACES FERRY RD, STE 1500    │
│ 8491 N.W. 17TH STREET, SUITE L   │   │ ATLANTA GA  30339                │
│ MIAMI FL 33126                   │   │                                  │
└──────────────────────────────────┘   └──────────────────────────────────┘
```

POLICY PERIOD:   From 12/31/2003 to 03/01/2005
                 12:01 A.M. Standard Time at the Named Insureds address above

MILLER & SOLOMON RESIDENTIAL, INC. - INACTIVE
DATATRONICS, INC. - INACTIVE
KLK DEVELOPMENT, INC. - INACTIVE
ROSARIO EQUIPMENT, INC. - INACTIVE
QUALITY SUPPLY, LLC - ACTIVE
AFLR, INC. - INACTIVE
1776 PROPERTIES, LLC - INACTIVE

# WESTCH. . .R SURPLUS LINES INSU. . .E COMPANY

### ATLANTA, GA

## SCHEDULE OF UNDERLYING

| POLICY NO. CUW-774178 |
| --- |

| NAMED INSURED AND MAILING ADDRESS | AGENCY AND MAILING ADDRESS   71388 |
| --- | --- |
| MILLER & SOLOMON GENERAL CONTRACTORS INC.<br>8491 N.W. 17TH STREET, SUITE L<br>MIAMI FL 33126 | HEATH INSURANCE BROKERS, INC.<br>2859 PACES FERRY RD, STE 1500<br>ATLANTA GA   30339 |

POLICY PERIOD:   From 12/31/2003 to 03/01/2005
12:01 A.M. Standard Time at the Named Insureds address above

### SCHEDULE A - SCHEDULE OF UNDERLYING INSURANCE - M36

| TYPE OF POLICY | APPLICABLE LIMITS | INSURER/ POLICY PERIOD |
| --- | --- | --- |
| (A) "AUTOMOBILE" LIABILITY | "BODILY INJURY" & "PROPERTY DAMAGE"<br>COMBINED SINGLE LIMIT<br>$1,000,000<br>EACH "OCCURRENCE"<br><br>UNINSURED/UNDERINSURED MOTORIST<br>$N/A<br>EACH "OCCURRENCE" | HARTFORD<br>12-31-03/04 |
| (B) COMMERCIAL GENERAL LIABILITY | $1,000,000<br>EACH "OCCURRENCE" LIMIT<br>$2,000,000<br>GENERAL AGGREGATE LIMIT<br>(X) PER PROJECT/LOCATION<br>$2,000,000<br>PRODUCTS/COMPLETED OPERATIONS AGGREGATE LIMIT<br>$N/A<br>POLICY   AGGREGATE LIMIT<br>$1,000,000<br>PERSONAL &   ADVERTISING INJURY LIMIT<br>$N/A<br>FIRE DAMAGE LIMIT -<br>ANY ONE FIRE | WESTCHESTER SURPLUS LINES<br>12/31/03 - 03/01/05 |

01-30-04        394   CMCOD        Extra copy
Page   1 of   3

# WESTCH... R SURPLUS LINES INSU... E COMPANY

### ATLANTA, GA

## SCHEDULE OF UNDERLYING

> **POLICY NO. CUW-774178**

**NAMED INSURED AND MAILING ADDRESS**          **AGENCY AND MAILING ADDRESS**          **71388**

> MILLER & SOLOMON GENERAL CONTRACTORS
> INC.
> 8491 N.W. 17TH STREET, SUITE L
> MIAMI FL 33126

> HEATH INSURANCE BROKERS, INC.
> 2859 PACES FERRY RD, STE 1500
> ATLANTA GA   30339

**POLICY PERIOD:**   From 12/31/2003 to 03/01/2005
                     12:01 A.M. Standard Time at the Named Insureds address above

| | | |
|---|---|---|
| COMPREHENSIVE GENERAL LIABILITY | "BODILY INJURY" & "PROPERTY DAMAGE" COMBINED SINGLE LIMIT $N/A EACH "OCCURRENCE" $N/A AGGREGATE WHEN APPLICABLE | |
| (C) STANDARD WORKERS COMPENSATION & EMPLOYERS LIABILITY | COVERAGE B - EMPLOYERS LIABILITY "BODILY INJURY" BY ACCIDENT $500,000 EACH ACCIDENT "BODILY INJURY" BY DISEASE $500,000 EACH EMPLOYEE "BODILY INJURY" BY DISEASE $500,000 POLICY LIMIT | LIBERTY MUTUAL 12/31/03 - 03/01/05 |

# WESTCHESTER SURPLUS LINES INSURANCE COMPANY
### ATLANTA, GA

SCHEDULE OF UNDERLYING

POLICY NO. CUW-774178

NAMED INSURED AND MAILING ADDRESS          AGENCY AND MAILING ADDRESS          71388

MILLER & SOLOMON GENERAL CONTRACTORS INC.
8491 N.W. 17TH STREET, SUITE L
MIAMI FL 33126

HEATH INSURANCE BROKERS, INC.
2859 PACES FERRY RD, STE 1500
ATLANTA GA  30339

POLICY PERIOD:   From 12/31/2003 to 03/01/2005
                 12:01 A.M. Standard Time at the Named Insureds address above

| | | | | |
|---|---|---|---|---|
| (D) | EMPLOYEE BENEFITS LIABILITY | $1,000,000 EACH CLAIM $1,000,000 AGGREGATE | WESTCHESTER SURPLUS LINES 12/31/03 - 03/01/05 |
| (E) | FEDERAL TERRORISM RISK INSURANCE ACT OF 2002 | | |

TYPE OF POLICY

| | | |
|---|---|---|
| AUTOMOBILE LIABILITY | $1,000,000 EACH OCCURRENCE | HARTFORD 12-31-03/04 |
| COMMERCIAL GENERAL LIABILITY | $1,000,000 EACH CLAIM | WESTCHESTER SURPLUS LINES 12/31/03 - 03/01/05 |
| EMPLOYER'S LIABILITY | $500,000 "BODILY INJURY" BY ACCIDENT $500,000 "BODILY INJURY" BY DISEASE | LIBERTY MUTUAL 12-31-03/04 |
| EMPLOYEE BENEFITS LIABILITY | $500,000 "BODILY INJURY" EACH ACCIDENT $500,000 "BODILY INJURY" BY DISEASE | WESTCHESTER SURPLUS LINES 12/31/03 - 03/01/05 |

M36 (12-89)

01-30-04          394   CMCDO      Extra copy
                              Page   3 of   3

WESTCH... .. .. & SURPLUS LINES INSU... ...E COMPANY

ATLANTA, GA

SCHEDULE OF ENDORSEMENTS

POLICY NO. CUW-774178

NAMED INSURED AND MAILING ADDRESS

MILLER & SOLOMON GENERAL CONTRACTORS, INC.
8491 N.W. 17TH STREET, SUITE L
MIAMI FL 33126

AGENCY AND MAILING ADDRESS          71388

HEATH INSURANCE BROKERS, INC.
2859 PACES FERRY RD, STE 1500
ATLANTA GA  30339

POLICY PERIOD:      From 12/31/2003 to 03/01/2005
                    12:01 A.M. Standard Time at the Named Insureds address above

| | |
|---|---|
| LD5S23g 04-02 | SIGNATURE ENDORSEMENT |
| L40 (11-93) | AUTOMOBILE (X-UM/UIM) - LIMITATION |
| L08 (12-89) | EMPLOYERS LIABILITY - LIMITATION |
| L25 (12-89) | PUNITIVE OR EXEMPLARY DAMAGE - LIMITATION |
| Q87 (02-97) | EMPLOYEE BENEFIT LIABILITY |
| R75 (08-90) | ABSOLUTE ASBESTOS - EXCLUSION |
| E84 (05-96) | DISCRIMINATION - EXCLUSION |
| E20 (12-89) | EMPLOYEES RETIREMENT INCOME SECURITY ACT - EXCL |
| E85 (05-96) | EMPLOYMENT RELATED PRACTICES - EXCLUSION |
| E50 (12-89) | CCC - PERSONAL PROPERTY - CLE - EXCLUSION |
| E60 (12-89) | CCC - REAL PROPERTY - CLE - EXCLUSION |
| E80 (04-93) | LEAD CONTAMINATION - EXCLUSION |
| E76 (10-91) | TOTAL POLLUTION - EXCLUSION |
| M03 (03-94) | AMENDATORY ENDORSEMENT |
| M06 (10-90) | CONTRACTORS ENDORSEMENT (INCL BFPD) |
| M55 (12-99) | KNOWN INJURY OR DAMAGE ENDORSEMENT |
| M58 (04-02) | SERVICE OF SUIT ENDORSEMENT |
| E113 | FUNGI OR BACTERIA EXCLUSION |
| TRIA11 | POLICYHOLDER DISCLOSURE NOTICE OF TERRORISM INS. |
| ALL-13845 | LIMITED EXCLUSION OF CERTIFIED ACTS OF TERRORISM |
| ALL-14151 | EXCL. PUN. DMGS. RELATED TO CERT. ACT OF TERRORISM |
| UM06193 | RESIDENTIAL CONSTRUCTION EXCLUSION |

## SIGNATURE ENDORSEMENT

THE ONLY SIGNATURES APPLICABLE TO THIS POLICY ARE THOSE REPRESENTING THE COMPANY NAMED ON THE FIRST PAGE OF THE DECLARATIONS.

By signing and delivering the policy to you, we state that it is a valid contract when countersigned by our authorized representative.

**ILLINOIS UNION INSURANCE COMPANY**
Chicago, Illinois

**INA SURPLUS INSURANCE COMPANY**
Philadelphia, Pennsylvania

GEORGE D. MULLIGAN, Secretary

SUSAN RIVERA, President

**WESTCHESTER SURPLUS LINES INSURANCE COMPANY**
Atlanta, Georgia

GEORGE D. MULLIGAN, Secretary

BRIAN E. DOWD, President

_____
Authorized Agent

LD-5S23g (4/02) Ptd. in U.S.A.

WSLIC 156

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## <u>AUTOMOBILE LIMITATION</u>

WITH RESPECT TO "BODILY INJURY" OR "PROPERTY DAMAGE" ARISING OUT OF THE OWNERSHIP, MAINTENANCE, OPERATION, USE, LOADING OR UNLOADING OF ANY "AUTOMOBILE," THIS POLICY IS LIMITED TO THE COVERAGE PROVIDED BY THE "UNDERLYING INSURANCE" AS LISTED ON SCHEDULE A - SCHEDULE OF UNDERLYING INSURANCE.

IF COVERAGE IS NOT PROVIDED BY "UNDERLYING INSURANCE," COVERAGE IS EXCLUDED FROM THIS POLICY.

HOWEVER, THIS POLICY DOES NOT APPLY TO ANY OBLIGATION OR LIABILITY IMPOSED ON THE "INSURED" UNDER ANY FIRST PARTY BODILY INJURY, AUTOMOBILE NO-FAULT, UNINSURED MOTORISTS, UNDERINSURED MOTORISTS LAW OR ANY SIMILAR LAW.

_____
**AUTHORIZED REPRESENTATIVE**

L40 (11-93)

WSLIC 157

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

<u>EMPLOYERS LIABILITY LIMITATION</u>

WITH RESPECT TO "BODILY INJURY" OR "PERSONAL INJURY" TO ANY EMPLOYEE ARISING OUT OF AND IN THE COURSE OF HIS EMPLOYMENT BY ANY "INSURED" OR TO ANY OBLIGATION TO INDEMNIFY ANOTHER BECAUSE OF LIABILITY ARISING OUT OF SUCH INJURY, THIS POLICY IS LIMITED TO THE COVERAGE PROVIDED BY THE "UNDERLYING INSURANCE".

IF COVERAGE IS NOT PROVIDED BY "UNDERLYING INSURANCE", COVERAGE IS EXCLUDED FROM THIS POLICY.

_____

AUTHORIZED REPRESENTATIVE

L08 (12-89)

WSLIC 158

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## PUNITIVE OR EXEMPLARY DAMAGES LIMITATION

WITH RESPECT TO PUNITIVE OR EXEMPLARY DAMAGES, THIS POLICY IS LIMITED TO THE COVERAGE PROVIDED IN THE "UNDERLYING INSURANCE".

IF COVERAGE IS NOT PROVIDED BY "UNDERLYING INSURANCE", COVERAGE IS EXCLUDED FROM THIS POLICY.

AUTHORIZED REPRESENTATIVE

L25 (12-89)

WSLIC 159

## EMPLOYEE BENEFITS LIABILITY ENDORSEMENT

TO THE EXTENT THAT COVERAGE IS PROVIDED TO THE "NAMED INSURED" IN THE "UNDERLYING INSURANCE" FOR LIABILITY ARISING OUT OF THE "ADMINISTRATION" OF THE "INSURED'S" "EMPLOYEE BENEFITS PROGRAM", SUCH COVERAGE IS PROVIDED BY THIS POLICY.

HOWEVER, UNDER NO CIRCUMSTANCES WILL THIS POLICY APPLY TO:

A. DAMAGES ARISING OUT OF A NEGLIGENT ACT, ERROR OR OMISSION OF AN "INSURED" WHICH:

    1. OCCURRED PRIOR TO THE POLICY PERIOD; AND

    2. THE "INSURED" KNEW OR SHOULD HAVE KNOWN MIGHT RESULT IN A "CLAIM" OR "SUIT";

B. DAMAGES DUE TO ANY DISHONEST, FRAUDULENT, CRIMINAL OR MALICIOUS ACT;

C. DAMAGES DUE TO LIBEL, SLANDER, DISCRIMINATION, HUMILIATION, EMOTIONAL DISTRESS, HARASSMENT, OR TERMINATION FROM EMPLOYMENT;

D. "BODILY INJURY" OR "PROPERTY DAMAGE";

E. FAILURE OF PERFORMANCE OF "CONTRACT" BY ANY INSURER, INCLUDING FAILURE OF ANY "EMPLOYEE BENEFITS PROGRAM" TO PROVIDE BENEFITS;

F. THE "INSURED'S" FAILURE TO COMPLY WITH ANY LAW CONCERNING WORKERS COMPENSATION, UNEMPLOYMENT INSURANCE, SOCIAL SECURITY OR DISABILITY BENEFITS;

G. ANY "CLAIM" OR "SUIT" BASED UPON:

    1. FAILURE OF STOCK TO PERFORM AS REPRESENTED BY AN "INSURED";

    2. ADVICE GIVEN BY AN "INSURED" TO AN EMPLOYEE TO PARTICIPATE OR NOT TO PARTICIPATE IN STOCK SUBSCRIPTION PLANS; OR

    3. THE INVESTMENT OR NON-INVESTMENT OF FUNDS;

H. ANY "CLAIM" OR "SUIT" BASED UPON THE VIOLATION OF ANY OF THE RESPONSIBILITIES, OBLIGATIONS OR DUTIES IMPOSED UPON FIDUCIARIES BY THE EMPLOYEE RETIREMENT INCOME SECURITY ACT OF 1974, OR AMENDMENTS THERETO OR ANY REGULATIONS AS ARE PROMULGATED THEREUNDER; OR

I. ANY FINES, PENALTIES, PUNITIVE OR EXEMPLARY DAMAGES.

WSLIC 160

IF EMPLOYEE BENEFITS LIABILITY COVERAGE IS NOT PROVIDED BY THE "UNDERLYING INSURANCE" THEN NO EMPLOYEE BENEFITS LIABILITY COVERAGE IS PROVIDED BY THIS POLICY.

UNDER NO CIRCUMSTANCES WILL THIS COVERAGE BE BROADER THAN THE COVERAGE PROVIDED BY THE "UNDERLYING INSURANCE".

FOR THE PURPOSE OF THIS ENDORSEMENT ONLY, THE FOLLOWING ADDITIONAL DEFINITIONS APPLY:

1.   "EMPLOYEE BENEFITS PROGRAM" MEANS:  GROUP OR LIFE INSURANCE, GROUP ACCIDENT OR HEALTH INSURANCE, PROFIT SHARING PLANS, PENSION PLANS, EMPLOYEE STOCK SUBSCRIPTION PLANS, WORKERS COMPENSATION, UNEMPLOYMENT INSURANCE, SALARY CONTINUATION PLANS, SOCIAL SECURITY, DISABILITY BENEFITS INSURANCE AND TRAVEL, SAVINGS OR VACATION PLANS OR ANY OTHER SIMILAR PLANS.

2.   "ADMINISTRATION" MEANS:

    a.   GIVING COUNSEL TO EMPLOYEES WITH RESPECT TO THE "EMPLOYEE BENEFITS PROGRAM";

    b.   INTERPRETING THE "EMPLOYEE BENEFITS PROGRAM";

    c.   HANDLING OF RECORDS IN CONNECTION WITH THE "EMPLOYEE BENEFITS PROGRAM" AND/OR;

    d.   EFFECTING ENROLLMENT OR TERMINATION OF EMPLOYEES UNDER THE "EMPLOYEE BENEFITS PROGRAM";

    PROVIDED ALL SUCH ACTS ARE AUTHORIZED BY YOU.

3.   "CONTRACT" MEANS A POLICY OF INSURANCE ISSUED TO YOU BY AN INSURER.

**AUTHORIZED REPRESENTATIVE**

WSLIC 161

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## ABSOLUTE ASBESTOS EXCLUSION

1. THIS POLICY DOES NOT APPLY TO "BODILY INJURY", "PROPERTY DAMAGE", "PERSONAL INJURY", OR "ADVERTISING INJURY" IN ANY WAY OR TO ANY EXTENT ARISING OUT OF OR INVOLVING ASBESTOS, ASBESTOS FIBERS, OR ANY PRODUCT CONTAINING ASBESTOS OR ASBESTOS FIBERS.

2. THIS POLICY DOES NOT APPLY TO "ECONOMIC LOSS" "DIMINUTION OF PROPERTY", "ABATEMENT COSTS", OR ANY OTHER LOSS, COST, OR EXPENSE INCLUDING "EQUITABLE RELIEF", IN ANY WAY OR TO ANY EXTENT ARISING OUT OF OR INVOLVING ASBESTOS, ASBESTOS FIBERS, OR ANY PRODUCT CONTAINING ASBESTOS OR ASBESTOS FIBERS.

3. THIS POLICY PROVIDES NO COVERAGE FOR ANY FEES, COSTS, OR EXPENSES OF ANY NATURE WHATSOEVER IN THE INVESTIGATION OR DEFENSE OF ANY "CLAIM" OR "SUIT" ARISING OUT OF OR INVOLVING ASBESTOS, ASBESTOS FIBERS, OR ANY PRODUCT CONTAINING ASBESTOS OR ASBESTOS FIBERS.

FOR THE PURPOSE OF THIS EXCLUSION ONLY, THE FOLLOWING ADDITIONAL TERMS ARE DEFINED:

"ABATEMENT COSTS" MEANS ANY ACTUAL OR POTENTIAL DAMAGES, COSTS, FEES, OR EXPENSES, INCLUDING THE COSTS OF INSPECTION, REMOVAL, OR REPLACEMENT.

"DIMINUTION OF PROPERTY" MEANS THE DIMINISHING OR LESSENING IN VALUE OF PROPERTY.

"ECONOMIC LOSS" MEANS ANY ACTUAL OR POTENTIAL DAMAGES, COSTS, FEES, EXPENSES, OR LOST PROFITS ARISING OUT OF OR INVOLVING THE MANUFACTURE OR UTILIZATION OF A GOOD OR PRODUCT.

"EQUITABLE RELIEF" MEANS ANY REMEDY OR RELIEF, INCLUDING RESTITUTION OR INJUNCTIVE RELIEF, SOUGHT IN A COURT WITH EQUITABLE POWERS.

_____
AUTHORIZED REPRESENTATIVE

E75 (8-90)

WSLIC 162

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY**

<u>DISCRIMINATION EXCLUSION</u>

1.  PARAGRAPH H. (6) OF INSURING AGREEMENT IV., DEFINITIONS, IS DELETED IN ITS ENTIRETY.

2.  EXCLUSION C. IS DELETED IN ITS ENTIRETY AND REPLACED BY THE FOLLOWING:

C.  "BODILY INJURY", "PERSONAL INJURY", "PROPERTY DAMAGE", "ADVERTISING INJURY" OR ANY OTHER LIABILITY OR DAMAGES CAUSED BY THE ACTS OR OMISSIONS OF ANY "INSURED" OR "INSURED'S" EMPLOYEE OR ANY PERSON ACTING ON BEHALF OF THE "INSURED" ARISING OUT OF:

(1)  DISCRIMINATION OF ANY KIND; AND

(2)  ANY ACTUAL OR ALLEGED DEFAMATION, EMOTIONAL DISTRESS, HUMILIATION OR HARASSMENT WHICH ARISES OUT OF DISCRIMINATION OF ANY KIND.

**AUTHORIZED REPRESENTATIVE**

E84 (5-96)

WSLIC 163

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.


EMPLOYEES' RETIREMENT INCOME SECURITY ACT EXCLUSION
(ERISA)


THIS POLICY DOES NOT APPLY TO ANY OBLIGATION OR LIABILITY IMPOSED ON THE "INSURED" UNDER THE EMPLOYEES' RETIREMENT INCOME SECURITY ACT OF 1974, OR ANY AMENDMENTS THERETO, OR ANY SIMILAR LAWS.


AUTHORIZED REPRESENTATIVE

E20 (12-89)

WSLIC 164

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

### EMPLOYMENT-RELATED PRACTICES EXCLUSION

A.   THIS POLICY DOES NOT APPLY TO "BODILY INJURY" OR "PERSONAL INJURY" ARISING OUT OF ANY:

   1.   REFUSAL TO EMPLOY;

   2.   TERMINATION OF EMPLOYMENT;

   3.   COERCION, DEMOTION, EVALUATION, REASSIGNMENT, DISCIPLINE, DEFAMATION, HARASSMENT, HUMILIATION, DISCRIMINATION OR OTHER EMPLOYMENT-RELATED PRACTICES, POLICIES, ACTS OR OMISSIONS;

   4.   "SEXUAL HARASSMENT"; OR

   5.   CONSEQUENTIAL "BODILY INJURY" OR "PERSONAL INJURY" AS A RESULT OF 1. THROUGH 4. ABOVE.

B.   "SEXUAL HARASSMENT" AS USED IN THIS EXCLUSION MEANS UNWELCOME SEXUAL ADVANCES, REQUESTS FOR SEXUAL FAVORS, VERBAL OR PHYSICAL CONDUCT OF A SEXUAL NATURE THAT:

   1.   ARE MADE A CONDITION OF EMPLOYMENT;

   2.   ARE USED AS A BASIS FOR EMPLOYMENT DECISIONS;

   3.   CREATES A HOSTILE WORK ENVIRONMENT; AND/OR

   4.   CREATES A WORK ENVIRONMENT THAT INTERFERES WITH PERFORMANCE.

C.   THIS EXCLUSION APPLIES WHETHER THE INSURED MAY BE HELD LIABLE AS AN EMPLOYER OR IN ANY OTHER CAPACITY AND TO ANY OBLIGATION TO SHARE DAMAGES WITH OR TO REPAY SOMEONE ELSE WHO MUST PAY DAMAGES.

_____
AUTHORIZED REPRESENTATIVE

E85 (5-96)

WSLIC 165

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## PERSONAL PROPERTY EXCLUSION

THIS POLICY DOES NOT APPLY TO "PROPERTY DAMAGE" TO "PERSONAL PROPERTY" IN YOUR CARE, CUSTODY OR CONTROL, EXCEPT AS RESPECTS COVERAGE PROVIDED BY CONTRACTOR'S ENDORSEMENT (INCLUDING BROAD FORM "PROPERTY DAMAGE").

"PERSONAL PROPERTY" MEANS ALL PROPERTY OTHER THAN REAL PROPERTY.

_____
AUTHORIZED REPRESENTATIVE

E50 (12-89)

WSLIC 166

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## REAL PROPERTY EXCLUSION

THIS POLICY DOES NOT APPLY TO "PROPERTY DAMAGE" TO REAL PROPERTY LEASED TO, RENTED TO, OCCUPIED OR MANAGED BY ANY "INSURED", EXCEPT AS RESPECTS COVERAGE PROVIDED BY CONTRACTOR'S ENDORSEMENT (INCLUDING BROAD FORM "PROPERTY DAMAGE").

_____

AUTHORIZED REPRESENTATIVE

WSLIC 167

E60 (12-89)

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

<u>LEAD CONTAMINATION EXCLUSION</u>

THIS POLICY DOES NOT APPLY TO "BODILY INJURY", "PERSONAL INJURY", "PROPERTY DAMAGE" OR "ADVERTISING INJURY" ARISING OUT OF LEAD IN ANY FORM.

AUTHORIZED REPRESENTATIVE

E80 (04-93)

WSLIC 168

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

<u>TOTAL POLLUTION EXCLUSION – UMBRELLA POLICY</u>

EXCLUSION J. IS REPLACED BY THE FOLLOWING:

J.    (1)    "BODILY INJURY" OR "PROPERTY DAMAGE" WHICH WOULD NOT HAVE OCCURRED IN WHOLE OR PART BUT FOR THE ACTUAL, ALLEGED OR THREATENED DISCHARGE, DISPERSAL, SEEPAGE, MIGRATION, RELEASE OR ESCAPE OF POLLUTANTS AT ANY TIME.

      (2)    ANY LOSS, COST OR EXPENSE ARISING OUT OF ANY:

            (A)    REQUEST, DEMAND OR ORDER THAT ANY "INSURED" OR OTHERS TEST FOR, MONITOR, CLEAN UP, REMOVE, CONTAIN, TREAT, DETOXIFY OR NEUTRALIZE, OR IN ANY WAY RESPOND TO, OR ASSESS THE EFFECTS OF POLLUTANTS; OR

            (B)    "CLAIM" OR "SUIT" BY OR ON BEHALF OF A GOVERNMENTAL AUTHORITY FOR DAMAGES BECAUSE OF TESTING FOR, MONITORING, CLEANING UP, REMOVING, CONTAINING, TREATING, DETOXIFYING OR NEUTRALIZING, OR IN ANY WAY RESPONDING TO, OR ASSESSING THE EFFECT OF POLLUTANTS.

POLLUTANTS MEANS ANY SOLID, LIQUID, GASEOUS, OR THERMAL IRRITANT OR CONTAMINANT INCLUDING SMOKE, VAPOR, SOOT, FUMES, ACIDS, ALKALIS, CHEMICALS AND WASTE.   WASTE INCLUDES MATERIAL TO BE RECYCLED, RECONDITIONED OR RECLAIMED.

AUTHORIZED REPRESENTATIVE

E76 (10-91)

WSLIC 169

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## AMENDATORY ENDORSEMENT

I.   INSURING AGREEMENT I., COVERAGE, IS AMENDED BY DELETING PARAGRAPH (1) AND REPLACING IT WITH THE FOLLOWING:

    I.   COVERAGE

      (1)   WE WILL PAY ON BEHALF OF THE "INSURED" THOSE SUMS IN EXCESS OF THE "RETAINED LIMIT" WHICH THE "INSURED", BY REASON OF LIABILITY IMPOSED BY LAW, OR ASSUMED BY THE "INSURED" UNDER CONTRACT PRIOR TO THE "OCCURRENCE", SHALL BECOME LEGALLY OBLIGATED TO PAY AS DAMAGES FOR:

        (A)   "BODILY INJURY" OR "PROPERTY DAMAGE" OCCURRING DURING THE POLICY PERIOD STATED IN ITEM 2 OF THE DECLARATIONS ("POLICY PERIOD") AND CAUSED BY AN "OCCURRENCE";

        (B)   "PERSONAL INJURY" CAUSED BY AN OFFENSE COMMITTED DURING THE "POLICY PERIOD"; OR

        (C)   "ADVERTISING INJURY" CAUSED BY AN ACT COMMITTED DURING THE "POLICY PERIOD".

II.   CONDITION M., MAINTENANCE OF UNDERLYING INSURANCE, IS AMENDED BY DELETING PARAGRAPH (3) AND REPLACING IT WITH THE FOLLOWING:

      (3)   THAT THE LIMITS OF LIABILITY AS WARRANTED BY THE "UNDERLYING INSURANCE" WILL NOT CHANGE, EXCEPT FOR REDUCTION OR EXHAUSTION IN THE AGGREGATE OR OCCURRENCE LIMITS DUE TO PAYMENTS FOR:

        A   "BODILY INJURY" OR "PROPERTY DAMAGE" OCCURRING DURING THE "POLICY PERIOD" AND CAUSED BY AN "OCCURRENCE";

        (B)   "PERSONAL INJURY" CAUSED BY AN OFFENSE COMMITTED DURING THE "POLICY PERIOD"; OR

        (C)   "ADVERTISING INJURY" CAUSED BY AN ACT COMMITTED DURING THE "POLICY PERIOD".

III.   DEFINITION L IS AMENDED BY DELETING FROM PARAGRAPH (3), SUBPARAGRAPH (a), THE FOLLOWING LANGUAGE:

      "AS DEFINED IN SUBPARAGRAPH (4), BELOW"


_____
AUTHORIZED REPRESENTATIVE

WSLIC 170

III.    WITH RESPECT TO "BODILY INJURY", "PROPERTY DAMAGE", "PERSONAL INJURY" OR "ADVERTISING INJURY" ARISING OUT OF LIABILITY YOU ASSUME UNDER ANY CONTRACT, THIS POLICY IS LIMITED TO THE COVERAGE PROVIDED BY THE "UNDERLYING INSURANCE". IF COVERAGE IS NOT PROVIDED BY THE "UNDERLYING INSURANCE", COVERAGE IS EXCLUDED BY THIS POLICY.

IV.    WITH RESPECT TO "PROPERTY DAMAGE"

A.    ARISING FROM BLASTING OR EXPLOSION OTHER THAN THE EXPLOSION OF AIR OR STEAM VESSELS, PIPING UNDER PRESSURE, PRIME MOVERS, MACHINERY OR POWER TRANSMITTING EQUIPMENT; OR

B.    ARISING FROM THE COLLAPSE OF OR STRUCTURAL INJURY TO ANY BUILDING OR STRUCTURE DUE TO GRADING OF LAND, EXCAVATING, BORROWING, FILLING, BACK-FILLING, TUNNELING, PILE DRIVING, COFFERDAM WORK, CAISSON WORK OR MOVING, SHORING, UNDERPINNING, RAISING OR DEMOLITION OF ANY BUILDING OR STRUCTURE, REMOVAL OR REBUILDING OF ANY OTHER PROPERTY AT ANY TIME RESULTING THEREFROM; OR

C.    TO WIRES, CONDUITS, PIPES, MAINS, SEWERS, TANKS, TUNNELS, ANY SIMILAR PROPERTY, AND ANY APPARATUS IN CONNECTION THEREWITH, BENEATH THE SURFACE OF THE GROUND OR WATER, CAUSED BY AND OCCURRING DURING THE USE OF MECHANICAL EQUIPMENT FOR THE PURPOSE OF GRADING LAND, PAVING, EXCAVATING, DRILLING, BORROWING, FILLING, BACK-FILLING, OR PILE DRIVING, OR "PROPERTY DAMAGE" TO ANY OTHER PROPERTY AT ANY TIME RESULTING THEREFROM;

THIS POLICY IS LIMITED TO THE COVERAGE PROVIDED BY THE "UNDERLYING INSURANCE". IF COVERAGE IS NOT PROVIDED BY THE "UNDERLYING INSURANCE", COVERAGE IS EXCLUDED BY THIS POLICY.

---

AUTHORIZED REPRESENTATIVE

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

<u>CONTRACTORS ENDORSEMENT</u>
<u>(INCLUDING BROAD FORM "PROPERTY DAMAGE")</u>

I.   THIS POLICY DOES NOT APPLY TO "BODILY INJURY", "PROPERTY DAMAGE", "PERSONAL INJURY", OR "ADVERTISING INJURY" ARISING OUT OF:

    A.   THE CONDUCT OF ANY CURRENT OR PAST PARTNERSHIPS OR JOINT VENTURES OF WHICH THE "INSURED" IS A MEMBER AND WHICH IS NOT DESIGNATED IN THIS POLICY AS A "NAMED INSURED";

    B.   ANY PROJECT INSURED UNDER A WRAP-UP RATING PLAN; OR

    C.   THE RENDERING, OR FAILURE TO RENDER, ARCHITECTURAL, ENGINEERING OR LAND SURVEY PROFESSIONAL SERVICES BY OR FOR YOU, INCLUDING:

        1.   THE PREPARING, APPROVING, OR FAILURE TO PREPARE OR APPROVE MAPS, DRAWINGS, OPINIONS, REPORTS, SURVEYS, CHANGE ORDERS, DESIGNS OR SPECIFICATIONS; AND

        2.   SUPERVISORY, INSPECTION, OR ENGINEERING SERVICES.

II.   EXCLUSION D. IS AMENDED TO READ:

    D.   "PROPERTY DAMAGE" TO

        1.   ANY PROPERTY OWNED BY THE "INSURED";

        2.   PERSONAL PROPERTY IN THE CARE, CUSTODY AND CONTROL OF THE "INSURED";

        3.   THAT PARTICULAR PART OF REAL PROPERTY ON WHICH THE "INSURED" OR ANY CONTRACTORS OR SUBCONTRACTORS WORKING DIRECTLY OR INDIRECTLY  ON THE "INSURED'S" BEHALF ARE PERFORMING "YOUR WORK", IF THE "PROPERTY DAMAGE" ARISES OUT OF "YOUR WORK".

PUBLIC 172

## KNOWN INJURY OR DAMAGE ENDORSEMENT

THIS INSURANCE APPLIES TO "BODILY INJURY", "PROPERTY DAMAGE", "PERSONAL INJURY" OR "ADVERTISING INJURY" ONLY IF, PRIOR TO THE POLICY PERIOD, NO "NAMED INSURED" OR "INSURED" INCLUDED IN INSURING AGREEMENT III, OR ANYONE AUTHORIZED TO GIVE OR RECEIVE NOTICE OF AN "OCCURRENCE", "CLAIM" OR "SUIT", KNEW THAT THE "BODILY INJURY", "PROPERTY DAMAGE", "PERSONAL INJURY" OR "ADVERTISING INJURY" HAD OCCURRED, IN WHOLE OR IN PART. IF SUCH "NAMED INSURED", "INSURED" OR AUTHORIZED PERSON KNEW, PRIOR TO THE POLICY PERIOD, THAT THE "BODILY INJURY", "PROPERTY DAMAGE", "PERSONAL INJURY" OR "ADVERTISING INJURY" OCCURRED, THEN ANY CONTINUATION, CHANGE OR RESUMPTION OF SUCH "BODILY INJURY", "PROPERTY DAMAGE", "PERSONAL INJURY" OR "ADVERTISING INJURY" DURING OR AFTER THE POLICY PERIOD WILL BE DEEMED TO HAVE BEEN KNOWN PRIOR TO THE POLICY PERIOD.

"BODILY INJURY", "PROPERTY DAMAGE", "PERSONAL INJURY" OR "ADVERTISING INJURY" WHICH OCCURS DURING THE POLICY PERIOD AND WAS NOT, PRIOR TO THE POLICY PERIOD, KNOWN TO HAVE OCCURRED BY ANY "NAMED INSURED", "INSURED" OR ANY PERSON AUTHORIZED TO GIVE OR RECEIVE NOTICE OF AN "OCCURRENCE", "CLAIM" OR "SUIT" INCLUDES ANY CONTINUATION, CHANGE OR RESUMPTION OF THAT "BODILY INJURY", "PROPERTY DAMAGE", "PERSONAL INJURY" OR "ADVERTISING INJURY" AFTER THE END OF THE POLICY PERIOD.

"BODILY INJURY", "PROPERTY DAMAGE", "PERSONAL INJURY" OR "ADVERTISING INJURY" WILL BE DEEMED TO HAVE BEEN KNOWN TO HAVE OCCURRED AT THE EARLIEST TIME WHEN ANY "NAMED INSURED", "INSURED" OR ANYONE AUTHORIZED TO GIVE OR RECEIVE NOTICE OF AN "OCCURRENCE", "CLAIM" OR "SUIT":

(1)    REPORTS ALL, OR ANY PART, OF THE "BODILY INJURY", "PROPERTY DAMAGE", "PERSONAL INJURY" OR "ADVERTISING INJURY" TO THE COMPANY OR ANY OTHER INSURER;

(2)    RECEIVES A WRITTEN OR VERBAL DEMAND OR CLAIM FOR DAMAGES BECAUSE OF THE "BODILY INJURY", "PROPERTY DAMAGE", "PERSONAL INJURY" OR "ADVERTISING INJURY"; OR

(3)    BECOMES AWARE BY ANY OTHER MEANS THAT "BODILY INJURY", "PROPERTY DAMAGE", "PERSONAL INJURY" OR "ADVERTISING INJURY" HAS OCCURRED OR HAS BEGUN TO OCCUR.

_____
AUTHORIZED REPRESENTATIVE

M55 (12-99)

SERVICE OF SUIT ENDORSEMENT

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

Information about service of "suits" upon us is given below. Service of process of "suits" against us may be made upon the following person, or another person we may designate:

> Joy Bernstein, Assistant General Counsel, Business Litigation
> ACE USA Companies
> Two Liberty Place - TL21K
> 1601 Chestnut Street
> Philadelphia, PA 19103

The person named above is authorized and directed to accept service of process on our behalf in any action, "suit" or proceeding instituted against us. If you request, we will give you a written promise that a general appearance will be entered on our behalf if a "suit" is brought.

If you request, we will submit to the jurisdiction of any court of competent jurisdiction. We will accept the final decision of that court or any Appellate Court in the event of an appeal.

The law of some jurisdictions of the United States of America require that the Superintendent, Commissioner or Director of Insurance (or their successor in office) be designated as our agent for service of process. In these jurisdictions, we designate the Director of Insurance as our true and lawful attorney upon whom service of process on our behalf may be made. We also authorize the Director of Insurance to mail process received on our behalf to the company person named above.

If you are a resident of Canada, you may also serve "suit" upon us by serving the government official designated by the law of your province.

NOTHING HEREIN CONTAINED SHALL BE HELD TO VARY, ALTER, WAIVE OR EXTEND ANY OF THE TERMS, CONDITIONS, OR LIMITATIONS OF THE POLICY TO WHICH THIS ENDORSEMENT IS ATTACHED OTHER THAN AS ABOVE STATED.

_____
Authorized Representative

M58 (04-02)

WSLIC  174

## FUNGI OR BACTERIA EXCLUSION

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

The endorsement modifies insurance provided under the following:

### COMMERCIAL UMBRELLA LIABILITY POLICY

This insurance does not apply to any injury, damage, expense, cost, liability or legal obligation arising out of or in any way related to:

The actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" regardless of whether any other cause, event, material or product contributed concurrently or in any sequence of such injury, damage, expense, cost, loss, liability or legal obligation.

"Fungi" means any type or form of fungus, mold, mildew, mycotoxins, spores, or scents or by-products produced or released by "fungi", but does not include any "fungi" intended by the "insured" for human consumption.

---
Authorized Representative

E113 (04-02)

WSLIC 175

## POLICYHOLDER DISCLOSURE NOTICE
## OF TERRORISM INSURANCE COVERAGE

| Named Insured<br>MILLER & SOLOMON GENERAL CONTRACTORS, INC. | | | Endorsement Number |
|---|---|---|---|
| Policy Symbol<br>CUW | Policy Number<br>774178 | Policy Period<br>12/31/2003 to 03/01/2005 | Effective Date of Endorsement |
| Issued By (Name of Insurance Company)<br>WESTCHESTER SURPLUS LINES INSURANCE COMPANY | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

You should be aware that under the Terrorism Risk Insurance Act of 2002 ("The Act") effective November 26, 2002, any losses caused by certified acts of terrorism under your existing coverage may be partially reimbursed by the United States under a formula established by federal law (applicability is subject to the terms and conditions of each individual policy). The Act was specifically designed to address the ability of businesses and individuals to obtain property and casualty insurance for terrorism and to protect consumers by addressing market disruptions and ensure the continued availability of terrorism coverage.

Under the terms of The Act, you may now have the right to purchase insurance coverage for losses arising out of acts of terrorism, as defined in Section 102(1) of the Act: The term "act of terrorism" means any act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State, and the Attorney General of the United States-to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property, or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of an air carrier or vessel or the premises of a United States mission; and to have been committed by an individual or individuals acting on behalf of any foreign person or foreign interest, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

Responsibility for Compensation under The Act is shared between insurance companies covered by The Act and the United States. Under the formula set forth in The Act, the United States pays 90% of covered terrorism losses exceeding the statutorily established deductible, which is paid by the insurance company providing the coverage.

We are providing you with the terrorism coverage required by The Act. The premium for the coverage is set forth below.

Terrorism Risk Insurance Act premium: $

_____

Authorized Agent

TRIA11 (1/03)

WSLIC 176

# LIMITED EXCLUSION OF CERTIFIED ACTS OF TERRORISM

| Name Insured | | | Endorsement Number |
|---|---|---|---|
| Policy Symbol CUW | Policy Number 774178 | Policy Period            TO | Effective Date of Endorsement |

Issued by   (Name of Insurance Company)

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

## THIS ENDORSEMENT CHANGES YOUR POLICY. PLEASE READ IT CAREFULLY.

A. Any other provision of this Policy notwithstanding, we will not pay any portion of a loss resulting from or arising out of a Certified Act of Terrorism for which we are not responsible under the terms of TRIA (including subsequent action of Congress pursuant to TRIA) because the aggregate insured losses of all insurers resulting from or arising out of Certified Acts of Terrorism during the applicable period provided in TRIA exceed $100 billion (or such other amount as Congress may specify pursuant to TRIA).

B. Regardless of whether the terms of any exclusion or limitation of coverage pursuant to this Endorsement applies to a particular Act of Terrorism, coverage of such Act of Terrorism under this Policy or Coverage Part is subject to all other terms, conditions, exclusions and coverage limitations under the Policy or Coverage Part, including, but not limited to, the Nuclear, Biological and Chemical Exclusion Endorsements in the policy.

C. As used in this Endorsement:

"Act of Terrorism" means either a Certified Act of Terrorism or a Non-Certified Act of Terrorism.

"Certified Act of Terrorism" means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an "act of terrorism" pursuant to TRIA. TRIA includes the following criteria for a Certified Act of Terrorism:

1. The act resulted in aggregate property and casualty insurance losses in excess of $5 million; and

2. The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals acting on behalf of any foreign person or foreign interest, as part of an effort to coerce the civilian population of the United

"TRIA" means the federal Terrorism Risk Insurance Act of 2002.

States or to influence the policy or affect the conduct of the United States Government by coercion.

"Non-Certified Act of Terrorism" means an activity (other than a Certified Act of Terrorism), whether or not committed in concert with or on behalf of any organization or government, that:

1. Involves any violent act or any act dangerous to human life or tangible or intangible property, and that causes damage to property or injury to persons or causes a threat thereof; and

2. Appears to be intended, in whole or in part, to:

a. Intimidate or coerce a civilian population; or

b. Disrupt any segment of a nation's economy; or

c. Influence the policy of a government by intimidation or coercion; or

d. Affect the conduct of a government by mass destruction, assassination, kidnapping or hostage-taking; or

e. Respond to governmental action or policy.

"Property and casualty insurance" means the commercial lines of property and casualty insurance that are included in the definition of "property and casualty insurance" set forth in TRIA.

_____

Authorized Representative

WSLIC 177

# EXCLUSION OF PUNITIVE DAMAGES RELATED TO A CERTIFIED ACT OF TERRORISM

| Name Insured | | | | Endorsement Number |
|---|---|---|---|---|
| Policy Symbol CUW | Policy Number 774178 | Policy Period | TO | Effective Date of Endorsement |

Issued by   (Name of Insurance Company)

Insert the policy number.  The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

## THIS ENDORSEMENT CHANGES YOUR POLICY. PLEASE READ IT CAREFULLY.

A. The following exclusion is added:

This insurance does not apply to:

**TERRORISM PUNITIVE DAMAGES**

Any other provision of this policy notwithstanding, this insurance does not cover damages that, directly or indirectly, result from or arise out of a "Certified Act of Terrorism," which are awarded as punitive damages.

B. The following definition is added:

"Certified Act of Terrorism" means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an "act of terrorism" pursuant to TRIA.  TRIA includes the following criteria for a Certified Act of Terrorism:

1. The act resulted in aggregate "property and casualty insurance" losses in excess of $5 million; and

2. The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals acting on behalf of any foreign person or foreign interest, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

"Property and casualty insurance" means the commercial lines of property and casualty insurance that are included in the definition of "property and casualty insurance" set forth in TRIA.

"TRIA" means the federal Terrorism Risk Insurance Act of 2002.

_____
Authorized Representative

ALL-14151 (05/03)          Includes copyrighted material of Insurance Services Office, Inc., with its permission     Page 1 of 1

WSLTC 178

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

RESIDENTIAL CONSTRUCTION EXCLUSION

THIS INSURANCE DOE NOT APPLY TO ANY "BI" OR "PD" ARISING OUT OF OR IN ANY WAY CONNECTED TO:

(1) "YOUR WORK", WHETHER ONGOING OR COMPLETED; OR

(2) "YOUR PRODUCT";

AS RESPECTS ANY WORK PERFORMED IN CONNECTION WITH THE CONSTRUCTION, RECONSTRUCTION OR REMODELING OF ANY "RESIDENTIAL BUILDING".

FOR THE PURPOSES OF THIS ENDORSEMENT, "RESIDENTIAL BUILDING" MEANS ANY SINGLE OR MULTI-FAMILY HOME, DUPLEX RESIDENTIAL BUILDING, RESIDENTIAL CONDOMINIUM, TOWNHOUSE, TIMESHARE, COOPERATIVE DWELLING OR OTHER RESIDENTIAL STRUCTURE, INCLUDING BUT NOT LIMITED TO INDIVIDUAL, COMMON OR COOPERATIVE AREAS.

THIS EXCLUSION DOES NOT APPLY TO:

(1) APARTMENT BUILDINGS THAT ARE BUILT FOR USE AS RENTAL UNITS. HOWEVER, THIS EXCEPTION CEASES TO APPLY WHEN SUCH RENTAL UNITS ARE CONVERTED TO CONDOMINIUM OR COOPERATIVE DWELLINGS IF (A) THE BUILDING IS UNDER 6 STORIES OR (B) THE BUILDING 6 STORIES OR OVER AND IS NOT OF CONCRETE CONSTRUCTION.

(2) RESIDENTIAL CONDOMINIUMS, COOPERATIVE DWELLINGS OR OTHER RESIDENTIAL STRUCTURES THAT ARE BOTH (A) MORE THAN 6 STORIES AND (B) ARE OF CONCRETE CONSTRUCTION.

UM06193 (12/03)

_____
AUTHORIZED REPRESENTATIVE

WSLIC 179

**Commercial Umbrella Policy**



WSLIC 181

# COMMERCIAL UMBRELLA POLICY

## INTRODUCTION

...us provisions in this policy restrict coverage. Read ...entire policy carefully to determine rights, duties ...what is and is not covered.

...ughout this policy, the words "you", "your" and ...ned Insured" refer to any person or organization ...lified ..as a "Named Insured" under INSURING ...EEMENT III, the words "Insured" or "Insureds" refer ...ty person or organization qualifying as an "Insured" ...ur INSURING AGREEMENT III and the words ...", "us", "our" and "Company" refer to the COMPANY ...d in Item 3 of the Declarations as providing this ...rance.

...er words and phrases that appear in initial capital ...rs and quotation marks have special meanings. ...r to INSURING AGREEMENT IV and other provi- ...s... his policy for such meanings.

...onsideration of the payment of premium and in ...nce upon the statements in the Declarations and ...ect to the limits of insurance set forth in INSUR- ... AGREEMENT V (the "Limits of Insurance"), the ...LUSIONS, the CONDITIONS and the other terms ...his policy, the Company agrees with the "Named ...red" to provide coverage, as follows:

## INSURING AGREEMENTS

### COVERAGE

We will pay on behalf of the "Insured" those sums in excess of the "Retained Limit" which the "Insured" by reason of liability imposed by law, or assumed by the "Insured" under contract prior to the "Occur- rence", shall become legally obligated to pay as damages for:

  ) "Bodily Injury";

  (b) "Property Damage";

  (c) "Personal Injury"; or

  (d) "Advertising Injury";

arising out of an "Occurrence" during the POLICY PERIOD stated in Item 2 of the Declarations (the "Policy Period").

The amount we pay for damages is limited. as described in INSURING AGREEMENT V

If we are prevented by law or statute to "pay on behalf of the Insured", we will, in accordance with (1) & (2) above, indemnify, the "Insured" for those sums in excess of the "Retained Limit".

## DEFENSE SETTLEMENT

We shall have the right and duty to defend any "Claim" or "Suit" seeking damages covered by the terms and conditions of this policy when:

  (a) the applicable limits of insurance of the un- derlying insurance policies set forth in Schedule A and to be maintained by you in accordance with Condition M of this policy (the "Underlying Insurance"), plus the applicable limits of other insurance have been exhausted by payments; or

  (b) Damages are sought for "Bodily Injury", "Property Damage", "Personal Injury", or "Adver- tising Injury" which are not covered by "Under- lying Insurance" or other insurance.

(2) When we assume the defense of any "Claim" or "Suit", at our sole discretion we may investigate, negotiate and settle any "Occurrence", "Claim", "Suit" or trial. We will pay our expenses in addition to the applicable "Limits of Insurance" under this policy, subject to the provisions of subparagraph (5) below.

(3) We also have the following obligations, but only to the extent that they are not included in "Underlying Insurance" or other insurance:

  (a) We will pay the premium for any bond required by law to release attachments for amounts not exceeding the applicable "Limits of Insurance"; but we are not obligated to apply for or furnish any such bond.

  (b) We will pay the premium for all appeal bonds required by law to appeal any "Claim" or "Suit" we defend; but we are not obligated to apply for or furnish any such bond.

  (c) We will pay all costs taxed against the "Insured" in any "Claim" or "Suit" we defend.

  (d) We will pay all pre-judgment interest against the "Insured" attributable to that part of any judgment which we become obligated to pay; but our duty to pay such interest ends when we have offered to pay or deposited in court, the part of the judgment which we become obligated to pay and which is within the applicable "Limits of Insurance."

  (e) We will pay all post-judgment interest against the "Insured" attributable to that part of any judg- ment which we become obligated to pay; but our duty to pay such interest ends when we have paid, or offered to pay or deposited in court, the part of the judgment which we become obligated to pay and which is within the applicable "Limits of Insurance".

  (f) We will reimburse the "Insured" for expenses that are incurred at our request.

(4) We will not be obligated to investigate, negotiate, settle or defend any "Claim", "Suit" or trial brought

against, or applicable to, any "Insured" ( . . n.

(a) Insurance is available to or collectible by the "Insured" under any "Underlying Insurance" or other Insurance;

(b) the "Underlying Insurance" is not available or collectible because of the bankruptcy, insolvency or inability or failure to comply with any of its policy obligations of the underlying insurer(s) providing such "Underlying Insurance"; or

(c) the "Underlying Insurance" is not available or collectible because you did not maintain or meet the requirements of such Insurance as warranted by, or you otherwise violated the provisions of, Condition M of this policy.

However, we will, at our sole discretion, have the right and opportunity to associate and participate with you or any provider of "Underlying Insurance" or other Insurance in the investigation, negotiation, settlement, defense or trial of any "Claim" or "Suit" reasonably likely to involve us under this policy. If we exercise such right, we will do so at our own expense.

Notwithstanding the foregoing, our right and duty to defend under this INSURING AGREEMENT II ends when the applicable "Limits of Insurance", as stated in Item 4(a), 4(b), 4(c) or 4(d) of the Declarations, has been exhausted by our payments.

If we are prevented by law or statute from complying with INSURING AGREEMENT II of this policy, we will reimburse the "Insured" for any expense incurred with our prior written consent.

## NAMED INSURED AND INSURED

The term "Named Insured" as used herein means any individual or organization stated in Item 1 of the Declarations as a NAMED INSURED and:

(a) if you are an organization other than a partnership or joint venture, any of your subsidiary companies or any company over which you exercise control and actively manage;

(b) if you are an individual, your spouse, but only with respect to the conduct of the business of which you are sole owner; or

(c) if you are a partnership or a joint venture, your partners or members and their spouses, but only with respect to their conduct of your business.

The term "Insured" as used herein means the "Named Insured" and:

(a) any person, organization, trustee or estate that has obligated you by written contract to provide the insurance that is afforded by this policy, but only with respect to liability arising out of "Your Work", "Your Product" and to property owned or used by you;

(b) at your option and subject to the terms of this

policy, any person, organization, trustee, or estate (other than the "Named Insured") included as an additional Insured in the "Underlying Insurance", but only with respect to liability arising out of "Your Work", "Your Product", or property owned or used by you;

(c) your executive officers, directors and stockholders, but only within the scope of their duties as such;

(d) at your option and subject to the terms of this policy, any of your employees while within the scope of their employment by you, except for:

(i) "Bodily Injury" or "Property Damage" arising out of the use of an "Automobile", other than one owned by, loaned to, or hired by you;

(ii) "Bodily Injury" or "Personal Injury" to you or your co-employee while in the course of his or her employment, or the spouse, child, parent, brother or sister of that co-employee as a consequence of such "Bodily Injury" or "Personal Injury" or for any obligation to share damages with or repay someone else who must pay damages because of the injury.

(e) any person who has your permission to use an "Automobile" owned by, loaned to you, or hired for use by you, and any person or organization legally responsible for the use of that "Automobile"; or

(f) any person (other than your employee) or any organization while acting as manager of your real estate.

## IV. DEFINITIONS

A. "Advertising Injury" means injury that arises out of your advertising activities as a result of:

(1) oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

(2) oral or written publication of material that violates a person's right of privacy;

(3) misappropriation of advertising ideas or style of doing business; or

(4) infringement of copyright, title or slogan.

B. "Automobile" means a land motor vehicle, trailer or semi-trailer designed for travel on public roads, including any attached machinery or equipment. "Automobile" does not include "Mobile Equipment" but does include self-propelled vehicles with the following types of permanently attached equipment:

(1) Equipment designed primarily for:

(a) snow removal;

(b) road maintenance, but not construction or

WSLIC 183

resurfacing; or

(c) street cleaning;

(2) cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

(3) air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

>. "Bodily Injury" means bodily injury, sickness, disease, disability, shock, mental anguish, mental injury and humiliation, including resulting death.

>. "Claim" means any demand upon the "insured" for monetary compensation, whether formal or informal, written or oral, including, without limitation, the service of "Suit" papers or arbitration proceedings against the "insured" for monetary compensation alleging liability of the "insured" as a result of an "Occurrence" which may or may not be covered by the policy. The term "Claim" does not include reports of accidents, or "Occurrences", or any acts, errors, offenses or omissions which may give rise to a "Claim" under this policy.

"Impaired Property" means tangible property, other than "Your Product", or "Your Work", that

(1) cannot be used or is less useful because:

(a) it incorporates "Your Product" or "Your Work" that is known or thought to be defective, deficient, inadequate, or dangerous; or

(b) you have failed to fulfill the terms of a contract or agreement; and

(2) can be restored to use by:

(a) the repair, replacement, adjustment, or removal of "Your Product" or "Your Work"; or

(b) your fulfillment of the terms of such contract or agreement.

F. "Mobile Equipment" means any of the following types of land vehicles, including any attached machinery or equipment, but does not include any vehicle defined as an "Automobile":

(1) bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

(2) vehicles maintained for use solely on or next to premises you own or rent;

(3) vehicles that travel on crawler treads;

(4) vehicles, whether self-propelled or not, maintained p. .t. to provide mobility to permanently mounted:

(a) power cranes, shovels, loaders, diggers or drills; or

(b) road construction or resurfacing equipment, such as graders, scrapers or rollers;

(5) Vehicles not described in subparagraph (1), (2), (3) or (4) above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

(a) air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

(b) cherry pickers and similar devices used to raise or lower workers;

(6) Vehicles not described in subparagraph (1), (2), (3) or (4) above maintained primarily for purposes other than the transportation of persons or cargo.

G. "Occurrence" means:

(1) An accident, including continuous or repeated exposure to substantially the same general harmful conditions, that results in "Bodily Injury" or "Property Damage" that is not expected or not intended by the "Insured".

All damages that arise from continuous or repeated exposure to substantially the same general conditions are considered to arise from one "Occurrence".

(2) An offense that results in "Personal Injury".

All damages that arise from exposure to the same act, publication or general conditions are considered to arise from one "Occurrence".

(3) An act that results in "Advertising Injury".

All damages that arise from exposure to the same publication, misappropriation, infringement, harmful material or act are considered to arise from one "Occurrence" regardless of:

(a) the frequency of repetition;

(b) the number, kind or type of media used; or

(c) the number of claimants.

H. "Personal Injury" means injury, other than "Bodily Injury" and "Advertising Injury" arising out of the following offenses:

(1) false arrest, detention or imprisonment;

(2) malicious prosecution;

WSLIC 184

(3) wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, if done by or on behalf of its owner, landlord or lessor;

(4) oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

(5) oral or written publication of material that violates a person's right of privacy; or

(6) discrimination.

"Products — Completed Operations Hazard" means:

(1) All "Bodily Injury" and "Property Damage" occurring away from premises you own or rent and arising out of "Your Product" or "Your Work" except:

(a) products that are still in your physical possession; or

(b) work that has not yet been completed or abandoned.

(2) "Your Work" will be deemed completed at the earliest of the following times:

(a) when all of the work called for in your contract or agreement has been completed;

(b) when all of the work to be done at the site has been completed, if your contract or agreement calls for work at more than one site; or

(c) when that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

For purposes of subparagraphs (1) and (2) above, work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

(3) "Products/Completed Operations Hazard" does not include "Bodily Injury" or "Property Damage" arising out of:

(a) the transportation of property, unless the injury or damage arises out of a condition in or on a vehicle created by the loading or unloading (as defined in subparagraph (4) below) of it; or

(b) the existence of tools, uninstalled equipment or abandoned or unused materials.

"Property Damage" means:

(1) physical injury to tangible property, including all resulting loss of use of that property (all such loss of use shall be deemed to occur at the time of the physical injury that caused it); or

(2) loss of use of tangible property that is not

physically injured, all such loss being deemed to occur at the time of the "Occurrence" that caused it).

K.  "Retained Limit" means whichever of the following is applicable:

(1) with respect to any "Occurrence" that is covered by "Underlying Insurance" or any other insurance, the total of the applicable limits of the "Underlying Insurance" plus the applicable limits of any other insurance; or

(2) with respect to any "Occurrence" that is not covered by "Underlying Insurance" or any other insurance, the amount of the Self-insured Retention stated in Item 4(e) of the Declarations (the "Self-insured Retention").

L.  "Suit" means a civil proceeding in which damages, because of "Bodily Injury", "Property Damage", "Personal Injury" or "Advertising Injury" to which this insurance applies, are alleged. "Suit" includes:

(1) an arbitration proceeding in which such damages are claimed and to which you must submit or do submit with our consent;

(2) any other alternative dispute resolution proceeding in which such damages are claimed and to which you submit with our consent; or

(3) an appeal of a civil proceeding.

M.  "Underlying Insurance" means the policies listed in Schedule A — Schedule of Underlying Insurance and any other policies purchased or issued for any newly acquired or formed organization not more restrictive than the terms, conditions, endorsements, and limits of liability of the policies listed in Schedule A and to be maintained by you in accordance with Condition M of this policy.

N.  "Your Product" means:

(1) any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

(a) you;

(b) others trading under your name; or

(c) a person or organization whose business or assets you have acquired; and

(2) containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

"Your Product" includes warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of items described in subparagraph (1) or (2) above and the

WSL IC 185

providing of or failure to pr̶ ̶e̶-̶ ̶·̶ ̶rnings or instructions.

Your Product" does not include vending machines or other property rented to or located for the use of others, but not sold.

"Your Work" means:

(1) work or operations performed by you or on your behalf; and

(2) materials, parts or equipment furnished in connection with such work or operations.

"Your Work" includes warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of items described in subparagraph (1) or (2) above and the providing of or failure to provide warnings or instructions.

## LIMITS OF INSURANCE

The "Limits of Insurance" shown in the Declarations and the rules below fix the most we will pay, regard-s of the number of:

(1) "Insureds";

(2) "Claims" made or "Suits" brought; or

(3) persons or organizations making "Claims" or bringing "Suits".

If there is a limit stated in Item 4(b) of the Declarations for the General Aggregate Limit (Other than Products/Completed Operations), that amount is he most we will pay for all damages under INSURING AGREEMENT I, except for: (1) injury and damage included in the "Products/Completed Operations Hazard" and (2) coverages included in the "Underlying Insurance" to which no underlying aggregate limit applies.

If there is a limit stated in Item 4(c) of the Declarations for the Products/Completed Operations Aggregate mit, that amount is the most we will pay under SURING AGREEMENT I for damages because of injury and damage included in the "Products/Completed Operations Hazard".

If there is a limit stated in Item 4(d) of the Declarations for Combined Aggregate Limit, that amount is the most we will pay under INSURING AGREEMENT I for all damages, except damages because of ownership or use of an "Automobile".

Subject to paragraphs B, C and D above, the Each Occurrence Limit stated in Item 4(a) of the Declarations is the most we will pay for damages for "Bodily Injury", "Personal Injury", "Property Damage" and "Advertising Injury" arising out of any one "Occurrence".

If the applicable limits of insurance of the "Underlying Insurance" or of other insurance are reduced or exhausted by payments from one or more "Occurrences" happening during the "Policy Period" of

this policy, r̶ ̶·̶ ̶"̶ ̶its of Insurance" of this policy will apply in ̶u̶i̶c̶e̶_̶,̶ ̶of such reduced or exhausted limits.

G. The "Limits of Insurance" of this policy apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period, unless the policy period is extended after issuance of this policy for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding policy period for purposes of determining the "Limits of Insurance".

## VI. SELF-INSURED RETENTION

You will pay up to the amount of the Self Insured Retention, as stated in Item 4(e) of the Declarations, for any "Claims" or "Suits" covered by this policy and to which no "Underlying Insurance" or other insurance applies.

## VII. TERRITORY

This policy applies to "Occurrences" that happen any-where.

# EXCLUSIONS

This policy does not apply to:

A. "Bodily Injury" or "Property Damage" expected or intended from the standpoint of the "Insured".

This Exclusion A does not apply to "Bodily Injury" resulting from the use of reasonable force to protect persons or property.

B. Any obligation for which the "Insured" or any of its insurers may be held liable under any workers compensation, unemployment compensation, disability benefits or similar laws.

C. "Bodily Injury" or "Personal Injury" that:

(1) arises on the basis of race, creed, color, sex, age, national origin; or

(2) results in, or arises from, termination of employment.

D. "Property Damage" to any property owned by the "Insured".

E. "Property Damage" to "Your Product", arising out of it or any part of it.

F. "Property Damage" to "Your Work" arising out of it or any part of it and included in the "Products/Completed Operations Hazard".

This Exclusion F does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

G. "Property Damage" to "Impaired Property" or property that has not been physically injured arising out of:

WSLIC 186

(1) a defect, deficiency, inadequacy, or danger-ous condition in "Your Product" or "Your Work"; or

(2) a delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This Exclusion G does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "Your Product" or "Your Work" after it has been put to its intended use.

I. Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, with-drawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

(1) "Your Product";

(2) "Your Work"; or

(3) "Impaired Property";

if such product, work, or property is withdrawn or called from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy, or dangerous con-dition in it.

"Advertising Injury" that results from:

(1) the failure to meet the requirements of a written contract or agreement;

(2) infringement on a registered trademark, service mark, or trade name by using such for goods or services sold, offered for sale, or adver-tised (other than such use of titles or slogans):

(3) incorrect description of any article or com-modity; or

(4) a mistake in an advertised price.

J. (1) "Bodily Injury" or "Property Damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants (as defined below):

(a) that are, or that are contained, in any prop-erty that is:

(i) being moved from the place where such property or pollutants are accepted by the "Insured" for movement into or onto an "Automobile";

(ii) being transported or towed by the "Automobile";

(iii) otherwise in the course of transit by the "Insured";

(iv) being stored, disposed of, treated or processed in or upon the "Automobile"; or

(v) being moved from the "Automobile" to the place where such property or pollutants

are finally treated, disposed of or aban-doned by the "Insured"

(b) at or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any "Insured";

(c) at or from any premises, site or location which is or was at any time used by or for any "Insured" or others for the handling, storage, disposal, processing or treatment of waste (as defined below);

(d) which are or were at any time transported, handled, stored, treated, disposed of, or pro-cessed as waste by or for any "Insured" or any person or organization for whom any "Insured" may be legally responsible; or

(e) at or from any premises, site or location on which any "Insured" or any contractors or sub-contractors working directly or indirectly on any "Insured's" behalf are performing operations:

(i) if the pollutants are brought on or to the premises, site or location in connection with such operations by such "Insured", con-tractor or subcontractor; or

(ii) if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants.

(2) Any request, demand, order, "Claim", or "Suit" by the "Insured", a governmental authority, or others for payment under this policy for any loss, cost, or expense to test, monitor, clean-up, remove, contain, treat, detoxify, or neutralize, or any way respond to, or assess the effects of pollutants. To the extent that any of the above is determined to be "Bodily Injury" or "Property Damage", said "Bodily Injury" or "Property Damage" is also excluded.

For purposes of this Exclusion J, the term "pol-lutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including with-out limitation, smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste and the term "waste" includes materials to be recycled, reconditioned or reclaimed.

Subparagraphs (1)(a)(iv) and (1)(b) through (1)(e) of this Exclusion J do not apply to fuels, lubri-cants, fluids, exhaust gases or other similar pollu-tants that are needed for or result from the normal electrical, hydraulic or mechanical functioning of an "Automobile" or its parts if the pollutants escape or are discharged, dispersed or released directly from an "Automobile" part designed by its manufacturer to hold, store, receive or dispose of such pollutants.

WSLIC 187

Subparagraphs (1) (b) throu (( e) of this Exclusion J do not apply to pollutants not in or upon an "Automobile" if:

(i) the pollutants or any property in which the pollutants are contained are upset, overturned or damages as a result of the maintenance or use of an "Automobile";

(ii) the discharge, dispersal, release or escape of the pollutants is caused directly by such upset, overturn or damage; and

(iii) the "Bodily Injury" or "Property Damage" resulting therefrom is not otherwise excluded under subparagraph (1) (a) of this Exclusion J.

Subparagraphs (1)(b) and (1) (e) of this Exclusion J do not apply to "Bodily Injury" or "Property Damage" arising out of smoke or fumes from a hostile fire. For purposes of this Exclusion J, a "hostile fire" means a fire which becomes uncontrollable or breaks out from where it was intended to be,

dily Injury" or "Property Damage" arising out of the ownership, maintenance, operation, use, loading or unloading of aircraft or entrustment to others of any aircraft, except aircraft chartered with crew.

"Bodily Injury", "Personal Injury" or "Property Damage" that results from, or any condition that is incidental to, any of the following: (a) war, whether or not declared; (b) civil war; (c) insurrection; (d) rebellion; (e) revolution; or (f) warlike operations.

# CONDITIONS

. Premium Computation. The rate, rating basis, and stimated units of exposure for the "Policy Period" will e stated in Item 6 of the Declarations. We will compute e premium for this policy by applying the rate to each n exposure of the rating basis. The estimated units f posure will be used to determine the advance remium. The actual units of exposure will be used to ompute the earned premium.

hen this policy expires or if it is cancelled, we will ompute the earned premium. If the earned premium is ore than the advance premium, you will pay us the dditional premium immediately. If the earned premium less than the advance premium, we will return the xcess premium to you. Regardless of the earned prenium, the annual minimum premium stated in Item 6 of he Declarations will apply for each 12 months of the olicy Period.

. Inspections and Surveys. We have the right, but are ot obligated, to:

(1) make inspections and surveys at any time;

(2) give you reports on the conditions we find; and

(3) recommend changes.

Any inspections reports or recommendations relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And, we do not warrant that conditions are safe or healthful or comply with laws, regulations, codes or standards.

This Condition B applies not only to us, but also to any rating, advisory, rate service or similar organization that makes insurance inspections, surveys, reports or recommendations.

C. Examination of Your Books and Records. We may examine and audit your books and records as they relate to this policy at any time during the Policy Period and for up to three years afterward.

D. Separation of Insureds. Except with respect to the "Limits of Insurance" and any rights or duties specifically assigned in this policy to the first NAMED INSURED stated in Item 1 of the Declarations (the "First Named Insured"), this insurance applies:

(1) as if each "Named Insured" were the only "Named Insured"; and

(2) separately to each "Insured" against whom a "Claim" is made or "Suit" is brought.

E. Duties in the Event of "Occurrence", "Claim" or "Suit".

(1) You must notify us of any "Occurrence" which may result in a "Claim" or "Suit" under this policy. Notice shall include:

(a) how, when and where the "Occurrence" took place;

(b) the names and addresses of any injured persons and witnesses; and

(c) the nature and location of any injury or damage arising out of the "Occurrence".

(2) If a "Claim" is made or "Suit" is brought against any "Insured" that is likely to involve this policy, you must notify us, in writing, of the "Claim" or "Suit" as soon as possible.

(3) You and any other involved "Insureds" must:

(a) immediately send us copies of any demands, notices, summonses or legal papers received in connection with any "Claim" or "Suit";

(b) authorize us to obtain records and other information;

(c) cooperate with us in the investigation, settlement or defense of any "Claim" or "Suit"; and

(d) assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to any "Insured" because of injury or damage to which this insurance may also apply.

WSLIC 188

(4) No "insureds" will, except at their own cost, voluntarily make a payment, assume any obligation or incur any expense, other than for first aid, without our consent.

**F. Appeals.** If the "Insured" or any "Insured's" underlying insurer elects not to appeal a judgment that is in excess of the "Retained Limit", we may elect to do so at our own expense. In such case, we will pay all taxable costs, disbursements and interest, but we will not pay more than the applicable "Limits of Insurance" set forth in INSURING AGREEMENT V, plus taxable costs, disbursements and interest incidental to the appeal.

**G. Loss Payments.**

(1) We will have liability for any one "Occurrence" only when the amount of the "Retained Limit" with respect to such "Occurrence" has been paid by:

(a) the "Insured"

(b) us on behalf of the "Insured" (other than under this policy): or

(c) the "Insured's" underlying insurer.

(2) If we are obliged to indemnify the "Insured" for any payment of judgments or settlements, the "Insured" must make a written claim within 12 months of:

(a) actually paying any amount in excess of the "Retained Limit"; or

(b) the "Insured's" liability being made certain by:

(i) the final judgment of a trial; or

(ii) the written agreement of the "Insured", the claimant and us.

If any later payments are made by the "Insured" for the same "Occurrence", written claim for these payments must likewise be made. We will reimburse you for these payments within 30 days of confirming that they are payable by this policy.

The "Insured" will reimburse us promptly for any amount of judgments and settlements paid on behalf of the "Insured" that is within the "Self-Insured Retention".

**H. Other Insurance.** If there is any other collectible insurance available to the "Insured" (whether such insurance is stated to be primary, contributing, excess or contingent) that covers a loss that is also covered by this policy, the insurance provided by this policy will apply in excess of, and shall not contribute with, such insurance. This Condition H does not apply to any insurance policy purchased specifically (and which is so specified in such insurance policy) to apply in excess of this policy.

**I. Transfer of Rights of Recovery Against Others to Us.** If any "Insured" has rights to recover all or part of any payment we have made under this policy, those rights are transferred to us. The "Insured" must do nothing to impair those rights; the transfer thereof to us. The "Insured" will cooperate with us and, at our request, will assist in the pursuit and enforcement of those rights.

If there is any money recovered, we will disburse that money, as follows:

(1) first, we will repay any actual payment made by the "Insured" that is in excess of the "Retained Limit";

(2) second, we will be repaid to the extent of our actual payment; and

(3) third, if any money remains, the "Insured" or any underlying insurer will be repaid to the extent of their actual payment.

If any expenses are incurred to recover money, we will share the expenses with the "Insured" or any underlying insurer in proportion to the amount that each is repaid.

If our recovery attempt is not successful, we will bear all of the recovery expenses.

**J. Changes.** This policy (including the Declarations and any schedules and endorsements attached hereto) contains all the agreements between you and us concerning the insurance afforded hereby. The first "Named Insured" shown in the Declarations is authorized to make changes in the terms of this policy, with our consent. This policy's terms and conditions can be amended or waived only by endorsement issued by us and made a part of this policy.

**K. Transfer of Your Rights and Duties Under This Policy.** Your rights and duties under this policy may not be transferred without our prior written consent, except in the case of death of an individual "Named Insured".

If you die or are legally declared bankrupt, your rights and duties will be transferred to your legal representative, but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties, but only with respect to that property.

**L. Cancellation.**

(1) The first "Named Insured" may cancel this policy by mailing or delivering to us advance written notice of cancellation.

(2) We may cancel this policy by mailing or delivering to the first "Named Insured" written notice of cancellation at least:

(a) 10 days before the effective date of cancellation, if we cancel for nonpayment of premium; or

(b) 30 days before the effective date of cancellation, if we cancel for any other reason.

(3) We will mail or deliver our notice to the first "Named Insured's" last mailing address known to us.

(4) Notice of cancellation will state the effective date of cancellation and will be effective for all "insureds". The "Policy Period" will end on that date.

WSLIC 189

(5) If this policy is cancelled, w . . . ill' . nd the first "Named Insured" any premium refund ...ue. The premium refund will be pro rata. The cancellation will be effective even if we have not made or offered a refund.

(6) If notice is mailed, proof of mailing will be sufficient proof of notice.

**A. Maintenance of Underlying Insurance.** You agree:

(1) that the "Underlying Insurance" shall remain in force during the "Policy Period";

(2) that the terms, conditions and endorsements of the "Underlying Insurance" will not materially change; and

(3) that the limits of liability as warranted by Schedule A will not change, except for reduction or exhaustion in the aggregate or occurrence limits due to payments for "Occurrences" during the "Policy Period"

If you do not r . . . . 1e requirements, this insurance shall apply as if ....e ....nderlying Insurance" were available and collectible.

**N. Bankruptcy or Insolvency of Underlying Insurer.** For all purposes of this policy, if any "Underlying Insurance" is not available or collectible because of (a) the bankruptcy or insolvency of the underlying insurer(s) providing such "Underlying Insurance" or (b) the inability or failure for any other reason of such underlying insurer(s) to comply with any of the obligations of its policy, then this policy shall apply (and amounts payable hereunder shall be determined) as if such "Underlying Insurance" were available and collectible.

We have properly issued this policy, but it is not valid unless completed by the attachment of Declarations signed by our duly authorized representative.

WSLIC 190

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT

This policy does not apply:

A. To "Bodily Injury," Personal Injury" or "Property Damage":

    (1) With respect to which an insured under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Assocation, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

    (2) Resulting from the hazardous properties of nuclear material and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the insured is, or had its policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization;

B. To "Bodily Injury," "Personal Injury" or "Property Damage" or loss resulting from the hazardous properties of nuclear material, if:

    (1) The nuclear material (a) is at any nuclear facility owned by, or operated by or on behalf of, an insured or (b) has been discharged or dispersed therefrom;

    (2) The nuclear material is contained in spent fuel or waste at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an insured; or

    (3) The injury, sickness, disease, death, destruction or loss arises out of the furnishing by an insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to injury to or destruction of or loss of property at such nuclear facility.

As used in this endorsement:

"hazardous properties" include radioactive, toxic or explosive properties;

"nuclear material" means source material, special nuclear material or by product material;

"source material", "special nuclear material" and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

"spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor;

"waste" means any waste material (1) containing by-product material and (2) resulting from the operation by any person or organization of any nuclear facility included within the definition of nuclear facility under paragraph (1) and (2) thereof;

"nuclear facility" means:

    (1) Any nuclear reactor.

    (2) Any equipment or device designed or used for (a) separating the isotopes of uranium or plutonium, (b) processing or utilizing spent fuel, or (c) handling, processing or packing waste,

    (3) Any equipment or device used for processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the custody of the insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235,

    (4) Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of waste,

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

"nuclear reactor" means any apparatus designed or used to sustain nuclear fission in self-supporting chain reaction or to contain a critical mass of fissionable material.

With respect to injury to or destruction of or loss of property, the word "injury" or "destruction" or "loss" includes all forms of radioactive contamination of property.

All other terms and conditions of this policy remain unchanged.

WSLIC 191

EXHIBIT C

**EXHIBIT C**

IN THE CIRCUIT COURT OF THE
11TH JUDICIAL CIRCUIT IN AND FOR
MIAMI-DADE COUNTY, FLORIDA

GENERAL JURISDICTION DIVISION
CASE NO: 06-09739 CA 06

ALFRED AND SANDRA GELLER,

    Plaintiffs,

vs.

AVENTURA LAND HOLDING, LTD., a Florida
limited partnership; AVENTURA LAND
HOLDING (DEL), INC., a Delaware corporation;
JAMES COHEN; BRIAN STREET; RAY
NICHOLSON; MARK PAPICK;
LAWRENCE KIBLER; GRYPHON
CONSTRUCTION LLC, a Florida
limited liability corporation; CHARLES
"CHUCK" FOSSLER; MILLER &
SOLOMON GENERAL CONTRACTORS, INC.,
a Florida corporation; THERMAL CONCEPTS,
INC., a Florida corporation; CAULEY
CONSTRUCTION, INC., a Florida corporation;
SOUTHERN PAINTING, INC., a Florida
corporation; and COHEN FREEDMAN
ENCINOSA & ASSOCIATES ARCHITECTS, P.A.,
a Florida professional association, BOCA LAND
HOLDINGS, INC., a Florida corporation

    Defendants.

_____/

## SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

    Plaintiffs, Alfred and Sandra Geller (the "Gellers"), by and through undersigned counsel,

hereby file their Second Amended Complaint and Demand for Jury Trial against Defendants,

Aventura Land Holding, Ltd.; Aventura Land Holding (Del), Inc.; James Cohen; Brian Street;

Ray Nicholson; Mark Papick; Lawrence Kibler; Gryphon Construction LLC.; Charles "Chuck"

Fossler; Miller & Solomon General Contractors, Inc.; Thermal Concepts, Inc.; Cauley

12/10/07

IN THE CIRCUIT COURT OF THE
11TH JUDICIAL CIRCUIT IN AND FOR
MIAMI-DADE COUNTY, FLORIDA

GENERAL JURISDICTION DIVISION
CASE NO: 06-09739 CA 06

ALFRED AND SANDRA GELLER,

        Plaintiffs,

vs.

AVENTURA LAND HOLDING, LTD., a Florida
limited partnership; AVENTURA LAND
HOLDING (DEL), INC., a Delaware corporation;
JAMES COHEN; BRIAN STREET; RAY
NICHOLSON; MARK PAPICK;
LAWRENCE KIBLER; GRYPHON
CONSTRUCTION LLC, a Florida
limited liability corporation; CHARLES
"CHUCK" FOSSLER; MILLER &
SOLOMON GENERAL CONTRACTORS, INC.,
a Florida corporation; THERMAL CONCEPTS,
INC., a Florida corporation; CAULEY
CONSTRUCTION, INC., a Florida corporation;
SOUTHERN PAINTING, INC., a Florida
corporation; and COHEN FREEDMAN
ENCINOSA & ASSOCIATES ARCHITECTS, P.A.,
a Florida professional association, BOCA LAND
HOLDINGS, INC., a Florida corporation

        Defendants.

_____/

## SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

    Plaintiffs, Alfred and Sandra Geller (the "Gellers"), by and through undersigned counsel,

hereby file their Second Amended Complaint and Demand for Jury Trial against Defendants,

Aventura Land Holding, Ltd.; Aventura Land Holding (Del), Inc.; James Cohen; Brian Street;

Ray Nicholson; Mark Papick; Lawrence Kibler; Gryphon Construction LLC.; Charles "Chuck"

Fossler; Miller & Solomon General Contractors, Inc.; Thermal Concepts, Inc.; Cauley

12/10/07

CASE NO: 06-09739 CA 06

Construction, Inc.; Southern Painting, Inc.; Cohen Freedman Encinosa & Associates Architects P.A., and Boca Land Holdings, Inc., and allege the following:

## THE PARTIES

1.      Plaintiffs, Alfred and Sandra Geller, are the owners of certain real property in Miami-Dade County, a double penthouse condominium unit located at the Hamptons South Condominium, 20201 Country Club Drive, Aventura, Florida, 33180 (the "Hamptons South"), Unit 2806-07 (the "Unit").

2.      Defendant, Aventura Land Holding, Ltd. ("ALH"), is a Florida limited partnership licensed and doing business in Miami-Dade County, Florida.

3.      Defendant, Aventura Land Holding (Del.), Inc. ("ALH (Del.)"), is the general partner of Aventura Land Holding, Ltd. ALH (Del.) is a foreign corporation licensed and doing business in Miami-Dade County, Florida.

4.      Defendant, Brian Street ("Street"), is the President and a Shareholder of ALH (Del.) and at all times material hereto committed the tortious acts complained of herein in Miami-Dade County, Florida.

5.      Defendant, James Cohen ("Cohen"), is Vice President and a Shareholder of ALH (Del.) and at all times material hereto committed the tortious acts complained of herein in Miami-Dade County, Florida.

6.      Defendant, Ray Nicholson ("Nicholson"), is a Shareholder of ALH (Del.) and at all times material hereto committed the tortious acts complained of herein in Miami-Dade County, Florida.

2

CASE NO: 06-09739 CA 06

7.    Defendant, Mark Papick ("Papick"), is a Shareholder of ALH (Del.) and at all times material hereto committed the tortious acts complained of herein in Miami-Dade County, Florida.

8.    Defendant, Gryphon Construction LLC ("Gryphon"), is a Florida limited liability company with its principal place of business in Miami-Dade County, Florida, that conducts business in Florida.

9.    Defendant, Lawrence Kibler ("Kibler"), is President of Gryphon and at all times material hereto committed the tortious acts complained of Miami-Dade County, Florida.

10.   Defendant, Charles "Chuck" Fossler ("Fossler"), is a Vice President of Gryphon and at all times material hereto committed the tortious acts complained of in Miami-Dade County, Florida.

11.   Defendant, Miller & Solomon General Contractors, Inc. ("Miller & Solomon"), is a Florida corporation with its principal place of business in Miami-Dade County, Florida.

12.   Defendant, Thermal Concepts, Inc. ("Thermal Concepts"), is a Florida corporation and at all times material hereto committed the tortious acts complained of in Miami-Dade County, Florida.

13.   Defendant, Cauley Construction, Inc. ("Cauley"), is a Florida corporation and at all times material hereto committed the tortious acts complained of in Miami-Dade County, Florida.

14.   Defendant, Southern Painting, Inc. ("Southern Painting"), is a Florida corporation and at all times material hereto committed the tortious acts complained of in Miami-Dade County, Florida.

CASE NO: 06-09739 CA 06

15.    Defendant, Cohen Freedman Encinosa & Associates Architects P.A. ("Architect"), is a Florida professional association with its principal place of business in Miami-Dade County, Florida.

16.    Defendant, Boca Land Holdings, Inc., ("BLH"), is a Florida corporation with its principal place of business in Miami-Dade County, Florida.

### JURISDICTION AND VENUE

17.    This is an action for damages in excess of $15,000, exclusive of interest and costs.

18.    This Court has personal jurisdiction over all Defendants herein pursuant Fla. Stat. § 48.193 (2005), because Defendants operated, conducted, engaged in or carried on a business or business venture in Florida, or committed tortious and other wrongful acts within Miami-Dade County, Florida.

19.    Pursuant to Fla. Stat. §§ 47.011 and 47.021, venue is proper in this Court because the causes of action arose in Miami-Dade County, and because one or more Defendants reside in Miami-Dade County.

### FACTUAL ALLEGATIONS

20.    The Hamptons South is a 28-story luxury condominium building located in the heart of Aventura, Florida.

21.    The Hamptons South was developed and built by ALH, whose shareholders are Brian Street, James Cohen, Ray Nicholson, and Mark Papick. ALH is affiliated by common ownership to Boca Developers, a highly profitable real estate and condominium developer. In 2003, Boca Developers and Swerdlow Group formed Swerdlow Boca Development Co. to develop $2.5 billion in residential projects. Independently, both companies had developed nearly 11,000 homes and units by the time they joined forces.

4

22. In or about the summer of 2004, Plaintiffs began their search for a multi million-dollar condominium residence of uncompromising quality and value in South Florida. Plaintiffs obtained sales and marketing literature by the International Sales Group, LLC, the authorized sales agents and representatives of the Hamptons South. Subsequently, Plaintiffs were shown residential condominiums in the building by sales agents for Defendants ALH and ALH (Del.), for Hamptons South.

23. To induce the purchase of Unit 2806-07 (hereinafter the "Unit"), Defendants ALH and ALH (Del.) sales agents stated that the unit under consideration and ultimately purchased by Plaintiffs was the "biggest and best" unit at Hamptons South. In support of that statement, and to induce Plaintiffs to purchase the subject unit, the sales agents provided floor plans of comparable units demonstrating that units of equal size were located on lower and therefore less desirable floors in the building, and that the luxury and premium flooring, finishing, fixtures and paint for the unit ultimately purchased by Plaintiffs was superior to the standard flooring, finishing, fixtures and paint available for the remaining building units.

24. The representations made in paragraph 22 were material, and were relied upon by Plaintiffs who recognized the investment advantages of having the premier apartment in the building. The representations were also false.

<u>ALH's Failure to Deliver a Completed Unit at the Agreed Time</u>

25. In reliance upon these misrepresentations and (as noted below), Plaintiffs executed a purchase agreement to acquire unit 2806-07. A copy of Hamptons South Condominium Purchase Agreement (the "Purchase Agreement") with ALH of July 12, 2004, is attached as Ex. 1. The purchase price of the subject unit was $2,184,000, which together with upgrades purchased by Plaintiffs, totaled approximately $2,282, 543. The closing date for the

CASE NO: 06-09739 CA 06

sale of the Unit was set for January 31, 2005.   Delivery of the subject Unit to Plaintiffs was not accomplished until March 30, 2005.

26.     The Addendum to the Purchase Agreement (the "Addendum"), provided that in the event ALH failed to deliver a completed Unit within 120 days following Plaintiffs' approval of the Unit's plans, Plaintiffs would receive a credit of $500 per day applied to the purchase of their unit at closing.  A copy of the Addendum is attached as Ex. 2.

27.     Plaintiffs approved the Unit's plans in August 2004.  As of the filing of the instant amended complaint, ALH has failed to deliver a completed unit in breach of the subject Addendum, in that the Unit contains the construction and design defects enumerated, requires extensive repair and remediation, and is unsuitable for use as a temporary or permanent residence.  The cumulative and accruing credit to be offset against Plaintiffs' purchase price approximates $273,750 per year.

### Construction and/or Design Defects

28.     Upon occupancy of the subject Unit, Plaintiffs were confronted with multiple construction and design defects, which materially effected their Unit and the common areas of the building, all of which is more particularly described herein:

   a) Mold, visible water and moisture throughout the Unit and in the common area hallway and stairwell areas leading to and from the subject Unit;
   b) The collapse of the master bedroom closet ceiling rendering the Unit uninhabitable;
   c) Improper application of sub-standard wall paint throughout the Unit;
   d) Improper installation of drywall resulting in bowing of interior walls;
   e) Improper installation of and/or installation of defective exterior door locks;
   f) Improper installation/or design of air-conditioning ductwork in front entry foyer, resulting in reduced height of foyer;
   g) Damaged and defective marble flooring improperly installed throughout unit;
   h) Defective kitchen cabinetry improperly grooved and finished, installation of plastic simulated wood surfaces;
   i) Defective granite kitchen counter-top in kitchen;
   j) Defective sub-Zero refrigerator;

6

CASE NO: 06-09739 CA 06

    k)  Defective wine-cooler;

    l)  Improper placement of Jacuzzi tub;

    m)  Defective plumbing fixtures throughout unit;

    n)  Defective electrical fixtures;

    o)  Defective air-cooling system throughout unit;

    p)  Defective installation of bathroom plumbing fixtures and damage to adjacent marble surfaces;

    q)  Defective interior door knobs;

    r)  Rusted elevator entry-way doors;

    s)  Rusting running water;

    t)  Defective installation of bathroom tiles.

29.   Plaintiffs reported each of the foregoing conditions and defects to Defendant ALH, who has failed, refused or neglected to repair and correct same.

Mold growth throughout Unit

30.   At a time and date not currently known to Plaintiffs, water or moisture, from sources or conditions also not fully known to Plaintiffs, had permeated the common areas of the building and was visible in the hallways and stairwells of the building and had entered Plaintiffs' Unit. Upon information and belief, Defendant ALH and its agents knew or should have known that the Unit was subject to water penetration from the roof, exterior walls or other weather exposed surfaces of the building prior to Plaintiffs' purchase in January 2005. Defendant ALH and its agents knew or should have known that this condition created a hospitable environment for the growth of mold and mildew spores throughout the Unit and exposed common areas of the building, would be absorbed by the porous wood, and drywall interior surfaces of the Unit and thereby be damaged. At all times material hereto, Defendant ALH and its agents, concealed this condition from Plaintiffs who learned of same only after the initial collapse of the ceiling in their master bedroom closet in October 2005.

31.   ALH and its agents either knowingly failed to repair the source of water and moisture penetration or performed the necessary repairs so negligently that in or about October

THE LAW OFFICES OF RONALD WEIL P.A.
Wachovia Financial Center 200 S. Biscayne Blvd. Suite 900 Miami, FL 33131
Tel: (305) 372-5352   Fax: (305) 372-5355

7

CASE NO: 06-09739 CA 06

2006, and as a direct and proximate cause of the continued moisture and water penetration described in paragraph 29, the master bedroom closet ceiling in Plaintiffs' unit again collapsed.

32.    As a result of this second collapse, Plaintiffs learned that mold growth was now visible throughout the Unit.

33.    Before and after Plaintiffs' purchase of their Unit, Defendants concealed the existence of these leaks or substantially minimized their significance. Plaintiffs were repeatedly assured by officers, agents and employees of ALH that these leaks had been addressed and remedied, yet, over two years later, these leaks remain. Defendants and their agents conspired to prevent the truth about these conditions from surfacing, and Plaintiffs' only learned that the roof leaks remained unaddressed as a result of the two ceiling collapses in their Unit. Defendants directed their agents to conceal, obfuscate and deny the existence and seriousness of these leaks from Plaintiffs. Defendants' active concealment of these leaks has rendered the Unit uninhabitable and forced Plaintiffs to seek alternate shelter.

34.    As described above, marble floor tiles supplied and installed throughout the unit were chipped, pitted, of assorted and uneven colors, and installed in varying heights throughout the unit. Although a punch list describing the defective floor tiles had been supplied by Plaintiffs to Defendants ALH and ALH (Del.), said Defendants and their agents first began to address the condition in March 2005, three months after the closing.  Upon information and belief, the repairs attempted contributed to the formation of mold growth throughout the unit.  While polishing or sanding the floor, the floors were saturated with water, thereby causing the marble tiles to become discolored, and causing water to permeate and penetrate the floor baseboards and drywall.  Mold growth in the subject unit is so widespread that all flooring and wall coverings

CASE NO: 06-09739 CA 06

must be removed and replaced once the cause of the mold growth is removed and the Unit is thoroughly remediated.

### Failure To Deliver Unit In Conformity With Plans and Specifications

35.     The Unit was not constructed as planned, designed and/or depicted to Plaintiffs in that interior products were substituted for those depicted as standard or having being selected specifically for Plaintiffs' Unit, as is more particularly set forth below:

a)     Substitution of plastic kitchen paneling for wood;
b)     Substitution of glossy paint finish for interior walls;
c)     Elevator access to Unit 2806 covered by drywall rather than cement block (as required by plans);
d)     Contrary to plans, cabinetry, rather than drawers, installed adjacent to the refrigerator;
e)     Cabinetry not installed in master bathroom;
f)     Failure to install quarter-round molding throughout Unit;
g)     Failure to deliver an additional storage cage as provided in the contract addendum.

36.     Plaintiffs have hired the undersigned attorneys and are obligated to pay their reasonable attorneys' fees.

37.     All conditions precedent to bringing this action, inclusive of those required by Fla. Stat. Chapter 558 (2005), have been waived, excused or otherwise have been performed or occurred.

### COUNT I
### BREACH OF CONTRACT
(Against ALH and ALH (Del.))

38.     Plaintiffs restate and reallege paragraphs 1 through 3, and 16 through 37 as if fully set forth herein.

39.     ALH also breached the Addendum by failing to provide a third storage cage as provided in paragraph 2(g) of the Addendum.

40.     ALH has materially breached the subject purchase agreement.

9

CASE NO: 06-09739 CA 06

41.    As a direct and proximate result Plaintiffs have been damaged.  Such damages include:

a)  The cost of repair of or remediation to the construction-related defects;

b)  The diminution in value of and/or loss of use of their Unit;

c)  Rental, moving, storage, maintenance, travel, and related expenses incurred by them to retain temporary alternate residential property;

d)  Damage to their personal property inclusive of their furniture, furnishings and art work.

WHEREFORE, Plaintiffs demand judgment for damages against ALH and ALH (Del.) together with interest, costs, and reasonable attorneys other and further relief as the Court may deem appropriate.

## COUNT II
## BREACH OF WARRANTY UNDER FLA. STAT. § 718.203
(Against ALH, ALH (Del.))

42.    Plaintiffs restate and reallege paragraphs 1 through 3 and 16 through 37 as if fully set forth herein.

43.    ALH, and ALH and (Del.) developed and sold the Hamptons South within the purview of the Condominium Act and particularly Fla. Stat. § 718.203.

44.    Pursuant to Section 29 of the Purchase Agreement (Ex. 1) and Fla. Stat. § 718.203, ALH and ALH (Del.) granted Plaintiffs an implied warranty of fitness and merchantability for the purposes or uses intended for the Unit.

45.    Defendants breached the subject warranty by failing to construct their Unit in a manner that meets reasonable and ordinary standards expected for comparable residential

10

CASE NO: 06-09739 CA 06

condominium properties. Plaintiff relied on Defendant to construct a residential house that met those standards of fitness.

46.     As a direct and proximate result Plaintiffs have been damaged.  Such damages include:

    a.  The cost of repair of or remediation to the construction-related defects;

    b.  The diminution in value of and/or loss of use of their Unit;

    c.  Rental, moving, storage, maintenance, travel, and related expenses incurred by them to retain temporary alternate residential property;

    d.  Damage to their personal property inclusive of their furniture, furnishings and art work.

WHEREFORE, Plaintiffs demand judgment for damages against ALH and ALH (Del.), together with interest, costs, and their reasonable attorneys fees and such other and further damages as the Court may deem appropriate.

## COUNT III
## VIOLATION OF FLORIDA DECEPTIVE
## AND UNFAIR TRADE PRACTICES ACT (FDUTPA)
(Against ALH, ALH (Del.), Street, Cohen, Nicholson, and Papick, Gryphon, Kibler and Fossler and BLH)

47.     Plaintiffs restate and reallege paragraphs 1 through 10 and, 16 through 37 as if fully set forth herein.

48.     Defendants ALH and ALH (Del.), marketed, promoted and sold the Hamptons South Condominium and utilized print, media advertising, brochures and sales agents for that purpose. Defendants acted in concert to promote the common scheme and purpose of inducing Plaintiffs purchase:

THE LAW OFFICES OF RONALD WEIL P.A.
Wachovia Financial Center 200 S. Biscayne Blvd.  Suite 900 Miami, FL 33131
Tel: (305) 372-5352   Fax: (305) 372-5355

11

CASE NO: 06-09739 CA 06

a. by engaging in unfair sales and deceptive trade practices in that the subject Unit was not constructed as a luxury condominium but utilized inferior workmanship, materials, contained construction and design defects, failed to conform with plans and specifications, and such conditions and defects have not been remediated, repaired or corrected more than 2 years following the purchase of the subject.

b. by engaging in unfair sales and deceptive trade practices in that Hamptons South, was represented as having a "state of the art spa", soon to be renovated restaurant facilities, superior materials, and utilizing construction and design that was attendant to a luxury condominium embracing its advertised principle of "never compromise on the quality of the product you build."

49. At all times material prior to closing, Defendants ALH and ALH (Del.), represented to Plaintiffs that the adjoining building housing the restaurant and spa would be completely renovated, and that the first floor spa would be completely renovated into a "state of the art" spa with a steam room, sauna and men's and women's showers.

50. At all times material prior to closing, Defendants ALH and ALH (Del.) represented to Plaintiffs that the traffic security guard station would be completely renovated.

51. To date, none of the conditions described in paragraphs 27 through 33 have been repaired, or remedied to conform with the representations made to Plaintiffs prior to closing, the spa is incomplete, inundated by moisture and mold, and not fully operational, the restaurant facility is not renovated, and common areas of the building continue to suffer from moisture penetration and mold growth.

THE LAW OFFICES OF RONALD WEIL P.A.
Wachovia Financial Center 200 S. Biscayne Blvd, Suite 900, Miami, FL 33131
Tel: (305) 372-5352   Fax: (305) 372-5355

12

CASE NO: 06-09739 CA 06

52.     Defendant BLH initiated or participated in the construction of Plaintiffs' unit, and was responsible for many of the purchases of material, fixtures and electrical components in Plaintiffs' unit.

53.     Defendant Gryphon, having replaced previous contractors at Hamptons South, repeatedly assured Plaintiffs' that corrective and remedial repairs had been made, when in fact the vast majority of the defects enumerated herein remained.

54.     Gryphon, through its agents and officers Chuck Fossler and Lawrence Kibler, repeatedly assured Plaintiffs' that repairs aimed at preventing water intrusion had been completed, when in fact this was not the case. Gryphon's repeated promises and assurances notwithstanding, extensive mold was detected in the Unit subsequent to a second ceiling collapse. This mold has essentially rendered the Unit uninhabitable and forced Plaintiffs' to seek alternate shelter.

55.     Defendants James Cohen and Brian Street, officers and shareholders of ALH, ALH (Del), Gryphon and BLH, were actively involved and responsible for the development of Hamptons South, and actively reviewed all construction, marketing and sales of the building and individual units, including Plaintiffs' Unit. As officers, agents and shareholders of both ALH (Del) and Gryphon, Cohen and Street actively participated in Hamptons South's Construction, and were dually responsible for ensuring that Hamptons South was built according to design specifications and ensuring that remedial efforts were made as promised. Repeated promises to Plaintiffs by these individuals regarding the completeness of the repairs notwithstanding, repairs to Plaintiffs' Unit were faulty and/or woefully incomplete.

56.     Defendants Nicholson and Papick, also officers, agents and shareholders of both ALH (Del) and Gryphon, also approved, participated and directed the faulty and defective

THE LAW OFFICES OF RONALD WEIL P.A.
Wachovia Financial Center 200 S. Biscayne Blvd. Suite 900 Miami, FL 33131
Tel: (305) 372-5352 Fax: (305) 372-5355

13

CASE NO: 06-09739 CA 06

repairs in Plaintiffs' Unit, and actively participated in the deceptive and unfair trade practices and acts described above in that each individually and collectively promoted the common scheme and purpose set forth in this count.

57.   As a direct and proximate result Plaintiffs have been damaged.   Such damages include but are not limited to the diminished market value the Unit.

WHEREFORE, Plaintiffs demand judgment against ALH, ALH (Del.), Street, Cohen, Nicholson, Papick, Gryphon, Kibler, Fossler and BLH for damages, pre-judgment interest, attorneys' fees, costs, the reimbursement of all maintenance fees paid to date and such further relief as the Court may deem just and proper.

## COUNT IV
## FRAUDULENT CONCEALMENT
(Against ALH, ALH (Del.), Cohen, Street, Nicholson and Papick, Gryphon, Kibler, Fossler and BLH)

58.   Plaintiffs restate and reallege paragraphs 1 through 10 and, 16 through 37 as if fully set forth herein.

59.   At all times material, and prior to Plaintiffs' purchase, Defendants ALH and ALH (Del.) fraudulently and actively concealed the ongoing water penetration from the roof into the common areas from Plaintiffs'. In an effort to further conceal these issues, Defendant's Brian Street and James Cohen, as officers, shareholders, and agents of ALH, ALH (Del) and Gryphon, repeatedly and fraudulently assured Plaintiffs' that the causes of the water penetration had been identified and remedied, when in fact the situation continued to deteriorate, and was the source of mold into the building's common areas and Plaintiffs' Unit.

60.   Defendant BLH initiated or participated in the construction of Plaintiffs' unit, and was responsible for many of the purchases of material, fixtures and electrical components in Plaintiffs' unit.

14

CASE NO: 06-09739 CA 06

61.    Defendant Gryphon, having replaced previous contractors at Hamptons South, repeatedly assured Plaintiffs' that corrective and remedial repairs had been made, when in fact the vast majority of the defects enumerated herein remained, and actively concealed the ongoing water penetration issues from Plaintiffs.

62.    Gryphon, through its agents and officers Chuck Fossler and Lawrence Kibler, repeatedly assured Plaintiffs' that repairs aimed at preventing water intrusion had been completed, when in fact this was not the case. Gryphon's repeated promises and assurances notwithstanding, extensive mold was detected in the Unit subsequent to a second ceiling collapse. This mold has essentially rendered the Unit uninhabitable and forced Plaintiffs' to seek alternate shelter.

63.    Defendants James Cohen and Brian Street, officers and shareholders of ALH, ALH (Del), Gryphon and BLH, were actively involved and responsible for the development of Hamptons South, and actively reviewed all construction, marketing and sales of the building and individual units, including Plaintiffs' Unit. As officers, agents and shareholders of both ALH (Del) and Gryphon, Cohen and Street actively participated in Hamptons South's Construction, and were dually responsible for ensuring that Hamptons South was built according to design specifications and ensuring that remedial efforts were made as promised. Repeated promises to Plaintiffs by these individuals regarding the completeness of the repairs notwithstanding, repairs to Plaintiffs' Unit were faulty and/or woefully incomplete. These assurances were meant to actively conceal the scope and magnitude of the problems at Hamptons South and Plaintiffs' Unit, and the nature of which were only revealed as a result of two significant ceiling collapses.

64.    Defendants Nicholson and Papick, also officers, agents and shareholders of both ALH (Del) and Gryphon, also approved, participated and directed the faulty and defective

15

CASE NO: 06-09739 CA 06

repairs in Plaintiffs' Unit, and actively concealed the fact that many, if not most, of these repairs were faulty, not completed, or never attempted.

65.     Defendants had an affirmative duty to disclose the above defects and conditions to Plaintiffs prior to their purchase of the Unit, as the same were peculiarly within Defendants' superior knowledge, not readily ascertainable, and therefore latent and would have a foreseeable impact upon Plaintiffs' Unit.

66.     At all times material hereto and prior to Plaintiffs' purchase, Defendants, deliberately and in order to deceive, while acting either individually or in concert, concealed from and therefore failed to disclose the subject conditions and defects to Plaintiffs.

67.     Plaintiffs reasonably relied upon the completeness of Defendants' disclosures in making their purchase.

68.     Defendants' omissions were material.

69.     But for these omissions, Plaintiffs would not have purchased the Unit.

70.     As a direct and proximate result of such concealment Plaintiffs have been damaged.

71.     Plaintiffs reserve the right to demand punitive damages upon submission of a proffer in conformity with Florida law.

WHEREFORE, Plaintiffs demand judgment for damages against ALH, ALH (Del.), Street, Cohen, Nicholson, Papick, Gryphon, Kibler, and Fossler together with interest, and costs.

## COUNT V
## NEGLIGENCE
(Against ALH, ALH (Del.), Gryphon, Miller & Solomon and BLH)

72.     Plaintiffs restate and reallege paragraphs 1 through 37 as if fully set forth herein.

THE LAW OFFICES OF RONALD WEIL P.A.
Wachovia Financial Center 200 S. Biscayne Blvd.  Suite 900 Miami, FL 33131
Tel: (305) 372-5352   Fax: (305) 372-5355

CASE NO: 06-09739 CA 06

73.    At all material times, Defendant Miller & Solomon was the general contractor responsible for constructing the Unit. Defendant Gryphon is upon information and belief the successor to Miller & Solomon and at all times material herein assumed the duties of Miller & Solomon as general contractor charged with the construction and completion of Hamptons South. Defendant BLH initiated or participated in the construction of Plaintiffs' unit, and was responsible for many of the purchases of material, fixtures and electrical components in Plaintiffs' unit.

74.    ALH, ALH (Del.), Gryphon, Miller & Solomon and BLH had a duty to complete construction in a good and workmanlike manner, in conformity with plans and specifications and free from construction defects.

75.    ALH, ALH (Del.), Gryphon, Miller & Solomon and BLH breached their subject duty to Plaintiffs in that the Unit and building exhibit the construction defects set forth herein.

76.    As a direct and proximate result Plaintiffs have been damaged. Such damages include:

    e)   The cost of repair of or remediation to the construction-related defects;

    f)   The diminution in value of and/or loss of use of their Unit;

    g)   Rental, moving, storage, maintenance, travel, and related expenses incurred by them to retain temporary alternate residential property;

    h)   Damage to their personal property inclusive of their furniture, furnishings and art work.

77.    Plaintiffs reserve the right to demand punitive damages upon submission of a proffer in conformity with Florida law.

THE LAW OFFICES OF RONALD WEIL P.A.
Wachovia Financial Center 200 S. Biscayne Blvd. Suite 900 Miami, FL 33131
Tel: (305) 372-5352   Fax: (305) 372-5355

CASE NO: 06-09739 CA 06

WHEREFORE, Plaintiffs demand judgment for damages against ALH, ALH (Del.), Gryphon, Miller & Solomon and BLH and any other damages that the Court may deem just and proper, together with interest and costs.

## COUNT VI
### BREACH OF WARRANTY UNDER FLA. STAT. § 718.203
(Against Miller & Solomon, Gryphon and BLH)

78.    Plaintiffs restate and reallege paragraphs 1 through 37 as if fully set forth herein.

79.    Defendants Miller & Solomon, Gryphon and BLH were general contractors or subcontractors within the purview of the Condominium Act and particularly Section 718.203, Fla. Stat.

80.    Pursuant to Section 718.203, Miller & Solomon, Gryphon and BLH granted to Plaintiffs an implied warranty of fitness as to the work performed or materials supplied.

81.    Defendants Miller & Solomon, Gryphon and BLH breached their duty to Plaintiffs by constructing the Unit in such a way that it has, among other things, defective roofing, air conditioning, flooring, electrical, security and plumbing systems.

82.    As a direct and proximate result, Plaintiffs have been damaged. Such damages include:

a.    Costs incurred to repair or remediate the construction-related defects, including the costs of hiring experts to examine and/or repair the defects;

b.    The diminution of value of the Unit, including but not limited to the aesthetic and market value damage caused by the construction-related defects;

c.    Rental, moving, storage, cleaning, food and all other expenses incurred by Plaintiffs upon being forced to extend temporary rentals for all past and future repairs.

THE LAW OFFICES OF RONALD WEIL P.A.
Wachovia Financial Center 200 S. Biscayne Blvd. Suite 900 Miami, FL 33131
Tel: (305) 372-5352   Fax: (305) 372-5355



CASE NO: 06-09739 CA 06

WHEREFORE, Plaintiffs demand judgment for damages against Defendants, Miller & Solomon, Gryphon and BLH together with reasonable attorneys fees, interest, and costs.

## COUNT VII
## BREACH OF WARRANTY UNDER FLA. STAT. § 718.203
### (Against Thermal Concepts)

83.     Plaintiffs restate and reallege paragraphs 1 through 37 as if fully set forth herein.

84.     Defendant Thermal Concepts was a contractor or subcontractor within the purview of the Condominium Act and particularly Fla. Stat. § 718.203.

85.     Pursuant to Fla. Stat. § 718.203, Defendant Thermal Concepts granted to Plaintiffs an implied warranty of fitness as to the work performed or materials supplied.

86.     Defendant Thermal Concepts breached its duties to Plaintiffs by constructing and/or installing a defective air conditioning system.

87.     As a direct and proximate result of Defendant Thermal Concept's breach, Plaintiffs have sustained damages that include but are not limited to:

    a.  Costs incurred to repair or remediate the air conditioning system's defects;

    b.  The diminution of value of the Unit caused by the air conditioning system defects;

    c.  Rental, moving, storage, cleaning, food and all other expenses incurred by Plaintiffs upon being forced to extend temporary rentals for all past and future repairs.

WHEREFORE, Plaintiffs demand judgment for damages against Defendant Thermal Concepts, together with interest, costs, and reasonable attorneys fees.

## COUNT VIII
## BREACH OF WARRANTY UNDER FLA. STAT. § 718.203
### (Against Cauley)

88.     Plaintiffs restate and reallege paragraphs 1 through 37 as if fully set forth herein.

19

CASE NO: 06-09739 CA 85

89.     Defendant Cauley was a contractor or subcontractor within the purview of the Condominium Act and particularly Fla. Stat. §718.203.

90.     Pursuant to Fla. Stat. § 718.203, Defendant Cauley granted Plaintiffs an implied warranty of fitness as to the work performed or materials supplied.

91.     Defendant Cauley breached its duties to Plaintiffs by constructing and/or installing defective drywall.

92.     As a direct and proximate result of Defendant Cauley's breach, Plaintiffs have sustained damages that include, but are not limited to:

a.     Costs incurred to repair or remediate the drywall defects more particularly enumerated in paragraph 27(d) herein;

b.     The diminution of value of the Unit, including but not limited to the aesthetic and market value damage caused by the drywall defects;

c.     Rental, moving, storage, cleaning, food and all other expenses incurred by Plaintiffs upon being forced to extend temporary rentals for all past and future repairs.

WHEREFORE, Plaintiffs demand judgment for damages against Defendant Cauley, together with interest, costs, and reasonable attorneys fees.

## COUNT IX
## BREACH OF WARRANTY UNDER FLA. STAT. § 718.203
(Against Southern Painting)

93.     Plaintiffs restate and reallege paragraphs 1 through 37 as if fully set forth herein.

94.     Defendant Southern Painting was a contractor or subcontractor within the purview of the Condominium Act and particularly Fla. Stat. § 718.203.

20

CASE NO: 06-09739 CA 06

95. Pursuant to Fla. Stat. § 718.203, Defendant Southern Painting granted Plaintiffs an implied warranty of fitness as to the work performed or materials supplied.

96. Defendant Southern Painting breached its duty to Plaintiffs by failing to completely paint the Unit and by using the wrong paint in areas.

97. As a direct and proximate result of Defendant Southern Painting's breach, Plaintiffs have sustained damages that include, but are not limited to:

    a. Costs incurred to repair or remediate the painting defects;

    b. The diminution of value of the Unit, including but not limited to the aesthetic and market value damage caused by the painting defects;

    c. Rental, moving, storage, cleaning, food and all other expenses incurred by Plaintiffs upon being forced to extend temporary rentals for all past and future repairs.

WHEREFORE, Plaintiffs demand judgment for damages against Defendant Southern Painting, together with interest, costs, and reasonable attorneys fees.

COUNT X
PROFESSIONAL NEGLIGENCE
(Against Architect)

98. Plaintiffs restate and reallege paragraphs 1 through 37 as if fully set forth herein.

99. At all times material hereto, Defendant Architect undertook a duty and responsibility to render architectural services for the construction of Hamptons South and to perform same in a manner consistent with sound architectural practices and with those requirements dictated by the applicable building code(s), ordinances and/or industry standards for our community.

21

CASE NO: 06-09739 CA 06

100.    Defendant Architect knew or should have known and was well-aware that the Hamptons South Condominium and the Unit in particular were being constructed for sale to the general public.

101.    Defendant Architect knew or should have known that any error, omission, and/or defect in the preparation of plans or specs for the Unit would in fact harm or cause economic damage to Plaintiffs or any party purchasing or otherwise acquiring a unit in the building.

102.    Defendant Architect breached its foregoing duty by its failure to perform architectural services in accordance with the applicable standard of care for similar professionals in Miami-Dade County, Florida or similar communities in that the building and unit were designed and constructed such that the plans and specifications for same fell below the standard of care for similarly situated design professionals. The completed construction and the attendant defects enumerated herein resulted from Defendant Architects' negligence, and/or Architect failed to properly supervise and thereafter negligently approved of the completed construction which exhibited the construction defects enumerated herein. Defendant Architect further designed and/or approved of construction for the entry foyer which improperly reduced the height of Plaintiffs' entryway foyer by approximately two feet, as is more particularly set forth in paragraph 78(d) herein.

103.    As a direct and proximate cause of Defendant Architect's foregoing negligence, Plaintiffs have been damaged. Such damages include:

a.    Costs required to repair or remediate the conditions described in paragraphs 27 through 33 herein;

b.    the diminution in value of the Unit, including but not limited to the aesthetic and market value damage cause by the design of the air conditioning system;

23

CASE NO: 06-09739 CA 06

    c.   Rental, moving, storage, cleaning, food and all other expenses incurred by

    Plaintiffs upon being forced to extend temporary rentals for all past and future

    repairs;

    d.   Damage to the personal property of Plaintiffs.

    104.   Plaintiffs reserve the right to demand punitive damages upon submission of a

proffer in conformity with Florida law.

    WHEREFORE, Plaintiffs demand judgment for damages against Defendant Architect,

together with interest, and costs.

## RESERVATION TO AMEND

    In addition to any and all matters of wrongdoing, be they base on all of the foregoing or

civil or other claims that may arise during the remainder of the pretrial discovery, Plaintiffs

reserve the right to amend this Amended Complaint to include any and all such additional claims

that may arise.

## DEMAND FOR JURY TRIAL

    Plaintiffs hereby demand the opportunity to try their claims before a jury.

THE LAW OFFICES OF RONALD WEIL P.A.
Wachovia Financial Center 200 S. Biscayne Blvd.  Suite 900 Miami, FL 33131
Tel: (305) 372-5352   Fax: (305) 372-5355

CASE NO: 06-09739 CA 06

## CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that a true and correct copy of the foregoing was served via U.S.

Mail upon the following addresses this 10th day of December, 2007.

facsimile only

Glenn Smith, Esq.
Ruden McClosky
200 East Broward Boulevard
P.O. Box 1900
Fort Lauderdale, FL 33302
Phone: (954) 761-2957
Fax: (954) 333-4157

Alexander E. Barthet, Esq.
The Barthet Firm
200 South Biscayne Boulevard
Suite 1800
Miami, FL 33131
Phone: (305) 347-5290
Fax: (305) 377-8695

Patrick J. Toomey, Jr., Esq.
Daniels, Kashtan, Downs, Robertson
    & Magathan
3300 Ponce de Leon Boulevard
Miami, FL 33134
Phone: (305) 448-7988
Fax: (305) 448-7978

Nestor Bustamante, III, Esq.
Ferencik, Libanoff, Brandt,
    Bustamante & Williams, P.A.
150 South Pine Island, Suite 400
Fort Lauderdale, FL 33324
Phone: (954) 474-8080
Fax: (954) 474-7343

F. William Harvey, Esq.
F. William Harvey, P.A.
5310 N.W. 33rd Avenue, Suite 100B
Fort Lauderdale, FL 33309
Phone: (954) 733-1191
Fax: (954) 733-1193

Alan B. Whitaker, Jr., Esq.
Adorno & Yoss, LLP.
888 Southeast Third Avenue, Suite 500.
Fort Lauderdale, Florida 33335-9002
Phone: (954) 523-5885
Fax: (954) 760-9531

THE LAW OFFICES OF RONALD WEIL, P.A.
Attorneys for Plaintiffs
Suite 900, Wachovia Financial Center
200 South Biscayne Boulevard
Miami, Florida 33131
Tel: 305-372-5352
Fax: 305-372-5355

By: _____
Ronald P. Weil
Florida Bar No. 169966
Manuel A. Rodriguez
Florida Bar No. 0598240

THE LAW OFFICES OF RONALD WEIL P.A.
Wachovia Financial Center 200 S. Biscayne Blvd. Suite 900 Miami, FL 33131
Tel: (305) 372-5352   Fax: (305) 372-5355

24

# E X H I B I T   D

# EXHIBIT D

2/1/09

IN THE CIRCUIT COURT OF THE 11TH
JUDICIAL CIRCUIT IN AND FOR MIAMI-
DADE COUNTY, FLORIDA

GENERAL JURISDICTION DIVISION
CASE NO.: 08-21827 CA 27

HAMPTONS SOUTH CONDOMINIUM
ASSOCIATION, INC., a Florida not-for-
profit corporation,

      Plaintiff,

V.

AVENTURA LAND HOLDING, LTD., a Florida Limited
Partnership, AVENTURA LAND HOLDING (DEL), INC.,
a Delaware corporation, PRO-TECH CAULKING
& WATERPROOFING, INC., a Florida corporation,
WHITE ALUMINUM FABRICATION, INC., a Florida corporation,
IES COMMERCIAL, INC., f/k/a DANIEL ELECTRIC
CONTRACTORS, INC., a Florida corporation, SOUTHERN
COAST ENTERPRISES, INC., a Florida corporation, EDWIN M.
GREEN, INC., a Florida corporation, TANGO IMPORTS, INC.,
a/k/a TANGO IMPORTS, LLC, a Florida corporation, RC ALUMINUM
INDUSTRIES, INC., a Florida corporation, MCCOURT
CONSTRUCTION, INC., a Florida corporation, COHEN,
FREEDMAN, ENCINOSA & ASSOCIATES – ARCHITECTS, INC.,
a Florida corporation, SOUTHLAND FORMING, INC., a Florida
corporation, HUFSEY – NICOLAIDES – GARCIA-SUAREZ
ASSOCIATES, INC., a Florida corporation, THERMAL CONCEPTS, INC.,
a Florida corporation, FORTIN, LEAVY, SKILES, INC., a Florida
corporation, VALIANT CONSTRUCTION CORPORATION, a Florida
corporation, FIBRE-TECH, INC., a Florida corporation, ROCK POWER
CORPORATION, a Florida corporation, and FLORIDA CONCRETE
UNLIMITED, INC., a Florida corporation,

      Defendants.

_____/



Exhibit
21
2-11-10  ESQUIRE

SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

    Plaintiff, HAMPTONS SOUTH CONDOMINIUM ASSOCIATION, INC.

("ASSOCIATION"), by and through undersigned counsel, pursuant to the Florida Rules of Civil

Procedure herein sues Defendants, AVENTURA LAND HOLDING, LTD. ("ALHL"), AVENTURA

LAND HOLDING (DEL), INC. ("ALH") (collectively "AVENTURA"), PRO-TECH CAULKING &

WATERPROOFING, INC. ("PRO-TECH"), WHITE ALUMINUM FABRICATION, INC. ("WHITE

EXHIBIT 1

SE NO.: 08-21827 CA 27

ALUMINUM"), IES COMMERCIAL, INC., F/K/A DANIEL ELECTRIC CONTRACTORS, INC. ("IES"), SOUTHERN COAST ENTERPRISES, INC., ("SOUTHERN COAST"), EDWIN M. GREEN, INC.("GREEN"), TANGO IMPORTS, INC., a/k/a TANGO IMPORTS, LLC ("TANGO"), and RC ALUMINUM INDUSTRIES, INC. ("RC ALUMINUM"), MCCOURT CONSTRUCTION, INC. ("MCCOURT"), COHEN, FREEDMAN, ENCINOSA & ASSOCIATES – ARCHITECTS, INC. ("CFEA"), SOUTHLAND FORMING, INC. ("SOUTHLAND"), HUFSEY-NICOLAIDES-GARCIA-SUAREZ ASSOCIATES, INC. ("HNGS"), THERMAL CONCEPTS, INC. ("THERMAL"), FORTIN, LEAVY, SKILES, INC. ("FLS"), VALIANT CONSTRUCTION CORPORATION ("VALIANT"), FIBRE-TECH, INC. ("FIBRE-TECH"), ROCK POWER CORPORATION ("ROCK POWER"), and FLORIDA CONCRETE UNLIMITED, INC. ("FLORIDA CONCRETE") (collectively "DEFENDANTS"), and in support states as follows:

<u>JURISDICTION AND VENUE</u>

1.     This is an action for damages in excess of $15,000.00, exclusive of interest, costs and attorney's fees.  This Court has jurisdiction over the subject matter of this action pursuant to Section 26.012, Florida Statutes (2004).

2.     The ASSOCIATION is a not-for-profit Florida corporation, located in Miami-Dade County, Florida, and is a condominium association organized pursuant to the provisions of Chapter 718, Florida Statutes, (hereinafter referred to as "the Condominium Act").

3.     ALHL is a Florida Limited Partnership with its principal place of business in Deerfield Beach, Florida and is duly licensed to conduct business in the State of Florida.

4.     ALH is a Delaware corporation with its principal place of business in Deerfield Beach, Florida and is duly licensed to conduct business in the State of Florida.

5.     PRO-TECH is a Florida corporation with its principal place of business in Ft. Lauderdale, Florida and is duly licensed to conduct business in the State of Florida.

6.     WHITE ALUMINUM is a Florida corporation with its principal place of business in Stuart, Florida and is duly licensed to conduct business in the State of Florida.

- 2 -

SE NO.: 08-21827 CA 27

7.    IES is a Florida corporation with its principal place of business in Tempe, Arizona and is duly licensed to conduct business in the State of Florida.

8.    SOUTHERN COAST is a corporation with its principal place of business in Broward County, Florida and is duly licensed to conduct business in the State of Florida.

9.    GREEN is a corporation with its principal place of business in Miami-Dade County, Florida and is duly licensed to conduct business in the State of Florida.

10.    TANGO is a corporation with its principal place of business in Broward County, Florida and is duly licensed to conduct business in the State of Florida.

11.    RC ALUMINUM is a corporation with its principal place of business in Miami-Dade County, Florida and is duly licensed to conduct business in the State of Florida.

12.    MCCOURT is a corporation with its principal place of business in Miami-Dade County, Florida and is duly licensed to conduct business in the State of Florida.

13.    CFEA is a corporation with its principal place of business in Miami-Dade County, Florida and is duly licensed to conduct business in the State of Florida.

14.    SOUTHLAND is a corporation with its principal place of business in Miami-Dade County, Florida and is duly licensed to conduct business in the State of Florida.

15.    HNGS is a corporation with its principal place of business in Miami-Dade County, Florida and is duly licensed to conduct business in the State of Florida.

16.    THERMAL is a Florida corporation with its principal place of business in Ft. Lauderdale, Florida and is duly licensed to conduct business in the State of Florida.

17.    FLS is a corporation with its principal place of business in Miami-Dade County, Florida and is duly licensed to conduct business in the State of Florida.

18.    VALIANT is a corporation with its principal place of business in Broward County, Florida and is duly licensed to conduct business in the State of Florida.

19.    FIBRE-TECH is a corporation with its principal place of business in Pinellas County, Florida and is duly licensed to conduct business in the State of Florida.

-3-

SE NO.: 08-21827 CA 27

20.    ROCK POWER is a corporation with its principal place of business in Miami-Dade County, Florida and is duly licensed to conduct business in the State of Florida.

21.    FLORIDA CONCRETE is a corporation with its principal place of business in Miami-Dade County, Florida and is duly licensed to conduct business in the State of Florida.

22.    Venue is proper in Miami-Dade County, Florida pursuant to Section 47.011, Florida Statutes (2004), as the Association is located in Miami-Dade County, the property is located in Miami-Dade County, the condominium project was constructed in Miami-Dade County, and the causes of action accrued in Miami-Dade County.

<u>GENERAL ALLEGATIONS</u>

23.    AVENTURA is the developer of a condominium project known as Hamptons South Condominium ("HAMPTONS"), located at 20201 E. Country Club Drive, Aventura, Florida 33180.

24.    AVENTURA entered into a contract with Miller & Solomon General Contractors, Inc. ("Miller & Solomon"), as the general contractor, whereby Miller & Solomon, was to provide labor, services, and material in the construction of the HAMPTONS.

25.    Miller & Solomon entered into a contracts with PRO-TECH, WHITE ALUMINUM, IES, SOUTHERN COAST, GREEN, TANGO, RC ALUMINUM, MCCOURT, SOUTHLAND, THERMAL, FLS, VALIANT, ROCK POWER, and FLORIDA CONCRETE (Collectively "Subcontractors"), whereby the Subcontractors were to provide labor, services, and material in the construction of the HAMPTONS.

26.    In constructing and selling units within the HAMPTONS, AVENTURA made available a "Prospectus" with exhibits and "Declaration of Condominium," to each prospective buyer making certain representations regarding the amenities and the condition of AVENTURA, thereby including each buyer to enter into a contract/purchase agreement with AVENTURA of each unit within HAMPTONS.

- 4 -

27.    Accordingly, each contract/purchase agreement incorporated, by reference, the Prospectus and Declaration of Condominium, in addition to the plans and specifications of the common elements and the individual units of HAMPTONS.

28.    Thereafter, on or about January 28, 2005, AVENTURA turned control of HAMPTONS over to the ASSOCIATION ("Turnover"). The ASSOCIATION is the entity responsible for the management and operation of HAMPTONS, and has fully maintained HAMPTONS, which is the subject matter of this suit.

29.    Subsequent to the ASSOCIATION taking control of HAMPTONS, and after units were sold and occupied by HAMPTONS' unit owners ("Unit Owners"), certain deficiencies were observed, thereby causing the retention of Atkins Engineers, to conduct a full inspection of HAMPTONS.

30.    As a result of the inspection, Atkins Engineers, prepared an engineering report ("Report"), identifying defects proximately caused by improper design and/or construction, including, but not limited to, failure to comply with the requirements of applicable national, state and local building code; failure to comply with the filed and approved construction plans and specifications; failure to comply with the standards of good workmanship; and failure to comply with the express representations of AVENTURA. A copy of the Report is attached herein as Exhibit "A."

31.    The ASSOCIATION seeks recovery herein for damages proximately caused by the improper design and/or construction of the HAMPTONS, and the improper design and/or construction of the improvements to the HAMPTONS, which resulted in the numerous defects and deficiencies in various systems and components of the HAMPTONS, and as identified in the Report, the failure to comply with representations made in the Prospectus and Declaration of Condominium.

32.    The existence or causes of the defects are not readily recognizable by persons who lack special knowledge or training, or are hidden by components or finishes, and are latent.

SE NO.: 08-21827 CA 27

As such, the Unit Owners and the ASSOCIATION, in the exercise of reasonable diligence, did not discover the existence until after the purchase and occupancy of the HAMPTONS' units, and/or were led to believe by DEFENDANTS that all said defects and deficiencies would or have been corrected.

33.     The ASSOCIATION brings this action pursuant to Section 718.111 (2), Florida Statutes (2005), and Rule 1.221, Florida Rules of Civil Procedure, in its own right and as the lawful representative of the class of owners of the Condominium.

34.     The causes of action herein concern matters of common interest to HAMPTONS' Unit Owners, which matters include, but are not limited to, HAMPTONS' common elements and individual units; the roof and structural components of HAMPTONS and improvements; the mechanical, electrical, and plumbing elements serving HAMPTONS and improvements; representations by AVENTURA relating to the condition of HAMPTONS and improvements; and other matters commonly affecting and of common interest to HAMPTONS' Unit Owners.

35.     All conditions precedent to the commencement of this action, have been satisfied, performed, waived or excused.

## COUNT I
## BREACH OF CONTRACT
## (AVENTURA)

36.     The ASSOCIATION incorporates by reference paragraphs one (1) through thirty-five (35) above, and further alleges:

37.     AVENTURA was responsible for the development and construction of HAMPTONS. In developing and constructing HAMPTONS, AVENTURA recorded the following declaration of condominium: HAMPTONS SOUTH CONDOMINIUM, Declaration of Condominium in Official Records Book 22124 at pages 1785 – 1899 of the Public Records of Miami-Dade County, Florida ("Declaration of Condominium"). A copy of the applicable sections of the Declaration of Condominium is attached herein as Exhibit "B."

- 6 -

SE NO.: 08-21827 CA 27

38.     Pursuant to the provisions of the "Prospectus", the "Declaration of Condominium", and the plans and specifications prepared by AVENTURA, the terms and conditions of which were incorporated by reference into each "Purchase Agreement" for the purchase and sale of units in HAMPTONS ("Contract"), AVENTURA owed a duty to the ASSOCIATION and its Unit Owners to construct and deliver HAMPTONS in accordance with the Prospectus, the Declaration of Condominium, the Purchase Agreement, and the plans and specifications. A copy of the applicable sections of the Prospectus is attached herein as Exhibit "C."

39.     AVENTURA materially breached the Contract and its duties to the ASSOCIATION, including, but not limited to, the following:

   A.     Delivering HAMPTONS to the ASSOCIATION with defects and deficiencies identified in the Report;

   B.     Failing to construct and design HAMPTONS in compliance with the Florida Building Code and good construction practices;

   C.     Failing to deliver HAMPTONS pursuant to the express representations made in the operating budget for the condominium property; and

   D.     Failing to construct, design, and deliver HAMPTONS pursuant to the representations made in the Contract.

40.     As a direct and proximate result of the aforesaid breach of the Contract, the ASSOCIATION has suffered damages and will continue to suffer damages, including, but not limited to, the following:

   A.     Costs incurred to repair and replace property located on the common elements and individual units of HAMPTONS;

- 7 -

SE NO.: 08-21827 CA.27

B.   Costs that will be incurred to construct, repair, and replace property located on the common elements and individual units of HAMPTONS; and

C.   Costs incurred and costs that will be incurred to construct, repair and replace other property located at the HAMPTONS.

WHEREFORE, Plaintiff, Hamptons South Condominium Association, Inc., demands judgment against Defendants, Aventura Land Holding, Ltd., and Aventura Land Holding (DEL), inc., for its damages, together with interest, attorneys' fees and costs pursuant to Article 18 the representative purchase agreement, and such other relief as this Court may deem just and equitable.

<div align="center">

### COUNT II
### BREACH OF STATUTORY IMPLIED WARRANTIES
### SECTION 718.203, FLORIDA STATUTES
### (AVENTURA)

</div>

41.   The ASSOCIATION incorporates by reference paragraphs one (1) through thirty-five (35) above, and further alleges:

42.   AVENTURA is the developer of HAMPTONS within the purview of Section 718.203, Florida Statutes, in that it built and offered for sale, and did sell to the public, individual units in HAMPTONS.

43.   Pursuant to Section 718.203 (1), Florida Statutes, HAMPTONS granted to the original Unit Owners (i.e., those who purchased their units directly from HAMPTONS), as well as all successor Unit Owners, implied warranties of fitness and merchantability for the purposes or uses intended with regard to the Condominium buildings and improvements.

44.   HAMPTONS breached these warranties in the design, construction and improvements to the common elements and individual units of HAMPTONS, by the following:

A.   Delivering HAMPTONS to the ASSOCIATION with defects and deficiencies identified in the Report;

<div align="center">

- 8 -

</div>

SE NO.: 08-21827 CA 27

B.    Failing to construct and design HAMPTONS in compliance with the Florida Building Code;

C.    Failing to construct and design HAMPTONS, in compliance with the permitted plans and specifications;

D.    Failing to construct and design HAMPTONS in accordance with industry standards; and

E.    Designing, constructing, completing and delivering HAMPTONS to the ASSOCIATION with defects and deficiencies caused by faulty workmanship or defective work performed in whole or in part by the contractor, its subcontractors, and/or sub-subcontractors that has caused damage to other property located within, on and/or about HAMPTONS including physical injury to tangible property and/or resulting loss of use of that property.

45.    As a direct and proximate result of the aforesaid breach of warranties, the ASSOCIATION has suffered damages and will continue to suffer damages, including, but not limited to, the following:

A.    Costs incurred to repair and replace property located on the common elements and individual units of HAMPTONS;

B.    Costs that will be incurred to repair and replace property located on the common elements and individual units of HAMPTONS; and

C.    Costs incurred and costs that will be incurred to construct, repair and replace other property located at the HAMPTONS.

WHEREFORE, Plaintiff, Hamptons South Condominium Association, Inc., demands judgment against Defendant, Aventura Land Holding, Ltd., and Aventura Land Holding (DEL), Inc., for its damages, together with interest, costs, and such other relief as this Court may deem just and equitable.

CASE NO.: 08-21827 CA 27

### COUNT III
### BREACH OF STATUTORY IMPLIED WARRANTIES
### SECTION 718.203, FLORIDA STATUTES
### (PRO-TECH)

46       The ASSOCIATION incorporates by reference paragraphs one (1) through thirty-five (35) above, and further alleges:

47.       PRO-TECH is a subcontractor that provided labor, services and materials in the construction of HAMPTONS within the purview of Section 718.203, Florida Statutes.

48.       Pursuant to Section 718.203 (2), Florida Statutes, PRO-TECH, granted to the original Unit Owners, as well as all successor Unit Owners, implied warranties of fitness as to the work performed, and the materials supplied with regard to the construction of HAMPTONS and its improvements.

49.       PRO-TECH breached these warranties by failing in the design, construction, and improvements of the common elements and individual units of HAMPTONS, by the following:

A.       Delivering HAMPTONS to the ASSOCIATION with defects and deficiencies identified in the Report;

B.       Failing to construct HAMPTONS in compliance with the Florida Building Code;

C.       Failing to construct HAMPTONS, in compliance with the permitted plans and specifications;

D.       Failing to construct HAMPTONS in accordance with industry standards; and

E.       Constructing HAMPTONS with defects and deficiencies caused by faulty workmanship or defective work performed by the contractor's subcontractors and/or sub-subcontractors that has caused damage to other property located within, on and/or about

- 10 -

SE NO.: 08-21827 CA 27

HAMPTONS including physical injury to tangible property and/or resulting loss of use of that property.

50.   As a direct and proximate result of the aforesaid breaches of warranty, the ASSOCIATION has suffered damages and will continue to suffer damages, including, but not limited to, the following:

A.   Costs incurred to construct, repair and replace property located on the common elements and the individual units of HAMPTONS;

B.   Costs that will be incurred to construct, repair and replace property on the common elements and individual units of the HAMPTONS; and

C.   Costs incurred and costs that will be incurred to construct, repair and replace other property located at the AVENTURA.

WHEREFORE, Plaintiff, Hamptons South Condominium Association, Inc., demands judgment against Defendant, Pro-Tech Caulking & Waterproofing, Inc., for its damages, together with interest, costs, and such other relief as this Court may deem just and equitable.

## COUNT IV
## VIOLATION OF SECTION 553.84, FLORIDA STATUTES
## (PRO-TECH)

51.   The ASSOCIATION incorporates by reference paragraphs one (1) through thirty-five (35) above, and further alleges:

52.   Section 553.84, Florida Statutes (2005), expressly creates a statutory cause of action on behalf of any person damaged as a result of a violation of the State Minimum Building Codes Act (Sections 553.70, et seq., Florida Statutes), against the party or parties committing the violations.

53.   PRO-TECH was thus under a statutory duty to the ASSOCIATION and the individual Unit Owners, pursuant to the State Minimum Building Codes Act, to design, construct

- 11 -

SE NO.: 08-21827 CA 27

and deliver HAMPTONS in compliance with all applicable local, state, and national building codes and regulations.

54.   PRO-TECH in inspecting, designing, constructing and delivering HAMPTONS, failed to comply with all applicable local, state and national building codes and regulations, including, but not limited to, The Florida Building Code, in contravention of the State Minimum Building Codes Act.

55.   PRO-TECH in inspecting, designing, constructing and delivering the HAMPTONS, failed to comply with all applicable local, state and national building codes and regulations, knew or should have known that they were in violation of The Florida Building Code and in contravention of the State Minimum Building Codes Act.

56.   Due to PRO-TECH's failure in complying with aforementioned statutes and codes, HAMPTONS has suffered from construction defects and deficiencies, as outlined in the Report.

57.   As a direct and proximate result of the aforesaid code violations, the ASSOCIATION has suffered damages and will continue to suffer damages, including, but not limited to, the following:

A.   Costs incurred to repair and replace property located on the common elements and the individual units of HAMPTONS;

B.   Costs that will be incurred to construct, repair, and replace property on the common elements and the individual units of HAMPTONS; and

C.   Costs incurred and costs that will be incurred to construct, repair and replace other property located at the HAMPTONS.

WHEREFORE, Plaintiff, Hamptons South Condominium Association, Inc., demands judgment against Defendant, Pro-Tech Caulking & Waterproofing, Inc., for its damages, together with interest, costs, and such other relief as this Court may deem just and equitable.

- 12 -

SE NO.: 08-21827 CA 27

### COUNT V
### NEGLIGENCE
### (PRO-TECH)

58.     The ASSOCIATION Incorporates by reference paragraphs one (1) through thirty-five (35) above, and further alleges:

59.     PRO-TECH is a waterproofing subcontractor that provided labor, services and materials in the construction of the HAMPTONS and in particular, performed the construction, installation, and/or application of the waterproofing and waterproofing system(s) at the HAMPTONS.

60.     As the waterproofing subcontractor on the project, PRO-TECH had a duty to the ASSOCIATION to exercise reasonable care not to damage other property and to exercise reasonable care in performing its work at the HAMPTONS in compliance with the permitted plans and specifications, the Florida Building Code, and industry standards.

61.     PRO-TECH breached its duty to the ASSOCIATION by failing to correctly construct, install, and/or apply the waterproofing and waterproofing system(s) at the HAMPTONS, including, but not limited to, the following:

A.     Delivering the HAMPTONS to the ASSOCIATION with defects and deficiencies identified in the Report;

B.     Failing to construct and design the HAMPTONS in compliance with the Florida Building Code;

C.     Failing to construct and design the HAMPTONS, in compliance with the permitted plans and specifications;

D.     Failing to construct and design the HAMPTONS in accordance with industry standards; and

E.     Constructing the HAMPTONS with defects and deficiencies caused by faulty workmanship or defective work performed by the contractor's subcontractors and/or sub-subcontractors that has

- 13 -

.SE NO.: 08-21827 CA 27

caused damage to other property located within, on and/or about the HAMPTONS including physical injury to tangible property and/or resulting loss of use of that property.

62. As a direct and proximate result of PRO-TECH's negligence, the ASSOCIATION has suffered damages and will continue to suffer damages, including, but not limited to, the following:

    A. Costs incurred to construct, repair and replace property located on the common elements and the individual units of the HAMPTONS;

    B. Costs that will be incurred to construct, repair and replace property on the common elements and the individual units of the HAMPTONS; and

    C. Costs incurred and costs that will be incurred to construct, repair and replace other property located at the HAMPTONS.

WHEREFORE, Plaintiff, Hamptons South Condominium Association, Inc., demands judgment against Defendant, Pro-Tech Caulking & Waterproofing, Inc., for its damages, together with interest, costs, and such other relief as this Court may deem just and equitable.

## COUNT VI
## BREACH OF STATUTORY IMPLIED WARRANTIES
## SECTION 718.203, FLORIDA STATUTES
## (WHITE ALUMINUM)

63. The ASSOCIATION incorporates by reference paragraphs one (1) through thirty-five (35) above, and further alleges:

64. WHITE ALUMINUM is a subcontractor that provided labor, services and materials in the construction of HAMPTONS within the purview of Section 718.203, Florida Statutes.

65. Pursuant to Section 718.203 (2), Florida Statutes, WHITE ALUMINUM, granted to the original Unit Owners, as well as, all successor Unit Owners, implied warranties of fitness

- 14 -

SE NO.: 08-21827 CA 27

as to the work performed and the materials supplied with regard to the construction of HAMPTONS and its improvements.

66.    WHITE ALUMINUM breached these warranties by failing in the design, construction, and improvements of the common elements and individual units of HAMPTONS, by the following:

A.    Delivering HAMPTONS to the ASSOCIATION with defects and deficiencies identified in the Report;

B.    Failing to construct HAMPTONS in compliance with the Florida Building Code;

C.    Failing to construct HAMPTONS, in compliance with the permitted plans and specifications;

D.    Failing to construct HAMPTONS in accordance with industry standards; and

E.    Failing to construct HAMPTONS with defects and deficiencies caused by faulty workmanship or defective work performed by the contractor's subcontractors and/or sub-subcontractors that has caused damage to other property located within, on and/or about HAMPTONS including physical injury to tangible property and/or resulting loss of use of that property.

67.    As a direct and proximate result of the aforesaid breaches of warranty, the ASSOCIATION has suffered damages and will continue to suffer damages, including, but not limited to, the following:

A.    Costs incurred to construct, repair and replace property located on the common elements and the individual units of HAMPTONS;

- 15 -

CASE NO.: 08-21827 CA 27

B.      Costs that will be incurred to construct, repair and replace

property on the common elements and the individual units of the

HAMPTONS; and

C.      Costs incurred and costs that will be incurred to construct, repair

and replace other property located at the HAMPTONS.

WHEREFORE, Plaintiff, Hamptons South Condominium Association, Inc., demands

judgment against Defendant, White Aluminum Fabrication, Inc., for its damages, together with

interest, costs, and such other relief as this Court may deem just and equitable.

<div align="center">

**COUNT VII**
**VIOLATION OF SECTION 553.84, FLORIDA STATUTES**
**(WHITE ALUMINUM)**

</div>

68.      The ASSOCIATION incorporates by reference paragraphs one (1) through thirty-

five (35) above, and further alleges:

69.      Section 553.84, Florida Statutes (2005), expressly creates a statutory cause of

action on behalf of any person damaged as a result of a violation of the State Minimum Building

Codes Act (Sections 553.70, et seq., Florida Statutes), against the party or parties committing

the violations.

70.      WHITE ALUMINUM was thus under a statutory duty to the ASSOCIATION and

the individual Unit Owners, pursuant to the State Minimum Building Codes Act, to design,

construct and deliver HAMPTONS in compliance with all applicable local, state, and national

building codes and regulations.

71.      WHITE ALUMINUM in inspecting, designing, constructing and delivering

HAMPTONS failed to comply with all applicable local, state and national building codes and

regulations, including, but not limited to, The Florida Building Code, in contravention of the State

Minimum Building Codes Act.

<div align="center">

- 16 -

</div>

SE NO.: 08-21827 CA 27

72.   WHITE ALUMINUM in inspecting, designing, constructing and delivering HAMPTONS failed to comply with all applicable local, state and national building codes and regulations knew or should have known that they were in violation of The Florida Building Code and in contravention of the State Minimum Building Codes Act.

73.   Due to WHITE ALUMINUM's failure in complying with aforementioned statutes and codes, HAMPTONS has suffered from construction defects and deficiencies, as outlined in the Report.

74.   As a direct and proximate result of the aforesaid code violations, the ASSOCIATION has suffered damages and will continue to suffer damages, including, but not limited to, the following:

A.   Costs incurred to repair and replace property located on the common elements and the individual units of HAMPTONS;

B.   Costs that will be incurred to construct, repair, and replace property on the common elements and the individual units of HAMPTONS; and

C.   Costs incurred and costs that will be incurred to construct, repair and replace other property located at the HAMPTONS.

WHEREFORE, Plaintiff, Hamptons South Condominium Association, Inc., demands judgment against Defendant, White Aluminum Fabrication, Inc., for its damages, together with interest, costs, and such other relief as this Court may deem just and equitable.

COUNT VIII
NEGLIGENCE
(WHITE ALUMINUM)

75.   The ASSOCIATION Incorporates by reference paragraphs one (1) through thirty-five (35) above, and further alleges:

SIEGFRIED, RIVERA, LERNER, DE LA TORRE & SOBEL, P.A., ATTORNEYS AT LAW

CASE NO.: 08-21827 CA 27

76.   WHITE ALUMINUM is a waterproofing subcontractor that provided labor, services and materials in the construction of the HAMPTONS and in particular, performed the construction, installation, and/or application of the waterproofing and waterproofing system(s) at the HAMPTONS.

77.   As the waterproofing subcontractor on the project, WHITE ALUMINUM had a duty to the ASSOCIATION to exercise reasonable care not to damage other property and to exercise reasonable care in performing its work at the HAMPTONS in compliance with the permitted plans and specifications, the Florida Building Code, and industry standards.

78.   WHITE ALUMINUM breached its duty to the ASSOCIATION by failing to correctly construct, install, and/or apply the waterproofing and waterproofing system(s) at the HAMPTONS, including, but not limited to, the following:

A.   Delivering the HAMPTONS to the ASSOCIATION with defects and deficiencies identified in the Report;

B.   Failing to construct and design the HAMPTONS in compliance with the Florida Building Code;

C.   Failing to construct and design the HAMPTONS in compliance with the permitted plans and specifications;

D.   Failing to construct and design the HAMPTONS in accordance with industry standards; and

E.   Constructing the HAMPTONS with defects and deficiencies caused by faulty workmanship or defective work performed by the contractor's subcontractors and/or sub-subcontractors that has caused damage to other property located within, on and/or about the HAMPTONS including physical injury to tangible property and/or resulting loss of use of that property.

CASE NO.: 08-21827 CA 27

79.     As a direct and proximate result of WHITE ALUMINUM's negligence, the ASSOCIATION has suffered damages and will continue to suffer damages, including, but not limited to, the following:

    A.     Costs incurred to construct, repair and replace property located on the common elements and the individual units of the HAMPTONS;

    B.     Costs that will be incurred to construct, repair and replace property on the common elements and the individual units of the HAMPTONS; and

    C.     Costs incurred and costs that will be incurred to construct, repair and replace other property located at the HAMPTONS.

WHEREFORE, Plaintiff, Hamptons South Condominium Association, Inc., demands judgment against Defendant, White Aluminum Fabrication, Inc., for its damages, together with interest, costs, and such other relief as this Court may deem just and equitable.

<u>COUNT IX</u>
<u>BREACH OF STATUTORY IMPLIED WARRANTIES</u>
<u>SECTION 718.203, FLORIDA STATUTES</u>
<u>(IES)</u>

80.     The ASSOCIATION incorporates by reference paragraphs one (1) through thirty-five (35) above, and further alleges:

81.     IES is a subcontractor that provided labor, services and materials in the construction of HAMPTONS within the purview of Section 718.203, Florida Statutes.

82.     Pursuant to Section 718.203 (2), Florida Statutes, IES granted to the original Unit Owners, as well as all successor Unit Owners, implied warranties of fitness as to the work performed and the materials supplied with regard to the construction of HAMPTONS and its improvements.

83.     IES breached these warranties by failing in the design, construction, and improvements of the common elements and individual units of HAMPTONS, by the following:

- 19 -

CASE NO.: 08-21827 CA 27

A.   Delivering HAMPTONS to the ASSOCIATION with defects and deficiencies identified in the Report;

B.   Failing to construct HAMPTONS in compliance with the Florida Building Code;

C.   Failing to construct HAMPTONS, in compliance with the permitted plans and specifications;

D.   Failing to construct HAMPTONS in accordance with industry standards; and

E.   Failing to construct HAMPTONS with defects and deficiencies caused by faulty workmanship or defective work performed by the contractor's subcontractors and/or sub-subcontractors that has caused damage to other property located within, on and/or about HAMPTONS including physical injury to tangible property and/or resulting loss of use of that property.

84.   As a direct and proximate result of the aforesaid breaches of warranty, the ASSOCIATION has suffered damages and will continue to suffer damages, including, but not limited to, the following:

A.   Costs incurred to construct, repair and replace property located on the common elements and the individual units of HAMPTONS;

B.   Costs that will be incurred to construct, repair and replace property on the common elements and the individual units of HAMPTONS; and

C.   Costs incurred and costs that will be incurred to construct, repair and replace other property located at the HAMPTONS.

WHEREFORE, Plaintiff, Hamptons South Condominium Association, Inc., demands judgment against Defendant, IES Commercial, Inc., f/k/a Daniel Electrical Contractors, Inc., for

SIEGFRIED, RIVERA, LERNER, DE LA TORRE & SOBEL, P.A., ATTORNEYS AT LAW

SE NO.: 08-21827 CA 27

its damages, together with interest, costs, and such other relief as this Court may deem just and equitable.

## COUNT X
## VIOLATION OF SECTION 553.84, FLORIDA STATUTES
## (IES)

85.     The ASSOCIATION incorporates by reference paragraphs one (1) through thirty-five (35) above, and further alleges:

86.     Section 553.84, Florida Statutes (2005), expressly creates a statutory cause of action on behalf of any person damaged as a result of a violation of the State Minimum Building Codes Act (Sections 553.70, et seq., Florida Statutes) against the party or parties committing the violations.

87.     IES was thus under a statutory duty to the ASSOCIATION and the individual Unit Owners, pursuant to the State Minimum Building Codes Act, to design, construct and deliver HAMPTONS in compliance with all applicable local, state, and national building codes and regulations.

88.     IES in inspecting, designing, constructing and delivering HAMPTONS failed to comply with all applicable local, state and national building codes and regulations, including, but not limited to, The Florida Building Code, in contravention of the State Minimum Building Codes Act.

89.     IES in inspecting, designing, constructing and delivering HAMPTONS failed to comply with all applicable local, state and national building codes and regulations, knew or should have known that they were in violation of The Florida Building Code and in contravention of the State Minimum Building Codes Act.

90.     Due to IES' failure in complying with aforementioned statutes and codes, HAMPTONS has suffered from construction defects and deficiencies, as outlined in the Report.

- 21 -

CASE NO.: 08-21827 CA 27

91.    As a direct and proximate result of the aforesaid code violations, the ASSOCIATION has suffered damages and will continue to suffer damages, including, but not limited to, the following:

A.    Costs incurred to repair and replace property located on the common Elements and the individual units of HAMPTONS;

B.    Costs that will be incurred to construct, repair, and replace property on the common elements and the individual units of HAMPTONS; and

C.    Costs incurred and costs that will be incurred to construct, repair and replace other property located at the HAMPTONS.

WHEREFORE, Plaintiff, Hamptons South Condominium Association, Inc., demands judgment against Defendant, IES Commercial, Inc., f/k/a Daniel Contractors, Inc., for its damages, together with interest, costs, and such other relief as this Court may deem just and equitable.

## COUNT XI
## NEGLIGENCE
## (IES)

92.    The ASSOCIATION incorporates by reference paragraphs one (1) through thirty-five (35) above, and further alleges:

93.    IES is a waterproofing subcontractor that provided labor, services and materials in the construction of the HAMPTONS and in particular, performed the construction, installation, and/or application of the waterproofing and waterproofing system(s) at the HAMPTONS.

94.    As the waterproofing subcontractor on the project, IES had a duty to the ASSOCIATION to exercise reasonable care not to damage other property and to exercise reasonable care in performing its work at the HAMPTONS in compliance with the permitted plans and specifications, the Florida Building Code, and industry standards.

SIEGFRIED, RIVERA, LERNER, DE LA TORRE & SOBEL, P.A., ATTORNEYS AT LAW

SE NO.: 08-21827 CA 27

95.    IES breached its duty to the ASSOCIATION by failing to correctly construct, install, and/or apply the waterproofing and waterproofing system(s) at the HAMPTONS, including, but not limited to, the following:

    A.    Delivering the HAMPTONS to the ASSOCIATION with defects and deficiencies identified in the Report;

    B.    Failing to construct and design the HAMPTONS in compliance with the Florida Building Code;

    C.    Failing to construct and design the HAMPTONS, in compliance with the permitted plans and specifications;

    D.    Failing to construct and design the HAMPTONS in accordance with industry standards; and

    E.    Constructing the HAMPTONS with defects and deficiencies caused by faulty workmanship or defective work performed by the contractor's subcontractors and/or sub-subcontractors that has caused damage to other property located within, on and/or about the HAMPTONS including physical injury to tangible property and/or resulting loss of use of that property.

96.    As a direct and proximate result of IES' negligence, the ASSOCIATION has suffered damages and will continue to suffer damages, including, but not limited to, the following:

    A.    Costs incurred to construct, repair and replace property located on the common elements and the individual units of the HAMPTONS;

    B.    Costs that will be incurred to construct, repair and replace property on the common elements and the individual units of the HAMPTONS; and

- 23 -

SE NO.: 08-21827-CA 27

C.      Costs incurred and costs that will be incurred to construct, repair and replace other property located at the HAMPTONS.

WHEREFORE, Plaintiff, Hamptons South Condominium Association, Inc., demands judgment against Defendant, IES Commercial, Inc., f/k/a Daniel Contractors, Inc., for its damages, together with interest, costs, and such other relief as this Court may deem just and equitable.

**COUNT XII**
**BREACH OF STATUTORY IMPLIED WARRANTIES**
**SECTION 718.203, FLORIDA STATUTES**
**(SOUTHERN COAST)**

97.   The ASSOCIATION incorporates by reference paragraphs one (1) through thirty-five (35) above, and further alleges:

98.   SOUTHERN COAST is a subcontractor that provided labor, services and materials in the construction of the HAMPTONS within the purview of Section 718.203, Florida Statutes.

99.   Pursuant to Section 718.203 (2), Florida Statutes, SOUTHERN COAST granted to the original Unit Owners, as well as all successor Unit Owners, implied warranties of fitness as to the work performed and the materials supplied with regard to the construction of the HAMPTONS SOUTH and its improvements.

100.   SOUTHERN COAST breached these warranties by failing in the construction and improvements of the common elements and individual units of the HAMPTONS, by the following:

A.      Delivering the HAMPTONS to the ASSOCIATION with defects and deficiencies identified in the Report;

B.      Failing to construct the HAMPTONS in compliance with the Florida Building Code;

- 24 -

SIEGFRIED, RIVERA, LERNER, DE LA TORRE & SOBEL, P.A., ATTORNEYS AT LAW

CASE NO.: 08-21827 CA 27

C.   Failing to construct the HAMPTONS, in compliance with the permitted plans and specifications;

D.   Failing to construct the HAMPTONS in accordance with industry standards; and

E.   Constructing the HAMPTONS with defects and deficiencies caused by faulty workmanship or defective work performed by the contractor's subcontractors and/or sub-subcontractors that has caused damage to other property located within, on and/or about the HAMPTONS including physical injury to tangible property and/or resulting loss of use of that property.

101.   As a direct and proximate result of the aforesaid breaches of warranty, the ASSOCIATION has suffered damages and will continue to suffer damages, including, but not limited to, the following:

A.   Costs incurred to construct, repair and replace property located on the common elements and the individual units of the HAMPTONS; and

B.   Costs that will be incurred to construct, repair and replace property on the common elements and the individual units of the HAMPTONS; and

C.   Costs incurred and that will be incurred to construct, repair and replace other property located at the HAMPTONS.

WHEREFORE, Plaintiff, Hamptons South Condominium Association, Inc., demands judgment against Defendant, Southern Coast Enterprises, Inc., for its damages, together with interest, costs, and such other relief as this Court may deem just and equitable.

SE NO.: 08-21827 CA 27

## COUNT XIII
## VIOLATION OF SECTION 553.84, FLORIDA STATUTES
## (SOUTHERN COAST)

102.    The ASSOCIATION incorporates by reference paragraphs one (1) through thirty-five (35) above, and further alleges:

103.    Section 553.84, Florida Statutes (2005), expressly creates a statutory cause of action on behalf of any person damaged as a result of a violation of the State Minimum Building Codes Act (Sections 553.70, et seq., Florida Statutes) against the party or parties committing the violations.

104.    SOUTHERN COAST was thus under a statutory duty to the ASSOCIATION and the individual Unit Owners, pursuant to the State Minimum Building Codes Act, to construct and deliver the HAMPTONS in compliance with all applicable local, state, and national building codes and regulations.

105.    SOUTHERN COAST in inspecting, designing, constructing and delivering the HAMPTONS failed to comply with all applicable local, state and national building codes and regulations, including, but not limited to, The Florida Building Code, in contravention of the State Minimum Building Codes Act.

106.    SOUTHERN COAST in inspecting, designing, constructing and delivering the HAMPTONS failed to comply with all applicable local, state and national building codes and regulations, knew or should have known that they were in violation of The Florida Building Code and in contravention of the State Minimum Building Codes Act.

107.    Due to SOUTHERN COAST's failure in complying with aforementioned statutes and codes, the HAMPTONS has suffered from construction defects and deficiencies, as outlined in the Report.

108.    As a direct and proximate result of the aforesaid code violations, the ASSOCIATION has suffered damages and will continue to suffer damages, including, but not limited to, the following:

SIEGFRIED, RIVERA, LERNER, DE LA TORRE & SOBEL, P.A. ATTORNEYS AT LAW

SE NO.: 08-21827 CA 27

A.    Costs incurred to repair and replace property located on the common elements and the individual units of the HAMPTONS;

B.    Costs that will be incurred to construct, repair, and replace property on the common elements and the individual units of the HAMPTONS, and

C.    Costs incurred and costs that will be incurred to construct, repair and replace other property located at the HAMPTONS.

WHEREFORE, Plaintiff, Hamptons South Condominium Association, Inc., demands judgment against Defendant, Southern Coast Enterprises, Inc., for its damages, together with interest, costs, and such other relief as this Court may deem just and equitable.

### COUNT XIV
### NEGLIGENCE
### (SOUTHERN COAST)

109.    The ASSOCIATION incorporates by reference paragraphs one (1) through thirty-five (35) above, and further alleges:

110.    SOUTHERN COAST is a roofing subcontractor that provided labor, services and materials in the construction of the HAMPTONS and in particular, performed the construction and installation of the roof and roof system(s) at the HAMPTONS.

111.    As the roofing subcontractor on the project, SOUTHERN COAST had a duty to the ASSOCIATION to exercise reasonable care not to damage other property and to exercise reasonable care in performing its work in compliance with the permitted plans and specifications, the Florida Building Code, and industry standards.

112.    SOUTHERN COAST breached its duty to the ASSOCIATION by failing to correctly construct the roof and roof system(s) at the HAMPTONS, including, but not limited to, the following:

- 27 -

CASE NO.: 08-21827 CA 27

A.   Delivering the HAMPTONS to the ASSOCIATION with defects and deficiencies identified in the Report;

B.   Failing to construct the HAMPTONS in compliance with the Florida Building Code;

C.   Failing to construct the HAMPTONS, in compliance with the permitted plans and specifications;

D.   Failing to construct the HAMPTONS in accordance with industry standards; and

E.   Constructing the HAMPTONS with defects and deficiencies caused by faulty workmanship or defective work performed by the contractor's subcontractors and/or sub-subcontractors that has caused damage to other property located within, on and/or about the HAMPTONS including physical injury to tangible property and/or resulting loss of use of that property;

113.   As a direct and proximate result of SOUTHERN COAST's negligence, the ASSOCIATION has suffered damages and will continue to suffer damages, including, but not limited to, the following:

A.   Costs incurred to construct, repair and replace property located on the common elements and the individual units of the HAMPTONS;

B.   Costs that will be incurred to construct, repair and replace property on the common elements and the individual units of the HAMPTONS;

C.   Costs incurred and that will be incurred to construct, repair and replace other property located at the HAMPTONS.

ASE NO.: 08-21827 CA 27

WHEREFORE, Plaintiff, Hamptons South Condominium Association, Inc., demands judgment against Defendant, Southern Coast Enterprises, Inc., for its damages, together with interest, costs, and such other relief as this Court may deem just and equitable.

## COUNT XV
## BREACH OF STATUTORY IMPLIED WARRANTIES
## SECTION 718.203, FLORIDA STATUTES
## (TANGO)

114.   The ASSOCIATION incorporates by reference paragraphs one (1) through thirty-five (35) above, and further alleges:

115.   TANGO is a material supplier that provided materials in the construction of the HAMPTONS within the purview of Section 718.203, Florida Statutes.

116.   Pursuant to Section 718.203 (2), Florida Statutes, TANGO granted to the original Unit Owners, as well as all successor Unit Owners, implied warranties of fitness as to the materials supplied in the construction of the HAMPTONS and its improvements.

117.   TANGO breached the implied warranties of fitness by supplying defective materials to the common elements and individual units of the HAMPTONS, by the following:

A.   Delivering the HAMPTONS to the ASSOCIATION with defects and deficiencies identified in the Report;

B.   Failing to supply appliances to the HAMPTONS in compliance with the Florida Building Code;

C.   Failing to supply appliances to the HAMPTONS, in compliance with the permitted plans and specifications;

D.   Failing to supply appliances to the HAMPTONS in accordance with industry standards; and

E.   Constructing the HAMPTONS with defects and deficiencies caused by faulty workmanship or defective work performed by the contractor's subcontractors and/or sub-subcontractors that has

- 29 -

SE NO.: 08-21827 CA 27

caused damage to other property located within, on and/or about the HAMPTONS including physical injury to tangible property and/or resulting loss of use of that property.

118.   As a direct and proximate result of the aforesaid breaches of warranty, the ASSOCIATION has suffered damages and will continue to suffer damages, including, but not limited to, the following:

A.   Costs incurred to repair and replace property located on the common elements and the individual units of the HAMPTONS;

B.   Costs that will be incurred to repair and replace property on the common elements and the individual units of the HAMPTONS; and

C.   Costs incurred and costs that will be incurred to repair and replace other property located at the HAMPTONS;

WHEREFORE, Plaintiff, Hamptons South Condominium Association, Inc., demands judgment against Defendant, Tango Imports, Inc., a/k/a Tango Imports, LLC, for its damages, together with interest, costs, and such other relief as this Court may deem just and equitable.

## COUNT XVI
## NEGLIGENCE
## (TANGO)

119.   The ASSOCIATION incorporates by reference paragraphs one (1) through thirty-five (35) above, and further alleges:

120.   TANGO is a pool subcontractor that provided labor, services and materials in the construction of the HAMPTONS and in particular, performed the construction and installation of the pool and pool system(s) at the HAMPTONS.

121.   As the pool subcontractor on the project, TANGO had a duty to the ASSOCIATION to exercise reasonable care not to damage other property and to exercise

- 30 -

SE NO.: 08-21827 CA 27

reasonable care in performing its work in compliance with the permitted plans and specifications, the Florida Building Code, and industry standards.

122.   TANGO breached its duty to the ASSOCIATION by failing to correctly construct and install the pool and pool system(s) at the HAMPTONS, including, but not limited to, the following:

A.   Delivering the HAMPTONS to the ASSOCIATION with defects and deficiencies identified in the Report;

B.   Failing to construct and design the HAMPTONS in compliance with the Florida Building Code;

C.   Failing to construct and design the HAMPTONS, in compliance with the permitted plans and specifications;

D.   Failing to construct and design the HAMPTONS in accordance with industry standards; and

E.   Constructing the HAMPTONS with defects and deficiencies caused by faulty workmanship or defective work performed by the contractor's subcontractors and/or sub-subcontractors that has caused damage to other property located within, on and/or about the HAMPTONS including physical injury to tangible property and/or resulting loss of use of that property.

123.   As a direct and proximate result of TANGO's negligence, the ASSOCIATION has suffered damages and will continue to suffer damages, including, but not limited to, the following:

A.   Costs incurred to construct, repair and replace property located on the common elements and the individual units of the HAMPTONS;

CASE NO.: 08-21827-CA 27

B.     Costs that will be incurred to construct, repair and replace property on the common elements and the individual units of the HAMPTONS; and

C.     Costs incurred and that will be incurred to construct, repair and replace other property located at the HAMPTONS.

WHEREFORE, Plaintiff, Hamptons South Condominium Association, Inc., demands Judgment against Defendant, Tango Imports, Inc., a/k/a Tango Imports, LLC, for its damages, together with interest, costs, and such other relief as this Court may deem just and equitable.

## COUNT XVII
## BREACH OF STATUTORY IMPLIED WARRANTIES
## SECTION 718.203, FLORIDA STATUTES
## (GREEN)

124.   The ASSOCIATION incorporates by reference paragraphs one (1) through thirty-five (35) above, and further alleges:

125.   GREEN is a subcontractor that provided labor, services and materials in the construction of the HAMPTONS within the purview of Section 718.203, Florida Statutes.

126.   Pursuant to Section 718.203 (2), Florida Statutes, GREEN granted to the original Unit Owners, as well as all successor Unit Owners, implied warranties of fitness as to the work performed and the materials supplied with regard to the construction of the HAMPTONS and its improvements.

127.   GREEN breached these warranties by failing in the construction and improvements of the common elements and individual units of the HAMPTONS, by the following:

A.     Delivering the HAMPTONS to the ASSOCIATION with defects and deficiencies identified in the Report;

B.     Failing to construct the HAMPTONS in compliance with the Florida Building Code;

CASE NO.: 08-21827 CA 27

C.   Failing to construct the HAMPTONS, in compliance with the permitted plans and specifications;

D.   Failing to construct the HAMPTONS in accordance with industry standards; and

E.   Constructing the HAMPTONS with defects and deficiencies caused by faulty workmanship or defective work performed by the contractor's subcontractors and/or sub-subcontractors that has caused damage to other property located within, on and/or about the HAMPTONS including physical injury to tangible property and/or resulting loss of use of that property.

128.   As a direct and proximate result of the aforesaid breaches of warranty, the ASSOCIATION has suffered damages and will continue to suffer damages, including, but not limited to, the following:

A.   Costs incurred to construct, repair and replace property located on the common elements and the individual units of the HAMPTONS;

B.   Costs that will be incurred to construct, repair and replace property on the common elements and the individual units of the HAMPTONS; and

C.   Costs incurred and costs that will be incurred to construct, repair and replace other property located at the HAMPTONS.

WHEREFORE, Plaintiff, Hamptons South Condominium Association, Inc., demands judgment against Defendant, Edwin M. Green, Inc., for its damages, together with interest, costs, and such other relief as this Court may deem just and equitable.

SIEGFRIED, RIVERA, LERNER, DE LA TORRE & SOBEL, P.A., ATTORNEYS AT LAW

CASE NO.: 08-21827-CA 27

## COUNT XVIII
## VIOLATION OF SECTION 553.84, FLORIDA STATUTES
## (GREEN)

129.   The ASSOCIATION incorporates by reference paragraphs one (1) through thirty-five (35) above, and further alleges:

130.   Section 553.84, Florida Statutes (2005), expressly creates a statutory cause of action on behalf of any person damaged as a result of a violation of the State Minimum Building Codes Act (Sections 553.70, et seq., Florida Statutes) against the party or parties committing the violations.

131.   GREEN was thus under a statutory duty to the ASSOCIATION and the individual Unit Owners, pursuant to the State Minimum Building Codes Act, to construct and deliver the HAMPTONS in compliance with all applicable local, state, and national building codes and regulations.

132.   GREEN in inspecting, constructing, and delivering the HAMPTONS failed to comply with all applicable local, state and national building codes and regulations, including, but not limited to, The Florida Building Code, in contravention of the State Minimum Building Codes Act.

133.   GREEN in inspecting, constructing, and delivering the HAMPTONS failed to comply with all applicable local, state and national building codes and regulations, knew or should have known that they were in violation of The Florida Building Code and in contravention of the State Minimum Building Codes Act.

134.   Due to GREEN's failure in complying with aforementioned statutes and codes, the HAMPTONS has suffered from construction defects and deficiencies, as outlined in the Report.

135.   As a direct and proximate result of the aforesaid code violations, the ASSOCIATION has suffered damages and will continue to suffer damages, including, but not limited to, the following:

- 34 -

SE NO.: 08-21827 CA 27

A.   Costs incurred to repair and replace property located on the common elements and the individual units of the HAMPTONS;

B.   Costs that will be incurred to construct, repair, and replace property on the common elements and the individual units of the HAMPTONS; and

C.   Costs incurred and costs that will be incurred to construct, repair and replace other property located at the HAMPTONS.

WHEREFORE, Plaintiff, Hamptons South Condominium Association, Inc., demands judgment against Defendant, Edwin M. Green, Inc., for its damages, together with interest, costs, and such other relief as this Court may deem just and equitable.

<u>COUNT XIX</u>
<u>NEGLIGENCE</u>
<u>(GREEN)</u>

136.   The ASSOCIATION incorporates by reference paragraphs one (1) through thirty-five (35) above, and further alleges:

137.   GREEN is a pool subcontractor that provided labor, services and materials in the construction of the HAMPTONS and in particular, performed the construction and installation of the pool and pool system(s) at the HAMPTONS.

138.   As the pool subcontractor on the project, GREEN had a duty to the ASSOCIATION to exercise reasonable care not to damage other property and to exercise reasonable care in performing its work in compliance with the permitted plans and specifications, the Florida Building Code, and industry standards.

139.   GREEN breached its duty to the ASSOCIATION by failing to correctly construct and install the pool and pool system(s) at the HAMPTONS, including, but not limited to, the following:

CASE NO.: 08-21827 CA 27

A.   Delivering the HAMPTONS to the ASSOCIATION with defects and deficiencies identified in the Report;

B.   Failing to construct and design the HAMPTONS in compliance with the Florida Building Code;

C.   Failing to construct and design the HAMPTONS, in compliance with the permitted plans and specifications;

D.   Failing to construct and design the HAMPTONS in accordance with industry standards; and

E.   Constructing the HAMPTONS with defects and deficiencies caused by faulty workmanship or defective work performed by the contractor's subcontractors and/or sub-subcontractors that has caused damage to other property located within, on and/or about the HAMPTONS including physical injury to tangible property and/or resulting loss of use of that property.

140.   As a direct and proximate result of GREEN's negligence, the ASSOCIATION has suffered damages and will continue to suffer damages, including, but not limited to, the following:

A.   Costs incurred to construct, repair and replace property located on the common elements and the individual units of the HAMPTONS;

B.   Costs that will be incurred to construct, repair and replace property on the common elements and the individual units of the HAMPTONS; and

C.   Costs incurred and that will be incurred to construct, repair and replace other property located at the HAMPTONS.

- 36 -

CASE NO.: 08-21827 CA 27

WHEREFORE, Plaintiff, Hamptons South Condominium Association, Inc., demands judgment against Defendant, Edwin M. Green, Inc., for its damages, together with interest, costs, and such other relief as this Court may deem just and equitable.

## COUNT XX
## BREACH OF STATUTORY IMPLIED WARRANTIES
## SECTION 718.203, FLORIDA STATUTES
## (RC ALUMINUM)

141.   The ASSOCIATION incorporates by reference paragraphs one (1) through thirty-five (35) above, and further alleges:

142.   RC ALUMINUM is a subcontractor that provided labor, services and materials in the construction of HAMPTONS within the purview of Section 718.203, Florida Statutes.

143.   Pursuant to Section 718.203 (2), Florida Statutes, RC ALUMINUM, granted to the original Unit Owners, as well as all successor Unit Owners, implied warranties of fitness as to the work performed, and the materials supplied with regard to the construction of HAMPTONS and its improvements.

144.   RC ALUMINUM breached these warranties by failing in the design, construction, and improvements of the common elements and individual units of HAMPTONS, by the following:

A.   Delivering HAMPTONS to the ASSOCIATION with defects and deficiencies identified in the Report;

B.   Failing to construct HAMPTONS in compliance with the Florida Building Code;

C.   Failing to construct HAMPTONS, in compliance with the permitted plans and specifications;

D.   Failing to construct HAMPTONS in accordance with industry standards; and

CASE NO.: 08-21827 CA 27

  E.  Constructing HAMPTONS with defects and deficiencies caused by faulty workmanship or defective work performed by the contractor's subcontractors and/or sub-subcontractors that has caused damage to other property located within, on and/or about HAMPTONS including physical injury to tangible property and/or resulting loss of use of that property.

  145. As a direct and proximate result of the aforesaid breaches of warranty, the ASSOCIATION has suffered damages and will continue to suffer damages, including, but not limited to, the following:

  A.  Costs incurred to construct, repair and replace property located on the common elements and the individual units of HAMPTONS;

  B.  Costs that will be incurred to construct, repair and replace property on the common elements and individual units of the HAMPTONS; and

  C.  Costs incurred and costs that will be incurred to construct, repair and replace other property located at the AVENTURA.

  WHEREFORE, Plaintiff, Hamptons South Condominium Association, Inc., demands judgment against Defendant, RC Aluminum Industries, Inc., for its damages, together with interest, costs, and such other relief as this Court may deem just and equitable.

<div align="center">

**COUNT XXI**
**VIOLATION OF SECTION 553.84, FLORIDA STATUTES**
**(RC ALUMINUM)**

</div>

  146. The ASSOCIATION incorporates by reference paragraphs one (1) through thirty-five (35) above, and further alleges:

  147. Section 553.84, Florida Statutes (2005), expressly creates a statutory cause of action on behalf of any person damaged as a result of a violation of the State Minimum Building

CASE NO.: 08-21827 CA 27

Codes Act (Sections 553.70, *et seq.*, Florida Statutes), against the party or parties committing the violations.

148.    RC ALUMINUM was thus under a statutory duty to the ASSOCIATION and the Individual Unit Owners, pursuant to the State Minimum Building Codes Act, to design, construct and deliver HAMPTONS in compliance with all applicable local, state, and national building codes and regulations.

149.    RC ALUMINUM in inspecting, designing, constructing and delivering HAMPTONS, failed to comply with all applicable local, state and national building codes and regulations, including, but not limited to, The Florida Building Code, in contravention of the State Minimum Building Codes Act.

150.    RC ALUMINUM in inspecting, designing, constructing and delivering the HAMPTONS, failed to comply with all applicable local, state and national building codes and regulations, knew or should have known that they were in violation of The Florida Building Code and in contravention of the State Minimum Building Codes Act.

151.    Due to RC ALUMINUM's failure in complying with aforementioned statutes and codes, HAMPTONS has suffered from construction defects and deficiencies, as outlined in the Report.

152.    As a direct and proximate result of the aforesaid code violations, the ASSOCIATION has suffered damages and will continue to suffer damages, including, but not limited to, the following:

> A.    Costs incurred to repair and replace property located on the common elements and the individual units of HAMPTONS;
>
> B.    Costs that will be incurred to construct, repair, and replace property on the common elements and the individual units of HAMPTONS; and

C.    Costs incurred and costs that will be incurred to construct, repair and replace other property located at the HAMPTONS.

WHEREFORE, Plaintiff, Hamptons South Condominium Association, Inc., demands judgment against Defendant, RC Aluminum Industries, Inc., for its damages, together with interest, costs, and such other relief as this Court may deem just and equitable.

<div align="center">

**COUNT XXII**
**NEGLIGENCE**
**(RC ALUMINUM)**

</div>

153.    The ASSOCIATION incorporates by reference paragraphs one (1) through thirty-five (35) above, and further alleges:

154.    RC ALUMINUM is a waterproofing subcontractor that provided labor, services and materials in the construction of the HAMPTONS and in particular, performed the construction, installation, and/or application of the waterproofing and waterproofing system(s) at the HAMPTONS.

155.    As the waterproofing subcontractor on the project, RC ALUMINUM had a duty to the ASSOCIATION to exercise reasonable care not to damage other property and to exercise reasonable care in performing its work at the HAMPTONS in compliance with the permitted plans and specifications, the Florida Building Code, and industry standards.

156.    RC ALUMINUM breached its duty to the ASSOCIATION by failing to correctly construct, install, and/or apply the waterproofing and waterproofing system(s) at the HAMPTONS, including, but not limited to, the following:

A.    Delivering the HAMPTONS to the ASSOCIATION with defects and deficiencies identified in the Report;

B.    Failing to construct and design the HAMPTONS in compliance with the Florida Building Code;

<div align="center">

- 40 -

</div>

CASE NO.: 08-21827 CA 27

C.     Failing to construct and design the HAMPTONS, in compliance with the permitted plans and specifications;

D.     Failing to construct and design the HAMPTONS in accordance with industry standards; and

E.     Constructing the HAMPTONS with defects and deficiencies caused by faulty workmanship or defective work performed by the contractor's subcontractors and/or sub-subcontractors that has caused damage to other property located within, on and/or about the HAMPTONS including physical injury to tangible property and/or resulting loss of use of that property.

157.   As a direct and proximate result of RC ALUMINUM's negligence, the ASSOCIATION has suffered damages and will continue to suffer damages, including, but not limited to, the following:

A.     Costs incurred to construct, repair and replace property located on the common elements and the individual units of the HAMPTONS;

B.     Costs that will be incurred to construct, repair and replace property on the common elements and the individual units of the HAMPTONS; and

C.     Costs incurred and costs that will be incurred to construct, repair and replace other property located at the HAMPTONS.

WHEREFORE, Plaintiff, Hamptons South Condominium Association, Inc., demands judgment against Defendant, RC Aluminum Industries, Inc., for its damages, together with interest, costs, and such other relief as this Court may deem just and equitable.

- 41 -

CASE NO.: 08-21827 CA 27

## COUNT XXIII
## BREACH OF STATUTORY IMPLIED WARRANTIES
## SECTION 718.203, FLORIDA STATUTES
## (MCCOURT)

158.   The ASSOCIATION incorporates by reference paragraphs one (1) through thirty-five (35) above, and further alleges:

159.   MCCOURT is a sub contractor that provided labor, services and materials in the security system of the HAMPTONS within the purview of Section 718.203, Florida Statutes.

160.   Pursuant to Section 718.203 (2), Florida Statutes, MCCOURT granted to the original Unit Owners, as well as all successor Unit Owners, implied warranties of fitness as to the work performed and the materials supplied with regard to the construction of the HAMPTONS and its improvements.

161.   MCCOURT breached these warranties by failing in the construction and improvements of the common elements and individual units of the HAMPTONS, by the following:

A.   Delivering the HAMPTONS to the ASSOCIATION with defects and deficiencies identified in the Report;

B.   Failing to construct the HAMPTONS in compliance with the Florida Building Code;

C.   Failing to construct the HAMPTONS, in compliance with the permitted plans and specifications;

D.   Failing to construct the HAMPTONS in accordance with industry standards; and

E.   Constructing the HAMPTONS with defects and deficiencies caused by faulty workmanship or defective work performed by the contractor's subcontractors and/or sub-subcontractors that has

CASE NO.: 08-21827 CA 27

caused damage to other property located within, on and/or about the HAMPTONS including physical injury to tangible property and/or resulting loss of use of that property.

162.   As a direct and proximate result of the aforesaid breaches of warranty, the ASSOCIATION has suffered damages and will continue to suffer damages, including, but not limited to, the following:

A.   Costs incurred to construct, repair and replace property located on the common elements and the individual units of the HAMPTONS; and

B.   Costs that will be incurred to construct, repair and replace property on the common elements and the individual units of the HAMPTONS; and

C.   Costs incurred and that will be incurred to construct, repair and replace other property located at the HAMPTONS.

WHEREFORE, Plaintiff, Hamptons South Condominium Association, Inc., demands judgment against Defendant, McCourt Construction, Inc., for its damages, together with interest, costs, and such other relief as this Court may deem just and equitable.

## COUNT XXIV
## NEGLIGENCE
## (MCCOURT)

163.   The ASSOCIATION incorporates by reference paragraphs one (1) through thirty-five (35) above, and further alleges:

164.   MCCOURT is a security subcontractor that provided labor, services and materials in the construction of the HAMPTONS and in particular, performed the construction and installation of the security components and system(s) at the HAMPTONS.

165. As the security subcontractor on the project, MCCOURT had a duty to the ASSOCIATION to exercise reasonable care not to damage other property and to exercise reasonable care in performing its work in compliance with the permitted plans and specifications, the Florida Building Code, and industry standards.

166. MCCOURT breached its duty to the ASSOCIATION by failing to correctly construct and install the security components and system(s) located at the HAMPTONS, including, but not limited to, the following:

A. Delivering the HAMPTONS to the ASSOCIATION with defects and deficiencies identified in the Report;

B. Failing to construct the HAMPTONS in compliance with the Florida Building Code;

C. Failing to construct the HAMPTONS, in compliance with the permitted plans and specifications;

D. Failing to construct the HAMPTONS in accordance with industry standards; and

E. Constructing the HAMPTONS with defects and deficiencies caused by faulty workmanship or defective work performed by the contractor's subcontractors and/or sub-subcontractors that has caused damage to other property located within, on and/or about the HAMPTONS including physical injury to tangible property and/or resulting loss of use of that property.

167. As a direct and proximate result of MCCOURT's negligence, the ASSOCIATION has suffered damages and will continue to suffer damages, including, but not limited to, the following:

A. Costs incurred to construct, repair and replace property located on the common elements and the individual units of the HAMPTONS;

- 44 -

CASE NO.: 08-21827 CA 27

B.   Costs that will be incurred to construct, repair and replace property on the common elements and the individual units of the HAMPTONS; and

C.   Costs incurred and that will be incurred to construct, repair and replace other property located at the HAMPTONS.

WHEREFORE, Plaintiff, Hamptons South Condominium Association, Inc., demands judgment against Defendant, McCourt Construction, Inc., for its damages, together with interest, costs, and such other relief as this Court may deem just and equitable.

### COUNT XXV
### PROFESSIONAL NEGLIGENCE
### (CFEA)

168.   The ASSOCIATION incorporates by reference paragraphs one (1) through thirty-five (35) above, and further alleges:

169.   CFEA was retained as the architect of record for the design of the HAMPTONS and was paid and undertook to provide architectural services, drawings, plans, and specifications for the construction of the HAMPTONS.  CFEA knew and intended that the foreseeable unit purchasers and the members of the ASSOCIATION would rely upon the architectural services, plans, specifications, and drawings.

170.   CFEA, as a professional licensed entity, owed a duty of care to foreseeable unit purchasers and members of the ASSOCIATION to properly prepare the drawings, plans, and specifications and perform and provide professional architectural services in accordance with the standards and practice of its industry and to exercise a reasonable degree of skill and care to insure that the construction of the HAMPTONS complied with governmentally approved plans and specifications, the Florida Building Code, the State Minimum Building Codes Act, and in accordance with the professional standards of an architect responsible for the design of a condominium building.

CASE NO.: 08-21827 CA 27

171.   CFEA failed to exercise a reasonable degree of skill and care in providing professional architectural services and failed to perform its services in accordance with the standard of care used by similar professionals in the community under similar circumstances, including, but not limited to, the following:

     A.    Failing to exercise a reasonable degree of skill and care in designing the architectural components of the HAMPTONS;

     B.    Failing to exercise a reasonable degree of skill and care in designing the HAMPTONS, as demonstrated by the design deficiencies identified in the Report; and

     C.    Failing to exercise a reasonable degree of skill and care in performing inspections of the HAMPTONS to insure compliance with the governmentally approved plans and specifications, the Florida Building Code, the State Minimum Building Codes Act, and industry standards.

172.   As a direct and proximate result of the aforesaid professional negligence, the ASSOCIATION has suffered damages and will continue to suffer damages, including, but not limited to, the following:

     A.    Costs that have been incurred to repair and replace damaged property on the common elements and the individual units of the HAMPTONS;

     B.    Costs that will be incurred to repair and replace damaged property on the common elements and the individual units of the HAMPTONS; and

     C.    Costs incurred and costs that will be incurred to construct, repair and replace other property located at the HAMPTONS.

CASE NO.: 08-21827 CA 27

WHEREFORE, Plaintiff, Hamptons South Condominium Association, Inc., demands judgment against Defendant, Cohen, Freedman, Encinosa & Associates – Architects, P.A., for its damages, together with interest, costs, and such other relief as this Court may deem just and equitable.

## COUNT XXVI
### BREACH OF STATUTORY IMPLIED WARRANTIES
### SECTION 718.203, FLORIDA STATUTES
### (SOUTHLAND)

173. The ASSOCIATION incorporates by reference paragraphs one (1) through thirty-five (35) above, and further alleges:

174. SOUTHLAND is a sub contractor that provided labor, services and materials in the security system of the HAMPTONS within the purview of Section 718.203, Florida Statutes.

175. Pursuant to Section 718.203 (2), Florida Statutes, SOUTHLAND granted to the original Unit Owners, as well as all successor Unit Owners, implied warranties of fitness as to the work performed and the materials supplied with regard to the construction of the HAMPTONS and its improvements.

176. SOUTHLAND breached these warranties by failing in the construction and improvements of the common elements and individual units of the HAMPTONS, by the following:

    A.    Delivering the HAMPTONS to the ASSOCIATION with defects and deficiencies identified in the Report;

    B.    Failing to construct the HAMPTONS in compliance with the Florida Building Code;

    C.    Failing to construct the HAMPTONS, in compliance with the permitted plans and specifications;

    D.    Failing to construct the HAMPTONS in accordance with industry standards; and

- 47 -

CASE NO.: 08-21827 CA 27

E.   Constructing the HAMPTONS with defects and deficiencies caused by faulty workmanship or defective work performed by the contractor's subcontractors and/or sub-subcontractors that has caused damage to other property located within, on and/or about the HAMPTONS including physical injury to tangible property and/or resulting loss of use of that property.

177.   As a direct and proximate result of the aforesaid breaches of warranty, the ASSOCIATION has suffered damages and will continue to suffer damages, including, but not limited to, the following:

A.   Costs incurred to construct, repair and replace property located on the common elements and the individual units of the HAMPTONS;

B.   Costs that will be incurred to construct, repair and replace property on the common elements and the individual units of the HAMPTONS; and

C.   Costs incurred and that will be incurred to construct, repair and replace other property located at the HAMPTONS.

WHEREFORE, Plaintiff, Hamptons South Condominium Association, Inc., demands judgment against Defendant, Southland Forming, Inc., for its damages, together with interest, costs, and such other relief as this Court may deem just and equitable.

## COUNT XXVI
## VIOLATION OF SECTION 553.84, FLORIDA STATUTES
## (SOUTHLAND)

178.   The ASSOCIATION incorporates by reference paragraphs one (1) through thirty-five (35) above, and further alleges:

179.   Section 553.84, Florida Statutes (2005), expressly creates a statutory cause of action on behalf of any person damaged as a result of a violation of the State Minimum Building

CASE NO.: 08-21827 CA 27

Codes Act (Sections 553.70, et seq., Florida Statutes), against the party or parties committing the violations.

180.   SOUTHLAND was thus under a statutory duty to the ASSOCIATION and the Individual Unit Owners, pursuant to the State Minimum Building Codes Act, to design, construct and deliver HAMPTONS in compliance with all applicable local, state, and national building codes and regulations.

181.   SOUTHLAND in inspecting, designing, constructing and delivering HAMPTONS, failed to comply with all applicable local, state and national building codes and regulations, including, but not limited to, The Florida Building Code, in contravention of the State Minimum Building Codes Act.

182.   SOUTHLAND in inspecting, designing, constructing and delivering the HAMPTONS, failed to comply with all applicable local, state and national building codes and regulations, knew or should have known that they were in violation of The Florida Building Code and in contravention of the State Minimum Building Codes Act.

183.   Due to SOUTHLAND's failure in complying with aforementioned statutes and codes, HAMPTONS has suffered from construction defects and deficiencies, as outlined in the Report.

184.   As a direct and proximate result of the aforesaid code violations, the ASSOCIATION has suffered damages and will continue to suffer damages, including, but not limited to, the following:

A.   Costs incurred to repair and replace property located on the common elements and the individual units of HAMPTONS;

B.   Costs that will be incurred to construct, repair, and replace property on the common elements and the individual units of HAMPTONS; and

CASE NO.: 08-21827 CA 27

    C.    Costs incurred and costs that will be incurred to construct, repair

and replace other property located at the HAMPTONS.

WHEREFORE, Plaintiff, Hamptons South Condominium Association, Inc., demands

judgment against Defendant, Southland Forming, Inc., for its damages, together with interest,

costs, and such other relief as this Court may deem just and equitable.

<div align="center">

**COUNT XVIII**
**NEGLIGENCE**
**(SOUTHLAND)**

</div>

185.    The ASSOCIATION incorporates by reference paragraphs one (1) through thirty-

five (35) above, and further alleges:

186.    SOUTHLAND FORMING is a security subcontractor that provided labor, services

and materials in the construction of the HAMPTONS and in particular, performed the

construction and installation of the security components and system(s) at the HAMPTONS.

187.    As the security subcontractor on the project, SOUTHLAND FORMING had a duty

to the ASSOCIATION to exercise reasonable care not to damage other property and to exercise

reasonable care in performing its work in compliance with the permitted plans and

specifications, the Florida Building Code, and industry standards.

188.    SOUTHLAND FORMING breached its duty to the ASSOCIATION by failing to

correctly construct and install the security components and system(s) located at the

HAMPTONS, including, but not limited to, the following:

    A.    Delivering the HAMPTONS to the ASSOCIATION with defects

        and deficiencies identified in the Report;

    B.    Failing to construct the HAMPTONS in compliance with the

        Florida Building Code;

    C.    Failing to construct the HAMPTONS, in compliance with the

        permitted plans and specifications;

CASE NO.: 08-21827 CA 27

D.   Failing to construct the HAMPTONS in accordance with industry standards; and

E.   Constructing the HAMPTONS with defects and deficiencies caused by faulty workmanship or defective work performed by the contractor's subcontractors and/or sub-subcontractors that has caused damage to other property located within, on and/or about the HAMPTONS including physical injury to tangible property and/or resulting loss of use of that property.

189.   As a direct and proximate result of SOUTHLAND FORMING's negligence, the ASSOCIATION has suffered damages and will continue to suffer damages, including, but not limited to, the following:

A.   Costs incurred to construct, repair and replace property located on the common elements and the individual units of the HAMPTONS;

B.   Costs that will be incurred to construct, repair and replace property on the common elements and the individual units of the HAMPTONS; and

C.   Costs incurred and that will be incurred to construct, repair and replace other property located at the HAMPTONS.

WHEREFORE, Plaintiff, Hamptons South Condominium Association, Inc., demands judgment against Defendant, Southland Forming, Inc., for its damages, together with interest, costs, and such other relief as this Court may deem just and equitable.

ASE NO.: 08-21827 CA 27

## COUNT XXIX
## PROFESSIONAL NEGLIGENCE
## (HNGS)

190.    The ASSOCIATION incorporates by reference paragraphs one (1) through thirty-five (35) above, and further alleges:

191.    HNGS was retained as the mechanical engineer of record for the design of the mechanical system(s) and components of HAMPTONS was paid and undertook to provide engineering services, drawings, plans, and specifications for the construction of the HAMPTONS. HNGS knew and intended that the foreseeable unit purchasers and the members of the ASSOCIATION would rely upon the engineering services, plans, specifications, and drawings.

192.    HNGS, as a professional licensed entity, owed a duty of care to foreseeable unit purchasers and members of the ASSOCIATION to properly prepare the drawings, plans, and specifications and perform and provide professional engineering services in accordance with the standards and practice of its industry and to exercise a reasonable degree of skill and care to insure that the construction of the HAMPTONS complied with governmentally approved plans and specifications, the Florida Building Code, the State Minimum Building Codes Act, and in accordance with the professional standards of an mechanical engineer responsible for the design of a condominium.

193.    HNGS failed to exercise a reasonable degree of skill and care in providing professional engineering services and failed to perform its services in accordance with the standard of care used by similar professionals in the community under similar circumstances, including, but not limited to, the following:

A.    Failing to exercise a reasonable degree of skill and care in the designing the mechanical system(s) and components located at the HAMPTONS;

CASE NO.: 08-21827 CA 27

B.    Failing to exercise a reasonable degree of skill and care in designing the mechanical system(s) and components located at the HAMPTONS, as demonstrated by the design deficiencies identified in the Report; and

C.    Failing to exercise a reasonable degree of skill and care in performing inspections of the HAMPTONS to insure compliance with the governmentally approved plans and specifications, the Florida Building Code, the State Minimum Building Codes Act, and industry standards.

194.  As a direct and proximate result of the aforesaid professional negligence, the ASSOCIATION has suffered damages and will continue to suffer damages, including, but not limited to, the following:

A.    Costs that have been incurred to repair and replace damaged property on the common elements and the individual units of the HAMPTONS;

B.    Costs that will be incurred to repair and replace damaged property on the common elements and the individual units of the HAMPTONS; and

C.    Costs incurred and costs that will be incurred to construct, repair and replace other property located at the HAMPTONS.

WHEREFORE, Plaintiff, Hamptons South Condominium Association, Inc., demands judgment against Defendant, Hufsey-Nicolaides-Garcia-Suarez Associates, Inc., for its damages, together with interest, costs, and such other relief as this Court may deem just and equitable.

CASE NO.: 08-21827 CA 27

## COUNT XXX
## BREACH OF STATUTORY IMPLIED WARRANTIES
## SECTION 718.203, FLORIDA STATUTES
## (THERMAL)

195.   The ASSOCIATION incorporates by reference paragraphs one (1) through thirty-five (35) above, and further alleges:

196.   THERMAL is a subcontractor that provided labor, services and materials in the construction of the HAMPTONS within the purview of Section 718.203, Florida Statutes.

197.   Pursuant to Section 718.203 (2), Florida Statutes, THERMAL granted to the original Unit Owners, as well as, all successor Unit Owners, implied warranties of fitness as to the work performed and the materials supplied with regard to the construction of the HAMPTONS and its improvements.

198.   THERMAL breached these warranties by failing in the construction and improvements of the common elements and individual units of the HAMPTONS, by the following:

A.   Delivering the HAMPTONS to the ASSOCIATION with defects and deficiencies identified in the Report;

B.   Failing to construct the HAMPTONS in compliance with the Florida Building Code;

C.   Failing to construct the HAMPTONS, in compliance with the permitted plans and specifications;

D.   Failing to construct the HAMPTONS in accordance with industry standards; and

E.   Constructing the HAMPTONS with defects and deficiencies caused by faulty workmanship or defective work performed by the contractor's subcontractors and/or sub-subcontractors that has

CASE NO.: 08-21827 CA 27

caused damage to other property located within, on and/or about the HAMPTONS including physical injury to tangible property and/or resulting loss of use of that property.

199.    As a direct and proximate result of the aforesaid breaches of warranty, the ASSOCIATION has suffered damages and will continue to suffer damages, including, but not limited to, the following:

A.    Costs incurred to construct, repair and replace property located on the common elements and the individual units of the HAMPTONS;

B.    Costs that will be incurred to construct, repair and replace property on the common elements and the individual units of the HAMPTONS; and

C.    Costs incurred and costs that will be incurred to construct, repair and replace other property located at the HAMPTONS.

WHEREFORE, Plaintiff, Hamptons South Condominium Association, Inc., demands judgment against Defendant, Thermal Concepts, Inc., for its damages, together with interest, costs, and such other relief as this Court may deem just and equitable.

## COUNT XXXI
## VIOLATION OF SECTION 553.84, FLORIDA STATUTES
## (THERMAL)

200.    The ASSOCIATION incorporates by reference paragraphs one (1) through thirty-five (35) above, and further alleges:

201.    Section 553.84, Florida Statutes (2005), expressly creates a statutory cause of action on behalf of any person damaged as a result of a violation of the State Minimum Building Codes Act (Sections 553.70, *et seq.*, Florida Statutes), against the party or parties committing the violations.

SIEGFRIED, RIVERA, LERNER, DE LA TORRE & SOBEL, P.A. ATTORNEYS AT LAW

CASE NO.: 08-21827 CA 27

202.   THERMAL was thus under a statutory duty to the ASSOCIATION and the individual Unit Owners, pursuant to the State Minimum Building Codes Act, to construct and deliver the HAMPTONS in compliance with all applicable local, state, and national building codes and regulations.

203.   THERMAL in inspecting, constructing, and delivering the HAMPTONS failed to comply with all applicable local, state and national building codes and regulations, including, but not limited to, The Florida Building Code, in contravention of the State Minimum Building Codes Act.

204.   THERMAL in inspecting, constructing, and delivering the HAMPTONS failed to comply with all applicable local, state and national building codes and regulations knew or should have known that they were in violation of The Florida Building Code and in contravention of the State Minimum Building Codes Act.

205.   Due to THERMAL's failure in complying with aforementioned statutes and codes, the HAMPTONS has suffered from construction defects and deficiencies, as outlined in the Report.

206.   As a direct and proximate result of the aforesaid code violations, the ASSOCIATION has suffered damages and will continue to suffer damages, including, but not limited to, the following:

    A.    Costs incurred to repair and replace property located on the common elements and the individual units of the HAMPTONS;

    B.    Costs that will be incurred to construct, repair, and replace property on the common elements and the individual units of the HAMPTONS; and

    C.    Costs incurred and costs that will be incurred to construct, repair and replace other property located at the HAMPTONS.

CASE NO.: 08-21827 CA 27

WHEREFORE, Plaintiff, Hamptons South Condominium Association, Inc., demands judgment against Defendant, Thermal Concepts, Inc., for its damages, together with interest, costs, and such other relief as this Court may deem just and equitable.

### COUNT XXXII
### NEGLIGENCE
### (THERMAL)

207. The ASSOCIATION incorporates by reference paragraphs one (1) through thirty-five (35) above, and further alleges:

208. THERMAL is a mechanical subcontractor that provided labor, services and materials in the construction of the HAMPTONS and in particular, performed the construction and installation of the mechanical components and system(s) at the HAMPTONS.

209. As the mechanical subcontractor on the project, THERMAL had a duty to the ASSOCIATION to exercise reasonable care not to damage other property and to exercise reasonable care in performing its work at the HAMPTONS in compliance with the permitted plans and specifications, the Florida Building Code, and industry standards.

210. THERMAL breached its duty to the ASSOCIATION by failing to correctly construct and install the mechanical components and system(s) at the HAMPTONS, including, but not limited to, the following:

A.  Delivering the HAMPTONS to the ASSOCIATION with defects and deficiencies identified in the Report;

B.  Failing to construct the HAMPTONS in compliance with the Florida Building Code;

C.  Failing to construct the HAMPTONS in compliance with the permitted plans and specifications;

D.  Failing to construct the HAMPTONS in accordance with industry standards; and

E.      Constructing the HAMPTONS with defects and deficiencies caused by faulty workmanship or defective work performed by the contractor's subcontractors and/or sub-subcontractors that has caused damage to other property located within, on and/or about the HAMPTONS including physical injury to tangible property and/or resulting loss of use of that property.

211.    As a direct and proximate result of THERMAL's negligence, the ASSOCIATION has suffered damages and will continue to suffer damages, including, but not limited to, the following:

A.      Costs incurred to construct, repair and replace property located on the common elements and the individual units of the HAMPTONS;

B.      Costs that will be incurred to construct, repair and replace property on the common elements and the individual units of the HAMPTONS; and

C.      Costs incurred and that will be incurred to construct, repair and replace other property located at the HAMPTONS.

WHEREFORE, Plaintiff, Hamptons South Condominium Association, Inc., demands judgment against Defendant, Thermal Concepts, Inc., for its damages, together with interest, costs, and such other relief as this Court may deem just and equitable.

<div align="center">

**COUNT XXXIII**
**PROFESSIONAL NEGLIGENCE**
**(FLS)**

</div>

212.    The ASSOCIATION incorporates by reference paragraphs one (1) through thirty-five (35) above, and further alleges:

213.    FLS was retained as the civil engineer of record for the site and drainage system of HAMPTONS was paid and undertook to provide engineering services, drawings, plans, and

specifications for the construction of the HAMPTONS.  FLS knew and intended that the foreseeable unit purchasers and the members of the ASSOCIATION would rely upon the engineering services, plans, specifications, and drawings.

214.  FLS, as a professional licensed entity, owed a duty of care to foreseeable unit purchasers and members of the ASSOCIATION to properly prepare the drawings, plans, and specifications and perform and provide professional engineering services in accordance with the standards and practice of its industry and to exercise a reasonable degree of skill and care to insure that the construction of the HAMPTONS complied with governmentally approved plans and specifications, the Florida Building Code, the State Minimum Building Codes Act, and in accordance with the professional standards of an mechanical engineer responsible for the design of a condominium.

215.  FLS failed to exercise a reasonable degree of skill and care in providing professional engineering services and failed to perform its services in accordance with the standard of care used by similar professionals in the community under similar circumstances, including, but not limited to, the following:

A.  Failing to exercise a reasonable degree of skill and care in the designing the civil and drainage system at the HAMPTONS;

B.  Failing to exercise a reasonable degree of skill and care in designing the mechanical system(s) and components located at the HAMPTONS, as demonstrated by the design deficiencies identified in the Report; and

C.  Failing to exercise a reasonable degree of skill and care in performing inspections of the HAMPTONS to insure compliance with the governmentally approved plans and specifications, the Florida Building Code, the State Minimum Building Codes Act, and industry standards.

CASE NO.: 08-21827 CA 27

216.    As a direct and proximate result of the aforesaid professional negligence, the ASSOCIATION has suffered damages and will continue to suffer damages, including, but not limited to, the following:

    A.    Costs that have been incurred to repair and replace damaged property on the common elements and the individual units of the HAMPTONS;

    B.    Costs that will be incurred to repair and replace damaged property on the common elements and the individual units of the HAMPTONS; and

    C.    Costs incurred and costs that will be incurred to construct, repair and replace other property located at the HAMPTONS.

WHEREFORE, Plaintiff, Hamptons South Condominium Association, Inc., demands judgment against Defendant, Fortin, Leavy, Skiles, Inc., for its damages, together with interest, costs, and such other relief as this Court may deem just and equitable.

### COUNT XXXIV
### BREACH OF STATUTORY IMPLIED WARRANTIES
### SECTION 718.203, FLORIDA STATUTES
### (VALIANT)

217    The ASSOCIATION incorporates by reference paragraphs one (1) through thirty-five (35) above, and further alleges:

218.    VALIANT is a subcontractor that provided labor, services and materials in the construction of HAMPTONS within the purview of Section 718.203, Florida Statutes.

219.    Pursuant to Section 718.203 (2), Florida Statutes, VALIANT, granted to the original Unit Owners, as well as all successor Unit Owners, implied warranties of fitness as to the work performed, and the materials supplied with regard to the construction of HAMPTONS and its improvements.

220.    VALIANT breached these warranties by failing in the design, construction, and improvements of the common elements and individual units of HAMPTONS, by the following:

CASE NO.: 08-21827 CA 27

A. Delivering HAMPTONS to the ASSOCIATION with defects and deficiencies identified in the Report;

B. Failing to construct HAMPTONS in compliance with the Florida Building Code;

C. Failing to construct HAMPTONS, in compliance with the permitted plans and specifications;

D. Failing to construct HAMPTONS in accordance with industry standards; and

E. Constructing HAMPTONS with defects and deficiencies caused by faulty workmanship or defective work performed by the contractor's subcontractors and/or sub-subcontractors that has caused damage to other property located within, on and/or about HAMPTONS including physical injury to tangible property and/or resulting loss of use of that property.

221.   As a direct and proximate result of the aforesaid breaches of warranty, the ASSOCIATION has suffered damages and will continue to suffer damages, including, but not limited to, the following:

A. Costs incurred to construct, repair and replace property located on the common elements and the individual units of HAMPTONS;

B. Costs that will be incurred to construct, repair and replace property on the common elements and individual units of the HAMPTONS; and

C. Costs incurred and costs that will be incurred to construct, repair and replace other property located at HAMPTONS.

CASE NO.: 08-21827 CA 27

WHEREFORE, Plaintiff, Hamptons South Condominium Association, Inc., demands judgment against Defendant, Valiant Construction Corporation, for its damages, together with interest, costs, and such other relief as this Court may deem just and equitable.

<div align="center">

**COUNT XXXV**
**VIOLATION OF SECTION 553.84, FLORIDA STATUTES**
**(VALIANT)**

</div>

222.   The ASSOCIATION incorporates by reference paragraphs one (1) through thirty-five (35) above, and further alleges:

223.   Section 553.84, Florida Statutes (2005), expressly creates a statutory cause of action on behalf of any person damaged as a result of a violation of the State Minimum Building Codes Act (Sections 553.70, *et seq.*, Florida Statutes), against the party or parties committing the violations.

224.   VALIANT was thus under a statutory duty to the ASSOCIATION and the individual Unit Owners, pursuant to the State Minimum Building Codes Act, to design, construct and deliver HAMPTONS in compliance with all applicable local, state, and national building codes and regulations.

225.   VALIANT in inspecting, designing, constructing and delivering HAMPTONS, failed to comply with all applicable local, state and national building codes and regulations, including, but not limited to, The Florida Building Code, in contravention of the State Minimum Building Codes Act.

226.   VALIANT in inspecting, designing, constructing and delivering the HAMPTONS, failed to comply with all applicable local, state and national building codes and regulations, knew or should have known that they were in violation of The Florida Building Code and in contravention of the State Minimum Building Codes Act.

227.   Due to VALIANT's failure in complying with aforementioned statutes and codes, HAMPTONS has suffered from construction defects and deficiencies, as outlined in the Report.

CASE NO.: 08-21827 CA 27

228. As a direct and proximate result of the aforesaid code violations, the ASSOCIATION has suffered damages and will continue to suffer damages, including, but not limited to, the following:

A.  Costs incurred to repair and replace property located on the common elements and the individual units of HAMPTONS;

B.  Costs that will be incurred to construct, repair, and replace property on the common elements and the individual units of HAMPTONS; and

C.  Costs incurred and costs that will be incurred to construct, repair and replace other property located at the HAMPTONS.

WHEREFORE, Plaintiff, Hamptons South Condominium Association, Inc., demands judgment against Defendant, Valiant Construction Corporation, for its damages, together with interest, costs, and such other relief as this Court may deem just and equitable.

## COUNT XXXVI
## NEGLIGENCE
## (VALIANT)

229. The ASSOCIATION incorporates by reference paragraphs one (1) through thirty-five (35) above, and further alleges:

230. VALIANT is a waterproofing subcontractor that provided labor, services and materials in the construction of the HAMPTONS and in particular, performed the construction, installation, and/or application of the waterproofing and waterproofing system(s) at the HAMPTONS.

231. As the waterproofing subcontractor on the project, VALIANT had a duty to the ASSOCIATION to exercise reasonable care not to damage other property and to exercise reasonable care in performing its work at the HAMPTONS in compliance with the permitted plans and specifications, the Florida Building Code, and industry standards.

CASE NO.: 08-21827 CA 27

232.   VALIANT breached its duty to the ASSOCIATION by failing to correctly construct, install, and/or apply the waterproofing and waterproofing system(s) at the HAMPTONS, including, but not limited to, the following:

A.   Delivering the HAMPTONS to the ASSOCIATION with defects and deficiencies identified in the Report;

B.   Failing to construct and design the HAMPTONS in compliance with the Florida Building Code;

C.   Failing to construct and design the HAMPTONS, in compliance with the permitted plans and specifications;

D.   Failing to construct and design the HAMPTONS in accordance with industry standards; and

E.   Constructing the HAMPTONS with defects and deficiencies caused by faulty workmanship or defective work performed by the contractor's subcontractors and/or sub-subcontractors that has caused damage to other property located within, on and/or about the HAMPTONS including physical injury to tangible property and/or resulting loss of use of that property.

233.   As a direct and proximate result of VALIANT's negligence, the ASSOCIATION has suffered damages and will continue to suffer damages, including, but not limited to, the following:

A.   Costs incurred to construct, repair and replace property located on the common elements and the individual units of the HAMPTONS;

B.   Costs that will be incurred to construct, repair and replace property on the common elements and the individual units of the HAMPTONS; and

CASE NO.: 08-21827 CA 27

C.     Costs incurred and costs that will be incurred to construct, repair
       and replace other property located at the HAMPTONS.

WHEREFORE, Plaintiff, Hamptons South Condominium Association, Inc., demands judgment against Defendant, Valiant Construction Corporation, for its damages, together with interest, costs, and such other relief as this Court may deem just and equitable.

### COUNT XXXVII.
### BREACH OF STATUTORY IMPLIED WARRANTIES
### SECTION 718.203, FLORIDA STATUTES
### (FIBRE-TECH)

234.   The ASSOCIATION incorporates by reference paragraphs one (1) through thirty-five (35) above, and further alleges:

235.   FIBRE-TECH is a subcontractor that provided labor, services and materials in the construction of HAMPTONS within the purview of Section 718.203, Florida Statutes.

236.   Pursuant to Section 718.203 (2), Florida Statutes, FIBRE-TECH, granted to the original Unit Owners, as well as all successor Unit Owners, implied warranties of fitness as to the work performed, and the materials supplied with regard to the construction of HAMPTONS and its improvements.

237.   FIBRE-TECH breached these warranties by failing in the design, construction, and improvements of the common elements and individual units of HAMPTONS, by the following:

A.     Delivering HAMPTONS to the ASSOCIATION with defects and
       deficiencies identified in the Report;

B.     Failing to construct HAMPTONS in compliance with the Florida
       Building Code;

C.     Failing to construct HAMPTONS, in compliance with the permitted
       plans and specifications;

D.     Failing to construct HAMPTONS in accordance with industry
       standards; and

CASE NO.: 08-21827 CA 27

    E.    Constructing HAMPTONS with defects and deficiencies caused by faulty workmanship or defective work performed by the contractor's subcontractors and/or sub-subcontractors that has caused damage to other property located within, on and/or about HAMPTONS including physical injury to tangible property and/or resulting loss of use of that property.

238.    As a direct and proximate result of the aforesaid breaches of warranty, the ASSOCIATION has suffered damages and will continue to suffer damages, including, but not limited to, the following:

    A.    Costs incurred to construct, repair and replace property located on the common elements and the individual units of HAMPTONS;

    B.    Costs that will be incurred to construct, repair and replace property on the common elements and individual units of the HAMPTONS; and

    C.    Costs incurred and costs that will be incurred to construct, repair and replace other property located at the AVENTURA.

WHEREFORE, Plaintiff, Hamptons South Condominium Association, Inc., demands judgment against Defendant, Fibre-Tech, Inc., for its damages, together with interest, costs, and such other relief as this Court may deem just and equitable.

## COUNT XXXVIII
## VIOLATION OF SECTION 553.84, FLORIDA STATUTES
## (FIBRE-TECH)

239.    The ASSOCIATION incorporates by reference paragraphs one (1) through thirty-five (35) above, and further alleges:

240.    Section 553.84, Florida Statutes (2005), expressly creates a statutory cause of action on behalf of any person damaged as a result of a violation of the State Minimum Building

CASE NO.: 08-21827 CA 27

Codes Act (Sections 553.70, et seq., Florida Statutes), against the party or parties committing the violations.

241. FIBRE-TECH was thus under a statutory duty to the ASSOCIATION and the individual Unit Owners, pursuant to the State Minimum Building Codes Act, to design, construct and deliver HAMPTONS in compliance with all applicable local, state, and national building codes and regulations.

242. FIBRE-TECH in inspecting, designing, constructing and delivering HAMPTONS, failed to comply with all applicable local, state and national building codes and regulations, including, but not limited to, The Florida Building Code, in contravention of the State Minimum Building Codes Act.

243. FIBRE-TECH in inspecting, designing, constructing and delivering the HAMPTONS, failed to comply with all applicable local, state and national building codes and regulations, knew or should have known that they were in violation of The Florida Building Code and in contravention of the State Minimum Building Codes Act.

244. Due to FIBRE-TECH's failure in complying with aforementioned statutes and codes, HAMPTONS has suffered from construction defects and deficiencies, as outlined in the Report.

245. As a direct and proximate result of the aforesaid code violations, the ASSOCIATION has suffered damages and will continue to suffer damages, including, but not limited to, the following:

    A.    Costs incurred to repair and replace property located on the common elements and the individual units of HAMPTONS;

    B.    Costs that will be incurred to construct, repair, and replace property on the common elements and the individual units of HAMPTONS; and

CASE NO.: 08-21827 CA 27

C.   Costs incurred and costs that will be incurred to construct, repair

and replace other property located at the HAMPTONS.

WHEREFORE, Plaintiff, Hamptons South Condominium Association, Inc., demands

judgment against Defendant, Fibre-Tech, Inc., for its damages, together with interest, costs, and

such other relief as this Court may deem just and equitable.

<div align="center">

**COUNT XXXIX**
**NEGLIGENCE**
**(FIBRE-TECH)**

</div>

246.   The ASSOCIATION incorporates by reference paragraphs one (1) through thirty-

five (35) above, and further alleges:

247.   FIBRE-TECH is a waterproofing subcontractor that provided labor, services and

materials in the construction of the HAMPTONS and in particular, performed the construction,

installation, and/or application of the waterproofing and waterproofing system(s) at the

HAMPTONS.

248.   As the waterproofing subcontractor on the project, FIBRE-TECH had a duty to

the ASSOCIATION to exercise reasonable care not to damage other property and to exercise

reasonable care in performing its work at the HAMPTONS in compliance with the permitted

plans and specifications, the Florida Building Code, and industry standards.

249.   FIBRE-TECH breached its duty to the ASSOCIATION by failing to correctly

construct, install, and/or apply the waterproofing and waterproofing system(s) at the

HAMPTONS, including, but not limited to, the following:

A.   Delivering the HAMPTONS to the ASSOCIATION with defects

and deficiencies identified in the Report;

B.   Failing to construct and design the HAMPTONS in compliance

with the Florida Building Code;

CASE NO.: 08-21827 CA 27

C.   Failing to construct and design the HAMPTONS, in compliance with the permitted plans and specifications;

D.   Failing to construct and design the HAMPTONS in accordance with industry standards; and

E.   Constructing the HAMPTONS with defects and deficiencies caused by faulty workmanship or defective work performed by the contractor's subcontractors and/or sub-subcontractors that has caused damage to other property located within, on and/or about the HAMPTONS including physical injury to tangible property and/or resulting loss of use of that property.

250.   As a direct and proximate result of FIBRE-TECH's negligence, the ASSOCIATION has suffered damages and will continue to suffer damages, including, but not limited to, the following:

A.   Costs incurred to construct, repair and replace property located on the common elements and the individual units of the HAMPTONS;

B.   Costs that will be incurred to construct, repair and replace property on the common elements and the individual units of the HAMPTONS; and

C.   Costs incurred and costs that will be incurred to construct, repair and replace other property located at the HAMPTONS.

WHEREFORE, Plaintiff, Hamptons South Condominium Association, Inc., demands Judgment against Defendant, Fibre-Tech, Inc., for its damages, together with interest, costs, and such other relief as this Court may deem just and equitable.

CASE NO.: 08-21827 CA 27

COUNT XL
BREACH OF STATUTORY IMPLIED WARRANTIES
SECTION 718.203, FLORIDA STATUTES
(ROCK POWER)

251.    The ASSOCIATION incorporates by reference paragraphs one (1) through thirty-five (35) above, and further alleges:

252.    ROCK POWER is a subcontractor that provided labor, services and materials in the construction of HAMPTONS within the purview of Section 718.203, Florida Statutes.

253.    Pursuant to Section 718.203 (2), Florida Statutes, ROCK POWER, granted to the original Unit Owners, as well as all successor Unit Owners, implied warranties of fitness as to the work performed, and the materials supplied with regard to the construction of HAMPTONS and its improvements.

254.    ROCK POWER breached these warranties by failing in the design, construction, and improvements of the common elements and individual units of HAMPTONS, by the following:

A.    Delivering HAMPTONS to the ASSOCIATION with defects and deficiencies identified in the Report;

B.    Failing to construct HAMPTONS in compliance with the Florida Building Code;

C.    Failing to construct HAMPTONS, in compliance with the permitted plans and specifications;

D.    Failing to construct HAMPTONS in accordance with industry standards; and

E.    Constructing HAMPTONS with defects and deficiencies caused by faulty workmanship or defective work performed by the contractor's subcontractors and/or sub-subcontractors that has

CASE NO.: 08-21827 CA 27

caused damage to other property located within, on and/or about HAMPTONS including physical injury to tangible property and/or resulting loss of use of that property.

255.   As a direct and proximate result of the aforesaid breaches of warranty, the ASSOCIATION has suffered damages and will continue to suffer damages, including, but not limited to, the following:

A.   Costs incurred to construct, repair and replace property located on the common elements and the individual units of HAMPTONS;

B.   Costs that will be incurred to construct, repair and replace property on the common elements and individual units of the HAMPTONS; and

C.   Costs incurred and costs that will be incurred to construct, repair and replace other property located at the AVENTURA.

WHEREFORE, Plaintiff, Hamptons South Condominium Association, Inc., demands judgment against Defendant, Rock Power Corporation, for its damages, together with interest, costs, and such other relief as this Court may deem just and equitable.

## COUNT XLI
## VIOLATION OF SECTION 553.84, FLORIDA STATUTES
### (ROCK POWER)

256.   The ASSOCIATION incorporates by reference paragraphs one (1) through thirty-five (35) above, and further alleges:

257.   Section 553.84, Florida Statutes (2005), expressly creates a statutory cause of action on behalf of any person damaged as a result of a violation of the State Minimum Building Codes Act (Sections 553.70, et seq., Florida Statutes), against the party or parties committing the violations.

258.   ROCK POWER was thus under a statutory duty to the ASSOCIATION and the individual Unit Owners, pursuant to the State Minimum Building Codes Act, to design, construct

- 71 -

CASE NO.: 08-21827 CA 27

and deliver HAMPTONS in compliance with all applicable local, state, and national building codes and regulations.

259. ROCK POWER in inspecting, designing, constructing and delivering HAMPTONS, failed to comply with all applicable local, state and national building codes and regulations, including, but not limited to, The Florida Building Code, in contravention of the State Minimum Building Codes Act.

260. ROCK POWER in inspecting, designing, constructing and delivering the HAMPTONS, failed to comply with all applicable local, state and national building codes and regulations, knew or should have known that they were in violation of The Florida Building Code and in contravention of the State Minimum Building Codes Act.

261. Due to ROCK POWER's failure in complying with aforementioned statutes and codes, HAMPTONS has suffered from construction defects and deficiencies, as outlined in the Report.

262. As a direct and proximate result of the aforesaid code violations, the ASSOCIATION has suffered damages and will continue to suffer damages, including, but not limited to the following:

A. Costs incurred to repair and replace property located on the common elements and the individual units of HAMPTONS;

B. Costs that will be incurred to construct, repair, and replace property on the common elements and the individual units of HAMPTONS; and

C. Costs incurred and costs that will be incurred to construct, repair and replace other property located at the HAMPTONS.

WHEREFORE, Plaintiff, Hamptons South Condominium Association, Inc., demands judgment against Defendant, Rock Power Corporation, for its damages, together with interest, costs, and such other relief as this Court may deem just and equitable.

CASE NO.: 08-21827 CA 27

## COUNT XLII
## NEGLIGENCE
## (ROCK POWER)

263.   The ASSOCIATION incorporates by reference paragraphs one (1) through thirty-five (35) above, and further alleges:

264.   ROCK POWER is the site subcontractor that provided labor, services and materials in the construction of the HAMPTONS.

265.   As the site subcontractor on the project, ROCK POWER had a duty to the ASSOCIATION to exercise reasonable care not to damage other property and to exercise reasonable care in performing its work at the HAMPTONS in compliance with the permitted plans and specifications, the Florida Building Code, and industry standards.

266.   ROCK POWER breached its duty to the ASSOCIATION by failing to correctly construct, install, and/or apply the waterproofing and waterproofing system(s) at the HAMPTONS, including, but not limited to, the following:

A.   Delivering the HAMPTONS to the ASSOCIATION with defects and deficiencies identified in the Report;

B.   Failing to construct and design the HAMPTONS in compliance with the Florida Building Code;

C.   Failing to construct and design the HAMPTONS, in compliance with the permitted plans and specifications;

D.   Failing to construct and design the HAMPTONS in accordance with industry standards; and

E.   Constructing the HAMPTONS with defects and deficiencies caused by faulty workmanship or defective work performed by the contractor's subcontractors and/or sub-subcontractors that has caused damage to other property located within, on and/or about

ASE NO.: 08-21827 CA 27

the HAMPTONS including physical injury to tangible property and/or resulting loss of use of that property.

267.  As a direct and proximate result of ROCK POWER's negligence, the ASSOCIATION has suffered damages and will continue to suffer damages, including, but not limited to, the following:

A.    Costs incurred to construct, repair and replace property located on the common elements and the individual units of the HAMPTONS;

B.    Costs that will be incurred to construct, repair and replace property on the common elements and the individual units of the HAMPTONS; and

C.    Costs incurred and costs that will be incurred to construct, repair and replace other property located at the HAMPTONS.

WHEREFORE, Plaintiff, Hamptons South Condominium Association, Inc., demands judgment against Defendant, Rock Power Corporation, for its damages, together with interest, costs, and such other relief as this Court may deem just and equitable.

## COUNT XLIII
## BREACH OF STATUTORY IMPLIED WARRANTIES
## SECTION 718.203, FLORIDA STATUTES
## (FLORIDA CONCRETE)

268.  The ASSOCIATION incorporates by reference paragraphs one (1) through thirty-five (35) above, and further alleges:

269.  FLORIDA CONCRETE is a subcontractor that provided labor, services and materials in the construction of HAMPTONS within the purview of Section 718.203, Florida Statutes.

270.  Pursuant to Section 718.203 (2), Florida Statutes, FLORIDA CONCRETE, granted to the original Unit Owners, as well as all successor Unit Owners, implied warranties of fitness as to the work performed, and the materials supplied with regard to the construction of HAMPTONS and its improvements.

- 74 -

CASE NO.: 08-21827 CA 27

271. FLORIDA CONCRETE breached these warranties by failing in the design, construction, and improvements of the common elements and individual units of HAMPTONS, by the following:

    A.    Delivering HAMPTONS to the ASSOCIATION with defects and deficiencies identified in the Report;

    B.    Failing to construct HAMPTONS in compliance with the Florida Building Code;

    C.    Failing to construct HAMPTONS, in compliance with the permitted plans and specifications;

    D.    Failing to construct HAMPTONS in accordance with industry standards; and

    E.    Constructing HAMPTONS with defects and deficiencies caused by faulty workmanship or defective work performed by the contractor's subcontractors and/or sub-subcontractors that has caused damage to other property located within, on and/or about HAMPTONS including physical injury to tangible property and/or resulting loss of use of that property.

272. As a direct and proximate result of the aforesaid breaches of warranty, the ASSOCIATION has suffered damages and will continue to suffer damages, including, but not limited to, the following:

    A.    Costs incurred to construct, repair and replace property located on the common elements and the individual units of HAMPTONS;

    B.    Costs that will be incurred to construct, repair and replace property on the common elements and individual units of the HAMPTONS; and

SIEGFRIED, RIVERA, LERNER, DE LA TORRE & SOBEL, P.A., ATTORNEYS AT LAW

C.      Costs incurred and costs that will be incurred to construct, repair and replace other property located at the AVENTURA.

WHEREFORE, Plaintiff, Hamptons South Condominium Association, Inc., demands judgment against Defendant, Florida Concrete Unlimited, Inc., for its damages, together with interest, costs, and such other relief as this Court may deem just and equitable.

## COUNT XLIV
## VIOLATION OF SECTION 553.84, FLORIDA STATUTES
## (FLORIDA CONCRETE)

273.    The ASSOCIATION incorporates by reference paragraphs one (1) through thirty-five (35) above, and further alleges:

274.    Section 553.84, Florida Statutes (2005), expressly creates a statutory cause of action on behalf of any person damaged as a result of a violation of the State Minimum Building Codes Act (Sections 553.70, et seq., Florida Statutes), against the party or parties committing the violations.

275.    FLORIDA CONCRETE was thus under a statutory duty to the ASSOCIATION and the individual Unit Owners, pursuant to the State Minimum Building Codes Act, to design, construct and deliver HAMPTONS in compliance with all applicable local, state, and national building codes and regulations.

276.    FLORIDA CONCRETE in inspecting, designing, constructing and delivering HAMPTONS, failed to comply with all applicable local, state and national building codes and regulations, including, but not limited to, The Florida Building Code, in contravention of the State Minimum Building Codes Act.

277.    FLORIDA CONCRETE in inspecting, designing, constructing and delivering the HAMPTONS, failed to comply with all applicable local, state and national building codes and regulations, knew or should have known that they were in violation of The Florida Building Code and in contravention of the State Minimum Building Codes Act.

CASE NO.: 08-21827 CA 27

278.   Due to FLORIDA CONCRETE's failure in complying with aforementioned statutes and codes, HAMPTONS has suffered from construction defects and deficiencies, as outlined in the Report.

279.   As a direct and proximate result of the aforesaid code violations, the ASSOCIATION has suffered damages and will continue to suffer damages, including, but not limited to, the following:

A.   Costs incurred to repair and replace property located on the common elements and the individual units of HAMPTONS;

B.   Costs that will be incurred to construct, repair, and replace property on the common elements and the individual units of HAMPTONS; and

C.   Costs incurred and costs that will be incurred to construct, repair and replace other property located at the HAMPTONS.

WHEREFORE, Plaintiff, Hamptons South Condominium Association, Inc., demands Judgment against Defendant, Florida Concrete Unlimited, Inc., for its damages, together with interest, costs, and such other relief as this Court may deem just and equitable.

### COUNT XLV
### NEGLIGENCE
### (FLORIDA CONCRETE)

280.   The ASSOCIATION incorporates by reference paragraphs one (1) through thirty-five (35) above, and further alleges:

281.   FLORIDA CONCRETE is a shell subcontractor that provided labor, services and materials in the construction of the HAMPTONS and in particular, performed the construction, installation, and/or application of the waterproofing and waterproofing system(s) at the HAMPTONS.

ASE NO.: 08-21827 CA 27

282.    As the shell subcontractor on the project, FLORIDA CONCRETE had a duty to the ASSOCIATION to exercise reasonable care not to damage other property and to exercise reasonable care in performing its work at the HAMPTONS in compliance with the permitted plans and specifications, the Florida Building Code, and industry standards.

283.    FLORIDA CONCRETE breached its duty to the ASSOCIATION by failing to correctly construct, install, and/or apply concrete and forming components at HAMPTONS, including, but not limited to, the following:

A.    Delivering the HAMPTONS to the ASSOCIATION with defects and deficiencies identified in the Report;

B.    Failing to construct and design the HAMPTONS in compliance with the Florida Building Code;

C.    Failing to construct and design the HAMPTONS, in compliance with the permitted plans and specifications;

D.    Failing to construct and design the HAMPTONS in accordance with industry standards; and

E.    Constructing the HAMPTONS with defects and deficiencies caused by faulty workmanship or defective work performed by the contractor's subcontractors and/or sub-subcontractors that has caused damage to other property located within, on and/or about the HAMPTONS including physical injury to tangible property and/or resulting loss of use of that property.

284.    As a direct and proximate result of FLORIDA CONCRETE's, negligence, the ASSOCIATION has suffered damages and will continue to suffer damages, including, but not limited to, the following:

A.    Costs incurred to construct, repair and replace property located on the common elements and the individual units of the HAMPTONS;

SIEGFRIED, RIVERA, LERNER, DE LA TORRE & SOBEL, P.A., ATTORNEYS AT LAW

CASE NO.: 08-21827 CA 27

B.      Costs that will be incurred to construct, repair and replace property on the common elements and the individual units of the HAMPTONS; and

C.      Costs incurred and costs that will be incurred to construct, repair and replace other property located at the HAMPTONS.

WHEREFORE, Plaintiff, Hamptons South Condominium Association, Inc., demands judgment against Defendant, Florida Concrete Unlimited, Inc., for its damages, together with interest, costs, and such other relief as this Court may deem just and equitable.

<u>DEMAND FOR JURY TRIAL</u>

Plaintiff demands trial by jury of all issues so triable.

Dated this 12 day of February, 2009.

SIEGFRIED, RIVERA, LERNER
DE LA TORRE, & SOBEL, P.A.
Attorneys for Plaintiff
201 Alhambra Circle, Suite 1102
Coral Gables, FL 33134
Telephone: (305) 442-3334

By: _____
JASON RODGERS-DA CRUZ
Florida Bar No. 0459976
HELIO DE LA TORRE
Florida Bar No. 307130

- 79 -

EXHIBIT E

**EXHIBIT E**



200 EAST BROWARD BOULEVARD
SUITE 1500
FORT LAUDERDALE, FLORIDA 33301

POST OFFICE BOX 1900
FORT LAUDERDALE, FLORIDA 33302

(954) 761-2957
FAX: (954) 333-4157
STEVEN.MARCUS@RUDEN.COM

September 15, 2009

*Via Federal Express*

Ace Westchester Surplus Lines Insurance Company
Construction Defect
500 Colonial Center Parkway
Suite 200
Roswell, GA 30076

Re:   *Hamptons South Condominium Association, Inc. vs. Aventura Land Holding, Ltd., et al.*; In the Circuit Court of the 11th Judicial Circuit, in and for Miami-Dade County, Florida; Case No. 08-21827-CA-27 ("Lawsuit 1")
*Alfred and Sandra Geller vs. Aventura Land Holding, Ltd., et al.*; In the Circuit Court of the 11th Judicial Circuit, in and for Miami-Dade County, Florida; Case No. 06-09739-CA-06 ("Lawsuit 2")
Commercial General Liability Policy: GLW-777923-0/000
Insured: Miller & Solomon General Contractors, Inc.
Additional Insured: Aventura Land Holding, Ltd.

To Whom It May Concern:

As previously advised via a tender letter sent on June 23, 2008 (copy attached hereto), this law firm represents Aventura Land Holding, Ltd. ("ALH") in both Lawsuit 1 and Lawsuit 2 referenced above. ACE was also placed on notice of these claims by a Liberty Mutual representative on June 19, 2008 (copy of letter attached hereto). Despite these notices, we have not received any response whatsoever from ACE. It is now imperative that ACE immediately respond and acknowledge coverage and provide a defense for the claims directed against ALH. In addition, we are providing you with an update on recent significant events in Lawsuit 1 and Lawsuit 2.

By way of brief background, ALH is the developer of the project known as Hamptons South Condominiums ("Hamptons South"), located at 20201 East County Club Drive, Aventura, Florida 33160. The general contractor for Hamptons South was Miller & Solomon General Contractors, Inc. ("M&S"), the project architect was Cohen Freedman Encinosa & Associates, Architects, P.A. ("Cohen Freedman"), and the project engineer was Hufsey –Nicolaides – Garcia – Suarez Associates, Inc. ("Hufsey").

RM:6777217:1

RUDEN, McCLOSKY, SMITH, SCHUSTER & RUSSELL, P.A.

BOCA RATON * CARACAS * FT. LAUDERDALE * MIAMI * NAPLES * ORLANDO * PORT ST. LUCIE * SARASOTA * ST. PETERSBURG * TALLAHASSEE * TAMPA * WEST PALM BEACH

September 15, 2009
Letter to ACE USA

Page 2 of 3

### Lawsuit 1

On or about April 23, 2008, the Hamptons South Condominium Association, Inc. (the "Association") originally instituted Lawsuit 1 against ALH, Cohen Freedman, Hufsey and various subcontractors of M&S on the project, alleging a multitude of construction defects. The Association claims damages caused by ALH, Cohen Freedman, Hufsey and said subcontractors. A copy of the original Complaint for Lawsuit 1 was previously provided to ACE. The Association has recently filed a Second Amended Complaint, and a copy of same is enclosed herewith. In addition, the Court has recently ordered that the parties participate in an early mediation. Although the mediation date is not yet scheduled, it is most likely to occur some time towards the beginning of 2010. We are also in the process of filing a Third-Party Complaint against M&S.

### Lawsuit 2

Alfred and Sandra Geller own condominium unit 2806/07 at Hamptons South. The Gellers instituted Lawsuit 2 against ALH, M&S, Cohen Freedman and numerous subcontractors of M&S on the project, claiming damages stemming from numerous alleged construction defects. A copy of the Second Amended Complaint for Lawsuit 2 was previously provided to ACE via the original tender letter. ALH has filed Cross-Claims and Third-Party Complaints against various subcontractors on the project. Currently, the trial period in this case is scheduled to begin on October 19, 2009; however, a Court-ordered non-binding arbitration has been scheduled to occur on February 1-3, 2010. As the non-binding arbitration is set to occur after the beginning of the trial period, the parties have moved for a continuation of the trial date. We expect a ruling by the Court on this issue within the next week.

### ACE Coverage and Defense Acknowledgement

ALH is entitled to coverage under the above-referenced policy and is further entitled to a defense of the claims in Lawsuit 1 and in Lawsuit 2. As indicated above, it is crucial that ACE now acknowledge coverage and furnish a defense of ALH. To that end, please provide a formal response to ALH's tender within ten (10) days from the date of this letter. In addition, please also send a complete copy of the above-referenced policy to the undersigned.

If you have any questions concerning the above, please contact me immediately.

Sincerely,

RUDEN, McCLOSKY, SMITH,
SCHUSTER & RUSSELL, P.A.

Steven W. Marcus

RM:6777217:1

RUDEN, McCLOSKY, SMITH, SCHUSTER & RUSSELL, P.A.

BOCA RATON • CARACAS • FT. LAUDERDALE • MIAMI • NAPLES • ORLANDO • FORT ST. LUCIE • SARASOTA • ST. PETERSBURG • TALLAHASSEE • TAMPA • WEST PALM BEACH

September 15, 2009
Letter to ACE USA

Page 3 of 3

Enclosures

cc:   Heath Insurance Brokers, Inc. (via Federal Express)
2859 Paces Ferry Road, Suite 1500
Atlanta, GA 30339

Joy Bernstein, Assistant General Counsel, Business Litigation (via Federal Express)
ACE USA Companies
Two Liberty Place – TL21K
1601 Chestnut Street
Philadelphia, PA 19103

Brian Street (via e-mail, w/o enc.)
James Cohen (via e-mail, w/o enc.)
Theodore R. Stotzer, Esq. (via e-mail, w/o enc.)
Herb Tillman (via e-mail, w/o enc.)
Shawn Johnson (via e-mail, w/o enc.)
Glenn Smith, Esq. (via e-mail, w/o enc.)

RM:6777217:1

RUDEN, McCLOSKY, SMITH, SCHUSTER & RUSSELL, P.A.

BOCA RATON • CARACAS • FT. LAUDERDALE • MIAMI • NAPLES • ORLANDO • PORT ST. LUCIE • SARASOTA • ST. PETERSBURG • TALLAHASSEE • TAMPA • WEST PALM BEACH

EXHIBIT F

**EXHIBIT F**

# McIntosh Sawran Peltz & Cartaya, P.A.

a t t o r n e y s   a t   l a w

1776 EAST SUNRISE BLVD
FORT LAUDERDALE, FLORIDA 33304-7998

TELEPHONE (954) 765-1001
FACSIMILE (954) 765-1005
E-MAIL: INFO@MSPCESQ.COM

OFFICES IN
MIAMI, WEST PALM BEACH AND MAITLAND

DOUGLAS M. McINTOSH
JAMES C. SAWRAN
ROBERT D. PELTZ †
CARMEN Y. CARTAYA
TERESA M. LATHAM
A. CANDACE MARCHE
CAROL L. FINKLEHOFFE

ROBERT C. WEILL
THOMAS M. HARTWIG
MICHAEL R. DARYZK
ALEJANDRA M. MASSO
ALRIDA M. MIELKE
JAMES P. O'HARA
DONNA M. WILSON-SAMPSON
CAMILLE BLANTON
MANUEL R. COMBAS
JOHN C. WEBBER
CRYSTAL L. AROCHA
WILLIAM S. MARCISZ

† FL-BAR/BOARD CERTIFIED IN CIVIL TRIAL LAW

DELIA H. LENZEN, NP
PAMELA L. LAMUNANDE, CP, FCP, PRP
CHRISTA L. SANCHEZ, CP, FCP, PRP
JUDITH A. JAEGER
CHERYL A. HUGHES
MARIE-YOLENE DORSAINVIL
MICHAEL T. DAMIANO
DORIS R. MUSCARELLA, PRP
PARALEGALS

ROBIN KAREL-BRANT, R.N., L.H.R.M.
SHARON K. SNYDER, R.N., L.H.R.M.
MELANIE A. POWERS, R.N., B.S.N.
PAMELA PARKS, R.N., B.S.N., L.N.C.C.
NURSE CONSULTANTS

December 8, 2009

## CERTIFIED MAIL RETURN RECEIPT REQUESTED

Steven Marcus, Esquire
Ruden, McClosky, Smith,
Schuster & Russell, P.A.
200 East Broward Boulevard, Suite 1500
Ft. Lauderdale, FL   33301

> Re:  *Hamptons South Condominium Association v. Land Holding, Ltd.,
> et. al.* Case No.: 08-21827 CA 27
> WSLIC Policy Nos.: GLW-777923-0/013 & CUW774178 001
> Insured:  Miller & Solomon General Contractors, Inc.
> Claim No.: JY08J0209264

Dear Mr. Marcus:

Westchester Surplus Lines Insurance Company ("WSLIC") has authorized this firm to issue this letter in response to your September 15, 2009 letter to ("WSLIC"), demanding additional insured ("AI") coverage for defense and indemnity for Aventura Land Holding, Ltd. and Aventura Land Holding (Del), Inc., ("Aventura") in the above-referenced *Hamptons South* lawsuit, under WSLIC's captioned policies that were issued to Miller & Solomon General Contractors, Inc. ("Miller & Solomon").

Steven Marcus, Esquire
December 8, 2009
Page 2

The purpose of this letter is to notify Aventura that based upon a careful review of the allegations of the *Hamptons South* Second Amended Complaint, WSLIC's policies (issued to Miller & Solomon), and relevant legal authority regarding the issues raised, that WSLIC has determined that Aventura is <u>not</u> <u>afforded</u> AI coverage for defense or indemnity for the *Hamptons South* lawsuit/claim under the WSLIC's policies that were issued to Miller & Solomon. As stated at the close of this letter, should you have other information that you feel impacts upon this decision, please forward it to us immediately.

## I.   FACTUAL BACKGROUND
Allegations asserted against Aventura in the *Hamptons South* lawsuit

The *Hamptons South* lawsuit proceeds under the Second Amended Complaint dated February 12, 2009. The causes of action asserted against Aventura are at count I (breach of contract) and count II (breach of statutory implied warranties under section 718.203, Fla. Statute).

The factual allegations against Aventura are the following:

> Aventura is the developer of a condominium project known as Hamptons South Condominium ("Hamptons"), located at 20201 E. Country Club Drive, Aventura, Florida 33180...In constructing and selling units within the Hamptons, Aventura made available a "Prospectus" with exhibits and "Declaration of Condominium", to each prospective buyer making certain representations regarding the amenities and the condition of Aventura (sic), thereby including (sic) each buyer to enter into a contract/purchase agreement with Aventura of each unit within Hamptons.

*Second Am. Compl.* ¶¶ 23 & 26.

> On or about January 28, 2005, Aventura turned control of Hamptons over to the Association ("Turnover")...Subsequent to the Association taking control of Hamptons, and after units were sold and occupied by Hamptons' unit owner ("Unit Owners"), certain deficiencies were observed, thereby causing the retention of Atkins Engineers, to conduct, a full inspection of Hamptons.

*Second Am. Compl.* ¶¶ 28 - 29.

The breach of contract count alleges:

Steven Marcus, Esquire
December 8, 2009
Page 3

Pursuant to the provisions of the "Prospectus", the "Declaration of Condominium", and the plans and specifications prepared by Aventura, the terms and conditions of which were incorporated by reference into each "Purchase Agreement" for the purchase and sale of units in Hamptons ("Contract"), Aventura owed a duty to the Association and its Unit Owners to construct and deliver Hamptons in accordance with the Prospectus, the Declaration of Condominium, the Purchase Agreement, and the plans and specifications. Aventura materially breached the Contract and its duties to the Association, including, but not limited to...delivering Hamptons to the Association with defects and deficiencies...failing to construct and design Hamptons in compliance with Florida Building Code and good construction practices...failing to deliver Hamptons pursuant to the express representations made in the operating budget for the condominium property...and failing to construct, design and deliver Hamptons pursuant to the representations made in the Contract.

*Second Am. Compl. ¶ 37 – 39.*

The breach of statutory implied warranties (section 718.203, Fla. Stat.) count alleges:

Pursuant to Section 718.203(1), Florida Statutes, Hamptons (sic) granted to the original Unit Owners (i.e. those who purchased their units directly from Hamptons(sic)), as well as all successor Unit Owners, implied warranties of fitness and merchantability for the purposes of uses intended with regard to the Condominium buildings and improvements. Hamptons (sic) breached these warranties in the design, construction and improvements to the common elements and individual units of Hamptons by...delivering Hamptons to the Association with defects and deficiencies...failing to construct and design Hamptons in compliance with the Florida Building Code...failing to construct and design Hamptons in accordance with the permitted plans and specifications...failing to construct Hamptons in accordance with industry standards...and designing, constructing, completing and delivering Hamptons to the Association with defects and deficiencies caused by faulty workmanship or defective work performed in whole or in part by the contractor, its subcontractors, and/or sub-subcontractors that has caused damage to other property located within, on and/or about Hamptons including physical injury to tangible property and/or resulting loss of use of that property.

*Second Am. Compl. ¶¶ 43-44.*

The Second Amended Complaint alleges that the following damages were sustained from Aventura's breach of contract and breach of statutory implied warranties (section 718.203, Fla. Stat.):

Steven Marcus, Esquire
December 8, 2009
Page 4

>Costs incurred to repair and replace property located on the common elements and individual units of Hamptons...Costs that will be incurred to construct, repair and replace property located on the common elements and individual units of Hamptons...and costs incurred and costs that will be incurred to construct, repair and replace other property located at the Hamptons.

*Second Am. Compl.* ¶¶ 40 & 45.

## II.   POLICIES

WSLIC issued two policies to Miller & Solomon that were in effect during portions of the construction of the Hamptons South condominium project, and when the Hamptons South condominium was turned over to the Association on January 28, 2005.   The policies are the following:

**1.     CGL Policy No. GLW-777923-0/013 [12/31/03 – 6/30/05[1]]**

The limits of liability are the following:

$1 million – each occurrence;
$1 million – personal injury and advertising injury;
$2 million – Products Completed Operations Aggregate; and
$2 million – general aggregate.

The deductible for bodily injury liability and property damage liability combined is $50,000.

**2.     Commercial Umbrella Policy No. CUW774178 001 [12/31/03-6/30/05][2]**

The limits of liability are the following:

$10 million – each occurrence;
$10 million - General Aggregate;
$10 million – Products/Completed Operations Aggregate; and
Self-Insured Retention (per occurrence) of $10,000.

---

[1] This policy was cancelled short rate on May 13, 2005. Refund of unearned premiums was made to Miller & Solomon.
[2] This policy was cancelled short rate on May 13, 2005. Refund of unearned premiums was made to Miller & Solomon.

Steven Marcus, Esquire
December 8, 2009
Page 5

    This Umbrella policy follows the form of CGL policy [Policy No. GLW-777923 (12/31/03-6/30/05)].   As such, the provisions will not be separately addressed here.  With respect to its "follow form" provision, the policy states:

> THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY
>
> IV.    With respect to "Bodily Injury", "Property Damage", "Personal Injury" or "Advertising Injury" arising out of liability you assume under any contract, this policy is limited to the coverage provided by the "underlying insurance".  If coverage is not provided by the "underlying insurance", coverage is excluded by this policy.

[Form UM05858 (07/01]

    Aventura is not a named insured on WSLIC's policies.  However, in certain circumstances (assuming a valid and enforceable contract exists between Aventura and Miller & Solomon), Aventura may be afforded additional insured coverage, pursuant to Form CG 20 10 10 01 of WSLIC's CGL policy.  This endorsement states:

> ADDITIONAL INSURED- OWNERS, LESSEES OR CONTRACTORS – SCHEDULED PERSON OR ORGANIZATION
>
> This endorsement modifies insurance provided under the following:
>
> COMMERCIAL GENERAL LIABILITY COVERAGE PART
>
> SCHEDULE
>
> Name of Person or Organization
>
> AS REQUIRED BY CONTRACT, PROVIDED THE CONTRACT IS EXECUTED PRIOR TO LOSS.
>
> A.     Section II – Who Is an Insured is amended to include as an insured the person or organization shown in the Schedule, but only

Steven Marcus, Esquire
December 8, 2009
Page 6

with respect to liability arising out of your ongoing operations performed for that insured.

B.      With respect to the insurance afforded to these additional insureds, the following exclusion is added:

2.      Exclusions

This insurance does not apply to "bodily injury" or "property damage" occurring after:

(1)     All work, including materials, parts or equipment furnished in connection with such work, on the project (other than service, maintenance or repairs) to be performed by or on behalf of the additional insured(s) at the site of the covered operations has been completed; or

(2)     That portion of "your work" out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.

[Form CG 20 10 10 01].

WSLIC's policy's definition of when Miller & Solomon's work is "deemed completed" is the following:

"Products-completed operations hazard"

...

"your work" will be deemed completed at the earliest of the following times:

(a)     When all of the work called for in your contract has been completed.
(b)     When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.
(c)     When that part of the work done at the job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Steven Marcus, Esquire
December 8, 2009
Page 7

> Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

[Form CG 00 01 10 01], (Emphasis added).

### Aventura's tender for the *Hamptons South* lawsuit

The *Hamptons South* Second Amended Complaint alleges that the claimed deficiencies/damages were discovered "subsequent to the Association taking control of Hamptons, and after units were sold and occupied by Hamptons' unit owners." Based on these allegations, it appears that Miller & Solomon's work at the areas where the alleged deficiencies were discovered had "been completed", and that the areas of the condominium where the deficiencies were discovered had been put to their "intended use". [Emphasis added].

In light of this, WSLIC hereby notifies Aventura that "additional insured" coverage for Aventura for the *Hamptons South* claim/lawsuit is specifically excluded under WSLIC's policies by the one or both of the following exclusions contained within Endorsement CG 20 10 10 01:

> B. With respect to the insurance afforded to these additional insureds, the following exclusion is added:
>
> 2.  Exclusions
>
> This insurance does not apply to "bodily injury" or "property damage" occurring after:
>
> (1) *All work, including materials, parts or equipment furnished in connection with such work, on the project (other than service, maintenance or repairs) to be performed by or on behalf of the additional insured(s) at the site of the covered operations has been completed*; or
>
> (2) *That portion of "your work" out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.* [Emphasis added].

Steven Marcus, Esquire
December 8, 2009
Page 8

[Form CG 20 10 10 01]. (Emphasis added).

In addition to the above, additional insured coverage for Aventura for the *Hamptons South* claim/lawsuit is also potentially limited and/or excluded under WSLIC's policies by the following policy provisions:

## SECTION I – COVERAGES

### COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY

I.     Insuring Agreement

a.     We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

(1) The amount we will pay for damages is limited as described in Section III – Limits of Insurance; and

(2) Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages A and B.

[Form CG 00 01 10 01].

In light of the above-referenced "Insuring Agreement", WSLIC has no duty to defend and/or indemnify Aventura under the subject policies for "property damage" that is not covered by the policies.

Steven Marcus, Esquire
December 8, 2009
Page 9

Coverage for exposure to fungus (as defined) is excluded under WSLIC policy by the following endorsement:

**FUNGI OR BACTERIA EXCLUSION**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

A.   The following exclusion is added to Paragraph 2., Exclusions of Section I – Coverage A – Bodily Injury And Property Damage Liability:

2.   Exclusions

This insurance does not apply to:

**Fungi or Bacteria**

a.   "Bodily injury" or "property damage" which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any cause, event, material or product contributed concurrently or in any sequence to such injury or damage.

b.   Any loss, cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

This exclusion does not apply to any "fungi" or bacteria that are, are on, or are contained in, a good or product intended for consumption.

. . .

C. .   The following definition is added to the Definitions Section:

"Fungi" means any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents or byproducts produced or released by fungi.

Steven Marcus, Esquire
December 8, 2009
Page 10

[Form CG 21 67 04 02].

Based on the above-referenced endorsement, all damages resulting from "mold, mildew and/or any mycotoxins" or subject to the above Fungus or Bacteria Exclusion, are specifically excluded from coverage under WSLIC's policies.

WSLIC's policy excludes coverage for damages when there is a consolidated (wrap up) insurance program in place by the following provisions:

**EXCLUSION- DESIGNATED OPERATIONS COVERED BY A CONSOLIDATED (WRAP UP) INSURANCE PROGRAM**

The following exclusion is added to paragraph 2., Exclusions of COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY (Section I–Coverages):

This insurance does not apply to "bodily injury" or "property damage" arising out of either your ongoing operations or operations included within the "products-completed operations hazard" at the location described in the Schedule of this endorsement, as a consolidated (wrap up) insurance program has been provided by the prime contractor/project manager or owner of the construction project in which you are involved.

This exclusion applies whether or not the consolidated (wrap-up) insurance program

(1) Provides coverage identical to that provided by this Coverage Part;
(2) Has limits adequate to cover all claims; or
(3) Remains in effect.

[Form CG 21 54 01 96].

The following damages are excluded under WSLIC's policies.

**EXCLUSION – CONSTRUCTION MANAGEMENT ERRORS AND OMMISSIONS**

This endorsement modifies insurance provided under the following:

Steven Marcus, Esquire
December 8, 2009
Page 11

The following exclusion is added to Paragraph 2., Exclusions of
Section I – Coverage A – Bodily Injury And Property Damage
Liability and Paragraph 2., Exclusions of Section I – Coverage B –
Personal And Advertising Injury Liability:

This insurance does not apply to "bodily injury", "property
damage" or "personal and advertising injury" arising out of:

1.     The preparing, approving, or failure to prepare or approve,
maps, shop drawings, opinions, reports, surveys, field orders,
change orders or drawings and specifications by any architect,
engineer or surveyor performing services on a project on which
you serve as construction manager; or

2.     Inspection, supervision, quality control, architectural or
engineering activities done by or for you on a project on which you
serve as construction manager.

This exclusion does not apply to "bodily injury" or "property
damage" due to construction or demolition work done by you, your
"employees" or your subcontractors.

[Form CG 22 34 07 98]

To the extent that Aventura was the construction manager on the Hamptons South
condominium project, there is no coverage under WSLIC's policies based on the
above-referenced exclusion.

WSLIC's policies also exclude coverage for the following damages:

2.     Exclusions

j.     Damage to Property

"Property damage" to:

...

(2)     Premises you sell, give away or abandon, if the "property
damage" arises out of those premises.

...

(5)     That particular part of real property on which you or any
contractor or subcontractor working directly or indirectly on your

Steven Marcus, Esquire
December 8, 2009
Page 12

behalf are performing operations, if the "property damage" arises out of those operations; or

(6)     That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

...

Paragraph (2) of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraph (3), (4), (5), and (6) of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph (6) of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

...

2.     Exclusions

m.     Damage to Impaired Property or Property Not Physically Injured

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

i.     A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

ii.    A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental injury to "your product" or "your work" after it has been put to its intended use.

WSLIC's policies also provide that WSLIC's obligation under the policies, if any, in relation to other insurance that was issued to Aventura during the relevant time period is limited as follows:

Steven Marcus, Esquire
December 8, 2009
Page 13

## SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS

4.    Other Insurance

If other valid and collectible insurance is available to the Insured for a loss we cover under Coverages A or B of this Coverage Part, our obligations are limited as follows:

a.    Primary Insurance

This insurance is primary except when b. below applies.  If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary.  Then, we will share with all that other insurance by the method described in c. below.

b.    Excess Insurance

This insurance is excess over:

(1)    Any of the other insurance, whether primary, excess, contingent or on any other basis:

(a)    That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

(b)    That is Fire Insurance for premises rented to you or temporarily occupied by you with permission of the owner;

(c)    That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

(d)    If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion g. of Section I – Coverage A – Bodily Injury And Property Damage Liability.

(2)    Any other primary insurance available to you covering liability for damages arising out of the premises or operations for which you have been added as an additional insured by attachment of an endorsement.

When this insurance is excess, we will have no duty under Coverage A or B to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit".  If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

Steven Marcus, Esquire
December 8, 2009
Page 14

When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

(1)     The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

(2)     The total of all deductible and self-insured amounts under all that other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

c.     Method of Sharing

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance to all insurers.

[Form CG 00 01 10 01].

As it appears that during the time period alleged in the *Hamptons South* lawsuit, that Aventura was insured under several policies (besides WSLIC's policies under which Aventura is seeking "additional insured" coverage for the *Hamptons South* claim/lawsuit), WSLIC's obligation under the policies it issued to Miller & Solomon is limited by the terms and/or provision of the "other insurance" clause contained within WSLIC's policies, as set forth above.

Additionally, assuming Aventura is claiming "additional insured" coverage for the *Hamptons South* lawsuit/claim under WSLIC's policies pursuant to an indemnification or hold harmless provision in a contract or agreement with Miller & Solomon, WSLIC hereby notifies Aventura that WSLIC's obligation under the policies, if any, may be limited if the indemnification and/or hold harmless provision(s) fail(s) to comply with Florida law and section 725.06, Florida

Steven Marcus, Esquire
December 8, 2009
Page 15

Statutes, (assuming Florida law controls) which states the following in pertinent part:

> Sect. 725.06, Fla.Stat. Construction contracts, limitation on indemnification
>
> Any portion of any agreement or contract for or in connection with, or any guarantee of or in connection with, any construction, alteration, repair or demolition of a building, structure, appurtenance, or appliance, including moving and excavating associated therewith, between an owner of real property and an architect, engineer, general contractor, subcontractor, sub-contractor, or materialman or any combination thereof wherein any party referred to herein promises to indemnify or hold harmless the other party to the agreement, contract, or guarantee for liability for damages to persons or property caused in whole or in part by any act, omission, or default of the indemnitee arising from the contract or its performance, shall be void and unenforceable unless the contract contains a monetary limitation on the extent of the indemnification that bears a reasonable commercial relationship to the contract and is part of the project specification or bid documents, if any.

Other reasons may become known to WSLIC that may provide a basis for asserting other terms of the policies that may affect WSLIC's obligations, if any, under the policies with respect to the subject claim. Accordingly, WSLIC reserves its right to amend this letter to assert additional bases for its denial.

The fact that an issue or coverage defense is not discussed in this letter should not be construed to mean that WSLIC intends to waive that issue or defense. WSLIC intends to rely on all coverage issues and defenses that are, or may become available to it under the policies referred to and at law.

WSLIC's position as expressed herein is based upon the information currently available to it. If you have any information that would impact upon, or cause WSLIC to alter or reconsider its coverage position relative to this matter, please contact us immediately. WSLIC reserves the right to assert additional terms, conditions, exclusions and/or provisions under its policies, and at law or in equity, which may become applicable if new information is provided.

Steven Marcus, Esquire
December 8, 2009
Page 16

Please feel free to contact the undersigned if you have any questions concerning the WSLIC policies or any of the issues raised in this letter.

Very truly yours,

DOUGLAS M. MCINTOSH
DONNA WILSON-SAMPSON

DMM/DWS/dws

cc: Darrell B. Hauck, Chief Claims Specialist